## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| **RSM PRODUCTION CORPORATION,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:10-cv-00457 (EGS) |
| v. | ) | |
| | ) | **[ORAL ARGUMENT REQUESTED]** |
| **FRESHFIELDS BRUCKHAUS DERINGER U.S. LLP**, 520 Madison Avenue, 34th floor, New York, NY 10022; 701 Pennsylvania Avenue, NW, Suite 600, Washington, DC 20004-2692; **JAN PAULSSON,** Bahrain World Trade Centre, East Tower, 37th Floor, PO Box 18259, Manama, Bahrain; 2 rue Paul Cézanne, 75008 Paris, France; and **BRIAN KING**, 520 Madison Avenue, 34th floor, New York, NY 10022; Strawinskylaan 10, 1077 XZ, Amsterdam, Netherlands, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

_____

### DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Pursuant to Fed. R. Civ. P. 12(b)(1), (6) and LCvR 7, Defendants Freshfields Bruckhaus Deringer U.S. LLP, Brian King, and Jan Paulsson (collectively "Defendants"), hereby move this Court to dismiss Plaintiff's Complaint with prejudice for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.  In support of this motion, Defendants respectfully refer the Court to the attached memorandum of points and authorities and supporting exhibits.  A proposed order is attached to this motion.

Defendants respectfully request an oral hearing on the motion to dismiss pursuant to LCvR 7(f).

Dated:        June 1, 2010                    Respectfully submitted,

                                              /s/  David W. Ogden
                                              David W. Ogden, D.C. Bar No. 375951
                                              Andrew Weissman, D.C. Bar No. 245720
                                              Danielle Conley, D.C. Bar No. 503345
                                              Joshua M. Salzman, D.C. Bar No. 982239
                                              WILMER CUTLER PICKERING
                                                     HALE AND DORR LLP
                                              1875 Pennsylvania Ave., NW
                                              Washington, DC 20006
                                              (202) 663-6000 (telephone)
                                              (202) 663-6363 (facsimile)
                                              david.ogden@wilmerhale.com

                                              *Counsel for Freshfields Bruckhaus
                                              Deringer U.S. LLP, Brian King, and
                                              Jan Paulsson*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| RSM PRODUCTION CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | )   Civil Action No. 1:10-cv-00457 (EGS) |
| v. | ) |
| | ) |
| FRESHFIELDS BRUCKHAUS DERINGER U.S. | ) |
| LLP, JAN PAULSSON, and BRIAN KING, | ) |
| | ) |
| Defendants. | ) |
| | ) |

_____

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ...................................................................................................................1

BACKGROUND AND STATEMENT OF FACTS ................................................................3

     A.    The Parties ..................................................................................................3

     B.    The Contract and the Resulting Dispute .....................................................5

     C.    The ICSID Proceeding ...............................................................................6

     D.    RSM's Suit in the Southern District of New York .....................................7

     E.    This Lawsuit ................................................................................................9

SUMMARY OF ARGUMENT .............................................................................................11

ARGUMENT .........................................................................................................................13

I.     RSM'S CLAIMS ARE BARRED BY RES JUDICATA ...........................................13

II.    THIS ACTION SHOULD BE DISMISSED BECAUSE DEFENDANTS ENJOY ABSOLUTE IMMUNITY FROM SUIT UNDER THE ICSID CONVENTION .............................................................................................................19

     A.    Under the Plain Language of Articles 21 and 22 of the ICSID Convention Defendants Are Immune from this Suit .............................19

     B.    The ICSID Immunity Provisions Are Binding Here ................................22

III.   RSM'S RICO CLAIM IS BARRED BY THE FOUR-YEAR STATUTE OF LIMITATIONS .....................................................................................................24

IV.   RSM'S COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO STATE A RICO CLAIM ............................................................................................26

     A.    Pleading Standards ....................................................................................30

     B.    RSM Alleges No Facts To Render Plausible Its Conclusory Allegation that Freshfields Consciously Agreed To Participate in a RICO Violation .............................................................................................32

1.   *RSM fails to allege facts sufficient to make plausible any inference that Freshfields knew about the alleged acts of racketeering* ........................................................................32

2.   *RSM fails to allege facts sufficient to render plausible that Freshfields agreed to the commission of racketeering acts* ......................35

3.   *RSM fails to allege facts sufficient to demonstrate that Freshfields knew either that the co-conspirators were engaged in a pattern of racketeering activity or the purported scope and nature of the enterprise* ...........................................38

CONCLUSION ........................................................................................................40

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Agency Holding Corp. v. Malley-Duff & Associates*, 483 U.S. 143 (1987) ..................................24

*Albright v. Attorney's Title Insurance Fund*, 504 F. Supp. 2d 1187 (D. Utah 2007) ...................35

*Alfie's Original Souliers, Inc. v. Fleet Bank*, No. 95-8741, 1996 WL 263004
    (S.D.N.Y. May 17, 1996).....................................................................................................31

*Alves v. Players Edge, Inc.*, No. 05-1654, 2007 WL 6004919 (S.D. Cal. Aug. 8,
    2007) ...................................................................................................................................36

*Apollo Computer, Inc. v. Berg*, 886 F.2d 469 (1st Cir. 1989)........................................................23

*Apotex, Inc. v. Food & Drug Administration*, 393 F.3d 210 (D.C. Cir. 2004) .............................15

*\*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ................................................................30, 31, 33, 37

*Ashelman v. Pope*, 793 F.2d 1072 (9th Cir. 1986).......................................................................22

*Ashton v. Pierce*, 716 F.2d 56 (D.C. Cir. 1983)..........................................................................23

*Atherton v. District of Columbia Office of Mayor*, 567 F.3d 672 (D.C. Cir. 2009)........................3

*B.V. Optische Industrie de Oude Delft v. Hologic, Inc.*, 909 F. Supp. 162
    (S.D.N.Y. 1995).................................................................................................................27

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, No. 93-6876, 1998 WL
    42575 (S.D.N.Y. Feb. 4, 1998) ........................................................................................28

*Baumer v. Pachl*, 8 F.3d 1341 (9th Cir. 1993)................................................................29, 39, 40

*Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280 (D.C. Cir. 1993) ..................................................23

*\*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................12, 30, 31, 33, 34, 37, 38

*Blinder, Robinson & Co. v. SEC*, 837 F.2d 1099 (D.C. Cir. 1988) ...............................................14

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) ..................................................................26

*\*Brzak v. United Nations*, 597 F.3d 107 (2d Cir. 2010) .........................................................20, 22

*\*Capitol Hill Group v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485
    (D.C. Cir. 2009) ...........................................................................................................15, 17

*Carroll v. Fremont Investment & Loan*, 636 F. Supp. 2d 41 (D.D.C. 2009)................................24

*Chalabi v. Hashemite Kingdom of Jordan*, 503 F. Supp. 2d 267 (D.D.C. 2007) ........................25

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229 (2d Cir. 1999)..........................29

*Coregis Insurance Co. v. American Health Foundation, Inc.*, 241 F.3d 123 (2d
    Cir. 2001) ..........................................................................................................................21

*Covad Communications Co. v. Bell Atlantic Corp.*, 407 F.3d 1220 (D.C. Cir.
    2005) ....................................................................................................................................3

*Crooked Creek Properties, Inc. v. Ensley*, No. 08-1002, 2009 WL 3644835 (M.D.
    Ala. Oct. 28, 2009)............................................................................................................36

*D'Orange v. Feely*, 877 F. Supp. 152 (S.D.N.Y. 1995) ...............................................................36

*Danielsen v. Burnside-Ott Aviation Training Center, Inc.*, 941 F.2d 1220 (D.C.
    Cir. 1991) ..........................................................................................................................31

*De Luca v. United Nations Organization*, 841 F. Supp. 531 (S.D.N.Y. 1994) ............................21

*Dietrich v. Bauer*, 76 F. Supp. 2d 312 (S.D.N.Y. 1999)..............................................................36

*\*Diggs v. Richardson*, 555 F.2d 848 (D.C. Cir. 1976) .................................................................22

*Discon Inc. v. NYNEX Corp.*, 86 F. Supp. 2d 154 (W.D.N.Y. 2000) .....................................13, 18

*\*Doe I v. State of Israel*, 400 F. Supp. 2d 86 (D.D.C. 2005).................................................31, 32

*Does I Through III v. District of Columbia*, 238 F. Supp. 2d 212 (D.D.C. 2002).........................3

*\*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260 (D.C.
    Cir. 1995) ..........................................................................................................................39

*EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621 (D.C. Cir. 1997)..........................23

*Elsevier Inc. v. W.H.P.R., Inc.*, No. 09-6512, 2010 WL 710786 (S.D.N.Y. Feb. 19,
    2010) ............................................................................................................................28, 32

*Emmanuel v. United States*, 253 F.3d 755 (1st Cir. 2001)...........................................................21

*Estate of Manook v. Research Triangle Institute, International & Unity Resources
    Group, L.L.C.*, Nos. 08-0096, -0595, 2010 WL 675264 (D.D.C. Feb. 5,
    2010) ..................................................................................................................................21

*Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394 (1981) ............................................14

*First American Discount Corp. v. Commodity Futures Trading Commission*,
    222 F.3d 1008 (D.C. Cir. 2000) ........................................................................................24

*Fonseca v. Columbia Gas Systems, Inc.*, 37 F. Supp. 2d 214 (W.D.N.Y. 1998)....................13, 18

*Frymire v. Peat, Marwick, Mitchell & Co.*, 657 F. Supp. 889 (N.D. Ill. 1987)............................31

*Fund for Animals, Inc. v. Kempthorne*, 472 F.3d 872 (D.C. Cir. 2006) ........................................22

*Galustian v. Peter*, 591 F.3d 724 (4th Cir. 2010) ........................................................................21

*\*Gambocz v. Yelencsics*, 468 F.2d 837 (3d Cir. 1972) ...........................................................13, 18

*Gambrell v. Hess*, 777 F. Supp. 375 (D.N.J. 1991) ...............................................................13, 18

*Glessner v. Kenny*, 952 F.2d 702 (3d Cir. 1991) ..........................................................................29

*Goldman v. Bequai*, 19 F.3d 666 (D.C. Cir. 1994) ......................................................................24

*Goren v. New Vision International, Inc.*, 156 F.3d 721 (7th Cir. 1998)........................................28

*Grynberg Petroleum Co. v. Evergreen Energy Partners, LLC*, 485 F. Supp. 2d
    1217 (D. Colo. 2007) ...........................................................................................................4

*Grynberg v. BP P.L.C.*, 585 F. Supp. 2d 50 (D.D.C. 2008) ........................................................23

*Grynberg v. Ivanhoe Energy, Inc.*, 663 F. Supp. 2d 1022 (D. Colo. 2009) ...................................4

*H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989)............................................38

*Handeen v. Lemaire*, 112 F.3d 1339 (8th Cir. 1997) ...................................................................36

*Hansen v. Billington*, 644 F. Supp. 2d 97 (D.D.C. 2009) ..............................................................4

*Hargraves v. Capital City Mortgage Corp.*, 140 F. Supp. 2d 7 (D.D.C. 2000) .....................24, 25

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990) ..................................29, 31

*Hemphill v. Kimberly-Clark Corp.*, 530 F. Supp. 2d 108 (D.D.C. 2008)......................................13

*Hinton v. Corrections Corp. of America*, 624 F. Supp. 2d 45 (D.D.C. 2009) ...............................4

*Howard v. America Online Inc.*, 208 F.3d 741 (9th Cir. 2000)..............................................29, 39

*Howard v. United States Department of Education*, No. 09-1633, 2010 WL
    1137499 (D.D.C. Mar. 22, 2010)....................................................................................3, 13

*Hunt v. Liberty Lobby, Inc.*, 707 F.2d 1493 (D.C. Cir. 1983)......................................................14

*Hutchinson v. Holder*, 668 F. Supp. 2d 201 (D.D.C. 2009) ..........................................................3

*In re Managed Care Litigation*, No. 03-21266, 2009 WL 347795 (S.D. Fla. Feb. 11, 2009) ...........................................................................................................32

*In re Natural Gas Royalties Qui Tam Litigation*, 467 F. Supp. 2d 1117 (D. Wyo. 2006) ..............................................................................................................4

*In re Teltronics Services, Inc.*, 762 F.2d 185 (2d Cir. 1985) ...................................13, 18

*Jennings v. Emry*, 910 F.2d 1434 (7th Cir. 1990) ........................................................27

*Kissi v. EMC Mortgage Corp.*, 627 F. Supp. 2d 27 (D.D.C. 2009)...............................14

*Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997) .........................................................26

*Landy v. Heller, White & Co.*, 783 F. Supp. 125 (S.D.N.Y. 1991) .........................29, 36

*LaSalle National Bank v. Duff & Phelps Credit Rating Co.*, 951 F. Supp. 1071 (S.D.N.Y. 1996)....................................................................................................36

*Laterza v. American Broadcasting Co.*, 581 F. Supp. 408 (S.D.N.Y. 1984).................29

*Liberian Eastern Timber Corp. v. Government of Republic of Liberia*, 650 F. Supp. 73 (S.D.N.Y. 1986)......................................................................................23

*Lopez v. Council on American-Islamic Relations Action Network, Inc.*, 657 F. Supp. 2d 104 (D.D.C. 2009) ...............................................................................35

*Lutcher S. A. Celulose e Papel v. Inter-American Development Bank*, 382 F.2d 454 (D.C. Cir. 1967) ...........................................................................................21

*McGee v. Moon*, 685 F. Supp. 2d 737, 2010 WL 621536 (N.D. Feb. 23, Ohio 2010) ................................................................................................................32

*McKesson Corp. v. Islamic Republic of Iran*, 539 F.3d 485 (D.C. Cir. 2008) .............22

*\*McLaughlin v. Bradlee*, 599 F. Supp. 839 (D.D.C. 1984).....................................13, 18

*\*McLaughlin v. Bradlee*, 803 F.2d 1197 (D.C. Cir. 1986) .....................................13, 18

*Mendaro v. World Bank*, 717 F.2d 610 (D.C. Cir. 1983) ............................................20

*Midwest Grinding Co. v. Spitz*, 716 F. Supp. 1087 (N.D. Ill. 1989)............................29

*Milsap v. HUD*, No. 86-220, 1986 WL 6633 (D. Minn. June 11, 1986)................13, 18

*Morin v. Trupin*, 711 F. Supp. 97 (S.D.N.Y. 1989)...............................................29, 36

*Nader v. Democratic National Committee*, 590 F. Supp. 2d 164 (D.D.C. 2008).........15

*National Post Office Mail Handlers, Watchmen, Messengers, & Group Leaders Division of Laborers International Union of North America, AFL-CIO v. American Postal Workers Union, AFL-CIO*, 907 F.2d 190 (D.C. Cir. 1990) ..............................................................................................................14

*Natural Resources Defense Council v. EPA*, 513 F.3d 257 (D.C. Cir. 2008) ...............14

*Negron-Fuentes v. UPS Supply Chain Solutions*, 532 F.3d 1 (1st Cir. 2008) ...............18

*Nolte v. Pearson*, 994 F.2d 1311 (8th Cir. 1993)...................................................28

*O'Malley v. O'Neill*, 887 F.2d 1557 (11th Cir. 1989) ...................................................29

*Oceanic Exploration Co. v. ConocoPhillips, Inc.*, No. 04-332, 2006 WL 2711527 (D.D.C. Sept. 21, 2006) ......................................................................................20, 27

*Osseiran v. International Finance Corp.*, 498 F. Supp. 2d 139 (D.D.C. 2007) ............19

*Polak v. International Monetary Fund*, 657 F. Supp. 2d 116 (D.D.C. 2009)................19

*Prunte v. Universal Music Group*, 484 F. Supp. 2d 32 (D.D.C. 2007) ........................31

*Rao v. BP Products North America, Inc.*, 589 F.3d 389 (7th Cir. 2009)......................32

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935 (11th Cir. 1997) .....................................................................................................31, 36

*Reves v. Ernst & Young*, 507 U.S. 170 (1993)........................................................28

*Rose v. Bartle*, 871 F.2d 331 (3d Cir. 1989) ..........................................................29

*\*Rotella v. Wood*, 528 U.S. 549 (2000) ...............................................................25

*\*RSM Production Corp. v. Fridman*, 643 F. Supp. 2d 382 (S.D.N.Y. 2009)...................... *passim*

*RSM Production Corp. v. Fridman*, No. 06-11512, 2007 WL 2295897 (S.D.N.Y. Aug. 10, 2007) ...................................................................................................10

*\*Salinas v. United States*, 522 U.S. 52 (1997)....................................................27, 28

*Sassoon v. Altgelt 777, Inc.*, 822 F. Supp. 1303 (N.D. Ill. 1993) ...............................28

*SBC Communications Inc. v. FCC*, 407 F.3d 1223 (D.C. Cir. 2005) ............................15

*Schiffels v. Kemper Financial Services, Inc.*, 978 F.2d 344 (7th Cir. 1992) .........................29, 35

*Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340 (S.D.N.Y. 1998) .......................................29

*Scowcroft Group, Inc. v. Toreador Resources Corp.*, 666 F. Supp. 2d 39 (D.D.C. 2009) ..................................................................................................................4

*SEC v. Prudential Securities Inc.*, 136 F.3d 153 (D.C. Cir. 1998) ................................23

*Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 567 F. Supp. 1146 (D.N.J. 1983)..............................................................................................30, 39

*Stanton v. District of Columbia Court of Appeals*, 127 F.3d 72 (D.C. Cir. 1997)........................13

*U.S. Industries, Inc. v. Blake Construction Co.*, 765 F.2d 195 (D.C. Cir. 1985)..........................15

*United States v. Hoyle*, 122 F.3d 48 (D.C. Cir. 1997) ..................................................28

*United States v. Martino*, 664 F.2d 860 (2d Cir. 1981) ................................................29

*United States v. Muskovsky*, 863 F.2d 1319 (7th Cir. 1988)........................................29

*United States v. Philip Morris USA, Inc.*, 327 F. Supp. 2d 13 (D.D.C. 2004) .............................28

*United States v. Phillips*, 664 F.2d 971 (5th Cir. 1981)................................................28

*United States v. Riccobene*, 709 F.2d 214 (3d Cir. 1983)..............................................30

*University of Maryland v. Peat, Marwick, Main & Co.*, 996 F.2d 1534 (3d Cir. 1993) ...................................................................................................................28

*Vango Media, Inc. v. City of New York*, 34 F.3d 68 (2d Cir. 1994)..............................21

*Weinstock v. Asian Development Bank*, No. 05-174, 2005 WL 1902858 (D.D.C. July 13, 2005)..........................................................................................................21

*Western Associates Ltd. Partnership v. Market Square Associates*, 235 F.3d 629 (D.C. Cir. 2001) ...............................................................................................39

*Zito v. Leasecomm Corp.*, No. 02-8074, 2003 WL 22251352 (S.D.N.Y. Sept. 30, 2003) ..................................................................................................................26

## STATUTES

18 U.S.C. § 1962.........................................................................................27, 28, 29

22 U.S.C. §§ 288a-288b..............................................................................................20

## EXECUTIVE MATERIALS

Executive Order 11966 of January 19, 1977, 42 Fed. Reg. 4331 (1977) ......................20

# TREATY MATERIALS

*Convention on the Settlement of Investment Disputes Between States and
    Nationals of Other States, Oct. 14, 1966, 17 U.S.T. 1270, T.I.A.S. No.
    6090, Arts. 21-22 ..........................................................................................11, 19, 20, 22

# OTHER AUTHORITIES

ABA Model Rule 1.8(f) ...........................................................................................33

2 Matthews, Arthur F., Andrew B. Weissman & John H. Sturc, *Civil RICO
    Litigation* § 8.01 (2d ed. 1992) ......................................................................32

Rakoff, Jed S., et al., *RICO Civil & Criminal Law* § 1.06 (2009)................................31

*Restatement (Second) of Judgments* § 27 cmt. c (1982) ................................................18

Schreuer, Christoph H., et al., *The ICSID Convention:  A Commentary* (2d ed.
    2009) .............................................................................................................20

Steinitz, Maya, *Whose Claim Is This Anyway? Third Party Litigation Funding*, 95
    Minn. L. Rev. -- (forthcoming 2010), http://ssrn.com/abstract=1586053 .......................34

18 Wright, Charles Alan, et al., *Federal Practice & Procedure* § 4433 (1981)............................14

18A Wright, Charles Alan, et al., *Federal Practice & Procedure* § 4464.1 (2d ed.
    2002) ...............................................................................................................14

## INTRODUCTION

Defendants Freshfields Bruckhaus Deringer U.S. LLP, Brian King, and Jan Paulsson (collectively "Freshfields" or "Defendants") move under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the single-count civil Racketeer Influenced and Corrupt Organizations ("RICO") complaint in this case.

This is just the latest of several legal actions plaintiff RSM Production Corporation ("Plaintiff" or "RSM") has filed challenging the Government of Grenada's decision in 2004 not to grant RSM's untimely request for a license to explore oil and natural gas deposits off the coast of Grenada.  First, in 2004, RSM brought an arbitration against Grenada before the International Centre for the Settlement of Investment Disputes ("ICSID").  Freshfields represented Grenada in that action.  On March 13, 2009, the three-person Tribunal ruled unanimously against RSM, finding that Grenada had not breached a contract between the parties when it denied the license. The Tribunal observed, among other things, that RSM's chief executive officer, Jack J. Grynberg, "can, on occasion, say what he wants to believe or have believed with little or no factual foundation for such belief."  Ex. A [ICSID Op.] ¶ 210.

Second, in 2006, RSM and Grynberg brought a conspiracy action in the U.S. District Court for the Southern District of New York against a number of individuals and companies (notably, *not* including the Defendants here) relating to the same events as the ICSID arbitration. On February 19, 2009, the district court dismissed the complaint on the ground that RSM's conspiracy allegations—claims that it had been denied the license due to a conspiracy to bribe and corrupt Grenadian officials—were "devoid of factual support for each of the causes of action alleged therein."  *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 405, 413 (S.D.N.Y. 2009) ("*Fridman*").  The judge concluded that RSM's claims were "not based on any cognizable facts," but instead were "based on . . . wishful thinking."  *Id.* at 414-15.

Having lost its first two actions, RSM eventually chose to file the instant suit based on the same events against Freshfields—the opposing counsel in the ICSID arbitration—under the civil provisions of the RICO statute.  RSM now claims that Freshfields' representation of Grenada in the ICSID proceeding somehow also constituted an agreement to join the alleged conspiracy about which RSM had litigated and lost in the Southern District of New York.  In its Complaint in this case, RSM identifies the defendants in RSM's prior unsuccessful federal lawsuit in a section called "Conspirators Who Are Not Named as Defendants."  Compl. ¶¶ 5-9.[1]

At best, this suit is an ill-founded and impermissible attempt by RSM to resurrect stale claims brought and lost in other forums by suing the opposing counsel in one of those matters. The suit should be dismissed for four independent reasons, including three threshold defects that bar RSM's claims:

- *Res judicata*:  The claims are barred because they could have been brought, but were not, in the conspiracy action RSM initiated and lost in the Southern District of New York concerning the same nucleus of facts.

- *Immunity*:  This sort of suit against counsel in an ICSID proceeding is expressly barred by Articles 21 and 22 of the ICSID Convention, a binding international obligation of the United States with which RSM agreed to comply in the contract that underlay its ICSID action.

- *Statute of limitations*:  RSM brought this action—obviously an afterthought to its other suits—more than five years after the license denial that constitutes its alleged injury, and it is therefore barred by RICO's four-year statute of limitations.

Finally, this case should be dismissed because it is utterly devoid of any factual basis.  As in its prior unsuccessful federal lawsuit about the same events, RSM has failed to allege facts that render plausible its conclusory allegations—here, the unsupportable claim that by representing Grenada before an international tribunal and doing so successfully, Freshfields

---

[1]     Four of the nine defendants in the earlier suit are here expressly labeled unnamed co-conspirators, while the other five are alleged to have used one of the co-conspirators "as a front." Compl. ¶ 7.

somehow intentionally agreed to join a RICO conspiracy.  For all these reasons, this abusive suit should be dismissed.

## BACKGROUND AND STATEMENT OF FACTS

Apart from conclusory allegations or implausible inferences from other facts, the allegations of the Complaint must be taken as true for purposes of this motion.  *See Atherton v. District of Columbia Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009).  This Court may also take judicial notice of the filings and rulings in related litigation.[2]

### A.    The Parties

The plaintiff in this action is RSM Production Corporation, which is incorporated in the state of Texas.  RSM alleges that it is in the business of pursuing interests in oil and natural gas hydrocarbon exploration and development.  Compl. ¶¶ 1, 10.  RSM's chief executive is Jack J. Grynberg.  *Id.* ¶ 10.

In support of the *res judicata* and immunity defenses at issue in this motion, it is pertinent to observe that during the course of proceedings before ICSID, Grynberg's own counsel described him as "plainly a litigious man."  Ex. A [ICSID Op.] ¶ 209.[3]  Indeed, a search of

---

[2]     It is well established that a court may take judicial notice of public records from other proceedings.  *See Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (taking "'judicial notice of facts on the public record'" and "consult[ing] the relevant opinions— as a court may do upon a motion to dismiss"); *Does I Through III v. District of Columbia*, 238 F. Supp. 2d 212, 217 (D.D.C. 2002) ("[I]t is well established that courts are allowed to take judicial notice of matters in the general public record, including . . . records of prior litigation.") (internal quotation marks omitted); *Howard v. United States Dep't of Educ.*, No. 09-1633, 2010 WL 1137499, at *1 (D.D.C. Mar. 22, 2010) (Sullivan, J.) (comparing plaintiff's complaint to a complaint plaintiff filed in another jurisdiction for purposes of evaluating whether plaintiff's claims were precluded under the doctrine of *res judicata*).

[3]     This Court may refer to the ICSID Arbitration Panel's decision in deciding Defendants' Motion to Dismiss, *inter alia*, because Plaintiff's Complaint specifically references the Panel's decision (Compl. ¶ 29), and it is therefore incorporated by reference into Plaintiff's Complaint.  *See Hutchinson v. Holder*, 668 F. Supp. 2d 201, 217 n.3 (D.D.C. 2009) ("Because the complaint

Grynberg's name and of RSM in Lexis/Nexis Courtlink reveals that they or related entities have been plaintiffs in no fewer than *140* federal and state actions, including at least four other unsuccessful civil RICO or conspiracy actions relating to disputes in the oil or natural gas industry.[4]  Grynberg has been admonished by courts several times for his abusive litigation tactics and groundless claims.  *See Grynberg Petroleum Co. v. Evergreen Energy Partners, LLC*, 485 F. Supp. 2d 1217, 1225-26 & n.5 (D. Colo. 2007) (characterizing Grynberg's brief as "frivolous posturing" and noting that his "spin of the facts" is nothing more than an "assertion" that "takes substantial interpretive liberty"); *Grynberg v. Ivanhoe Energy, Inc.*, 663 F. Supp. 2d 1022, 1026 n.5 (D. Colo. 2009) (imposing sanctions against Grynberg for bringing a RICO claim without "sufficient evidentiary support for [the] allegations"); *In re Natural Gas Royalties Qui Tam Litig.*, 467 F. Supp. 2d 1117, 1148 (D. Wyo. 2006) (referring to Grynberg's "odious tactics" and concluding that he deliberately made "sweeping allegations of fraud . . . based in large part on rank speculation").  With respect to the allegations in the present Complaint, as noted, the ICSID Tribunal and the federal judge considering them concluded they had "little or no factual foundation" or were "wishful thinking."[5]

---

references the e-mail Mr. Goodwin allegedly sent to Ms. Hutchinson regarding sick leave procedure, the Court may reference that e-mail in deciding defendant's motion to dismiss without converting the motion to one for summary judgment.") (citing *Hansen v. Billington*, 644 F. Supp. 2d 97, 102 (D.D.C. 2009)); *Scowcroft Group, Inc. v. Toreador Res., Corp.*, 666 F. Supp. 2d 39, 43 n.2 (D.D.C. 2009) ("The Court may consider documents 'incorporated by reference in the complaint' or 'upon which the complaint necessarily relies' even if the document is not produced by the plaintiff in the complaint[.]") (quoting *Hinton v. Corrections Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009)).

[4]      Those 140 cases are listed in Exhibit C to this Memorandum.  So far as is reflected in the public record, apart from a single default judgment, not one of these actions resulted in a judgment for the plaintiffs.

[5]      Ex. A [ICSID Op.] ¶ 210; *Fridman*, 643 F. Supp. 2d at 415.

Defendant Freshfields Bruckhaus Deringer U.S. LLP is the United States affiliate of a

leading London-based, international law firm.  Compl. ¶ 2.  Defendants Jan Paulsson and Brian

King are both partners with Freshfields or its European affiliate, recognized for their expertise in

international arbitration matters.  The Complaint alleges that Paulsson works in Freshfields'

Paris and Bahrain offices and that King works in Freshfields' New York and Amsterdam offices.

*Id.* ¶¶ 3-4.  Freshfields represented, and continues to represent, the government of Grenada in the

ICSID proceedings.

### B.      The Contract and the Resulting Dispute

This suit arises from a dispute between RSM and the government of Grenada over oil and

natural gas hydrocarbon exploration rights.[6]  On July 4, 1996, RSM and the government of

Grenada entered into a written contract, referred to as the "Petroleum Agreement ("contract" or

"Petroleum Agreement").  *See* Compl. Ex. A.  The Petroleum Agreement provided that Grenada

would issue RSM a license to explore and develop hydrocarbon deposits off the coast of Grenada

if RSM applied for the license within ninety days of the date of the Agreement, and met other

requirements.  Compl. ¶ 10; Compl. Ex. A, art. 3.  The contract further provided that any

disputes arising thereunder would be submitted for arbitration before ICSID.  Compl. Ex. A, art.

26.3.

Within days after the Petroleum Agreement was signed, RSM avers that it stayed the

running of the contractual ninety-day period by invoking a *force majeure* provision in the

contract on the ground that the territorial extent of Grenada's mineral rights was unclear.  Compl.

¶ 18.  RSM withdrew that invocation almost eight years later, in early 2004, but then—as the

ICSID Tribunal unanimously concluded—failed to submit its application for the license within

---

[6]      Plaintiff's concrete allegations against Defendants are false in various respects, but must
be taken as true for purposes of this motion.

the stipulated time thereafter, finally doing so out of time on April 14, 2004.  Compl. ¶¶ 20-21,

29; *see* Ex. A [ICSID Op.] ¶¶ 202, 354.  On April 27, 2004, a senior Grenadian official, Gregory

Bowen, informed RSM that its application was untimely and would not be granted.  Compl.

¶ 23.[7]

### C.     The ICSID Proceeding

On August 31, 2004, pursuant to the requirements of the Petroleum Agreement, RSM

filed a Request for Arbitration with ICSID, challenging Grenada's denial of RSM's application

for an exploration license.  Compl. ¶ 29; ICSID Case No. ARB/05/14.  According to the

Complaint, Grenada eventually retained Freshfields, and in particular a team led by Paulsson and

King, to represent it in the ICSID proceeding.  RSM alleges that Grenada arranged to have

Freshfields' fees paid by a company called Global Petroleum, Ltd. ("Global Petroleum") and

associated individuals, who sought the exploration license for themselves.  Compl. ¶¶ 44-45, 50.

RSM does not allege that Freshfields played any role in Grenada's earlier decision to deny

RSM's application for the exploration license, which (necessarily) had occurred prior to

Grenada's retention of Freshfields for the ICSID proceeding.

RSM presented contract issues to the ICSID Tribunal—whether RSM's application for an

exploration license had been timely and whether Grenada's decision to deny RSM the license

breached the terms of that agreement.  Ex. A [ICSID Op.] ¶¶ 30, 59-77, 212; *see also* Compl.

¶ 29.[8]  On March 13, 2009, the three-person ICSID Tribunal unanimously rejected RSM's claim.

Ex. A [ICSID Op.] ¶ 502.  The Tribunal concluded that RSM's license application had been

---

[7]     Mr. Bowen is alleged to have been Grenada's Minister for Agriculture, Lands, Forestry,
Fisheries, Public Utilities, and the Marketing and National Importing Board.  Compl. ¶ 5.

[8]     The Tribunal learned of RSM's corruption allegations, made in the conspiracy suit filed
in the Southern District of New York, but by RSM's election the ICSID proceeding addressed
only contract issues.  *See* Ex. A [ICSID Op.] ¶¶ 30, 212.

untimely, and that Grenada was entirely within its rights in denying the license and terminating the contract on that basis. *Id.* ¶¶ 393, 503; Compl. ¶ 29. The Tribunal also unanimously found that RSM and Grynberg lacked expertise they had claimed to possess when they sought the original Petroleum Agreement, Ex. A [ICSID Op.] ¶¶ 452-54; had themselves repeatedly breached the Petroleum Agreement by unreasonably injecting themselves into Grenada's sovereign boundary negotiations with neighboring countries, *id.* ¶¶ 307, 325, 395; *see* ¶ 327 (finding that "RSM's secretive, unauthorized, crude 'horse-trading' approach, backed up with wild threats and vexatious litigation if unsuccessful, contradicted the essential principles of maritime boundary negotiations between states"); and had been "vague, ambiguous and sometimes contradictory" with respect to their financial resources, *id.* ¶ 440.[9]

### D.   RSM's Suit in the Southern District of New York

On November 1, 2006, while the ICSID arbitration was pending, RSM, Grynberg and Grynberg Petroleum Company, filed their lawsuit in the U.S. District Court for the Southern District of New York, against Minister Bowen, BP p.l.c., Lord John Browne, TNK-BP Limited, Mikhail Fridman, Len Blavatnik, Lev Model, Lev Korchagin, and Global Petroleum.[10] *RSM Prod. Corp. v. Fridman*, No. 06-11512 (S.D.N.Y.); *see also* Compl. ¶ 43. The suit asserted claims of tortious interference with contract, tortious interference with prospective business advantage, and civil conspiracy, each predicated on the allegation that the *Fridman* defendants conspired to deny RSM the exploration license. *Fridman*, 643 F. Supp. 2d at 389. The suit in the Southern District of New York expressly alleged that Grenada denied RSM the license

---

[9]      RSM has challenged that award in an ICSID Annulment Proceeding. Compl. ¶ 29.

[10]     Model, Global Petroleum, BP, Browne, and TNK–BP were not named as defendants until the plaintiffs filed their Second Amended Complaint in October 2007. *See Fridman*, 643 F. Supp. 2d at 393.

because of bribes paid to Minister Bowen and other Grenadian officials by alleged, identified but "not named," co-conspirators in this action (who were named as defendants in *Fridman*).  *Id.* at 392; Compl. ¶¶ 5-9.  Plaintiffs also alleged that the *Fridman* defendants induced Grenada to breach the Petroleum Agreement by promising to pay Grenada's legal costs in the ICSID proceeding, and explicitly identified Freshfields (through its European affiliate) as being Grenada's counsel.  *Fridman*, 643 F. Supp. 2d at 406; Ex. B [*Fridman* Compl.] ¶ 40.  The plaintiffs were permitted to amend their complaint on three separate occasions.  *Id.* at 393.  The *Fridman* defendants moved to dismiss the plaintiffs' Third Amended Complaint on the grounds (among others) that the plaintiffs had failed to state a claim on which relief could be granted.

On February 19, 2009, the *Fridman* court issued an order granting the defendants' motions and dismissing all claims with prejudice under Federal Rule of Civil Procedure 12(b)(6), concluding that the "factual allegations do not support any legally cognizable claim."  643 F. Supp. 2d at 414.[11]  Rather, the Court found that the "Third Amended Complaint is devoid of factual support for each of the causes of action alleged therein and is, instead, based almost entirely on speculation and inference stacked upon inference."  *Id.* at 413.  Because it was reviewing the "fourth iteration of Plaintiffs' allegations," there was "nothing to suggest that affording Plaintiffs a fourth opportunity to amend w[ould] cure the deficiencies."  *Id.*  RSM has appealed.  Compl. ¶ 43.  In none of the various iterations of the plaintiffs' complaint were any claims asserted against Freshfields.

---

[11]     The *Fridman* court also found that (i) Minister Bowen was immune from suit under the Foreign Sovereign Immunities Act, 643 F. Supp. 2d at 399; and (ii) the court lacked personal jurisdiction over Mr. Browne, *id.* at 402.

**E.       This Lawsuit**

On March 17, 2010, RSM filed this lawsuit against Freshfields, King and Paulsson, alleging that they conspired with the *Fridman* defendants to violate RICO by agreeing to represent Grenada in the ICSID proceeding.  The claimed RICO enterprise is an alleged association-in-fact comprised overwhelmingly of the defendants in the *Fridman* action.  Compl. ¶¶ 7, 57.  The Complaint discusses each of the *Fridman* defendants in a section called "Conspirators Who Are Not Named As Defendants," identifying four of them as Freshfields' alleged co-conspirators, and claiming that one of those (Global Petroleum) "act[ed] as a front" for the rest of the *Fridman* defendants.  *Id.* ¶¶ 5-9.[12]

RSM's Complaint here sets forth the same allegations the *Fridman* court has already rejected as purely speculative.  In particular, as in *Fridman*, the Complaint alleges that a group of individuals associated with Global Petroleum made illegal payments to Minister Bowen and other high-ranking Grenadian officials in order to induce them to deny RSM's license application and to issue an exclusive license to Global Petroleum (*compare* Compl. ¶¶ 40, 42, 57, *with* Ex. B [*Fridman* Compl.] ¶¶ 49-50, 69-71), and it alleges that, as added inducement, the conspirators agreed to fund the legal costs of the ICSID arbitration (*compare* Compl. ¶¶ 44-46, *with* Ex. B [*Fridman* Compl.] ¶¶ 40, 53-54, 61).  In addition, as in *Fridman*, the Complaint alleges several unrelated acts of corruption by Grenadian officials (*compare* Compl. ¶¶ 31-35, *with* Ex. B [*Fridman* Compl.] ¶¶ 41-43).

Notably for purposes of the statute of limitations defense here, the Complaint includes allegations that RSM learned on April 27, 2004, that Grenada considered its application untimely (Compl. ¶ 23); that RSM knew before August 31, 2004 (when it initiated the ICSID proceeding)

---

[12]       The Complaint also describes Michael Melnicke, who was not a *Fridman* defendant, as an unnamed conspirator.  Compl. ¶ 8.

that Grenada had denied its license application (*id.* ¶ 29); that RSM learned in August 2005 that a director of Global Petroleum claimed to "own" the government of Grenada and also claimed to be able to resolve the license dispute (*id.* ¶ 37); and that RSM learned in "early 2006" that individuals associated with Global Petroleum "promised to pay all of Grenada's legal fees in connection with the arbitration between RSM and Grenada" (*id.* ¶ 42).[13]

RSM's allegations specifically addressed to the Freshfields defendants are sparse at best, and fail to specify even a single alleged act of misconduct by them.  The core allegation made against the Freshfields defendants is that they represented the government of Grenada in the ICSID arbitration despite "presumably" being aware of certain alleged bases to question the relationship between their client and Global Petroleum.  *See* Compl. ¶¶ 50, 56, 57, 62.  The few allegations of the Complaint that even mention Freshfields consist of conclusory assertions that the firm knew its retainer "was being paid through [a] corrupt relationship" (*id.* ¶ 50); failed to notify the authorities that it was purportedly in receipt of criminal property (*i.e.*, its legal fees) (*id.* ¶ 51); accepted the engagement "in the face of a transparent conflict of interest" (*id.* ¶ 52); "knowingly agreed to perform services" that "facilitated the activities" of the alleged conspirators (*i.e.*, provided representation in the ICSID proceeding) (*id.* ¶ 56); and benefited by receiving legal fees (*id.* ¶ 62).  There is no allegation that any Freshfields defendant participated in any act of racketeering, was specifically aware of any act of racketeering, or in any way

---

[13]     Similar allegations were made in the *Fridman* Complaint.  *Compare* Ex. B [*Fridman* Compl.] ¶ 34 (Bowen notified RSM that its application was untimely), ¶ 40 (RSM filed a Request for Arbitration in August 2004), ¶ 46 (Grynberg was told in August 2005 by Korchagin that he "owns" the government of Grenada), ¶ 50 (RSM learned in early 2006 that the alleged conspirators promised to pay Grenada's legal fees).  The *Fridman* court noted that Grynberg alleged that he knew no later than "January or February 2006 . . . that the defendants had a 'scheme to interfere' with RSM's 'exclusive contract' with Grenada . . . by bribing Bowen and funding Grenada's legal fees and expenses in the ICSID arbitration."  *RSM Prod. Corp. v. Fridman*, No. 06-11512, 2007 WL 2295897, at *2 (S.D.N.Y. Aug. 10, 2007).

sought to interfere with the integrity of the ICSID arbitration.  Indeed, there is not a single non-conclusory allegation in the Complaint inconsistent with the proposition that Freshfields accepted an engagement to represent the government of Grenada in a contract dispute for the usual reasons lawyers in private practice accept assignments, and did so honorably and effectively.

## SUMMARY OF ARGUMENT

This suit should be dismissed in its entirety for at least *four* independent reasons:

*First*, the Complaint fails to state a claim upon which relief may be granted because it is precluded under the doctrine of *res judicata*.  RSM brought an action in the Southern District of New York against Defendants' alleged co-conspirators based on the same core allegations it advances here, and that suit was dismissed with prejudice.  Under well-settled precedent, the law does not tolerate attempts to circumvent the bar on re-litigation by bringing suit against successive defendants on the same nucleus of facts.

*Second*, this Court lacks subject matter jurisdiction over this action because Defendants are immune from suit.  The Complaint is based entirely on the allegation that Freshfields joined and furthered a conspiracy through service as counsel in a proceeding under the Convention on the Settlement of Investment Disputes Between States and Nationals of Other States (the "ICSID Convention"), which is a Treaty signed and ratified by the United States.  Articles 21 and 22 of the Convention expressly provide counsel in ICSID proceedings with absolute immunity with respect to acts taken in that capacity.  Articles 21 and 22 are self-executing and directly preclude this Court's jurisdiction over these claims.  Moreover, RSM is bound to abide by those provisions under the Petroleum Agreement and by virtue of its own reliance upon the ICSID Convention in its ICSID action.

*Third*, the Complaint on its face shows that its single count is barred under RICO's four-year statute of limitations.  The Complaint openly acknowledges that RSM knew in the Summer of 2004 that Grenada denied RSM's application for an exploration license—which is the only injury RSM can assert.  RSM also asserts that it learned about the alleged conspiracy in the Summer of 2005.  As a result, the Complaint itself demonstrates that any potential RICO claim accrued more than four years before suit was filed in March 2010, and is therefore barred.

*Finally*, the Complaint fails to offer allegations sufficient to render plausible its core claim, and thus must be dismissed under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Even more so than in its action in the Southern District of New York, Plaintiff here rests entirely on "speculation and inference stacked upon inference" and "wishful thinking" to allege that a reputable international law firm knowingly joined a criminal conspiracy by (successfully) representing a sovereign nation in an ICSID proceeding.  *See Fridman*, 643 F. Supp. 2d at 413, 415.  A conspiracy to violate RICO requires a multifaceted agreement to engage in conduct that satisfies all of the complex elements of a RICO violation.  The allegations must be specific and grounded in facts sufficient to support the charge, none of which is present here.  Stripped of rhetoric, conclusory allegations, and pure speculation—as they must be for purposes of a motion under Rule 12(b)(6)—the actual facts set forth in the Complaint are entirely consistent with the far more plausible and mundane proposition that Freshfields agreed to assert Grenada's valid contractual defense in an international arbitration, for a fee, and nothing more.  As the Supreme Court made clear in *Twombly*, where, as here, lawful, rational economic behavior is at least as plausibly inferred from the facts of a Complaint as unlawful conspiracy, the complaint should be dismissed.  550 U.S. at 554-55.

**ARGUMENT**

I.    **RSM'S CLAIMS ARE BARRED BY RES JUDICATA.**

RSM's claim against Freshfields rests on the same allegations of bribery and corruption that were the subject of its action in the Southern District of New York, a suit that was dismissed with prejudice.  *See RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 415 (S.D.N.Y. 2009). The dismissal of those claims binds RSM and precludes its new action in this Court based on nearly identical allegations.  Accordingly, Plaintiff's claim should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  *See Stanton v. District of Columbia Ct. of Appeals*, 127 F.3d 72, 76-77 (D.C. Cir. 1997); *Howard v. United States Dep't of Educ.*, No. 09-1633, 2010 WL 1137499, at *1 (D.D.C. Mar. 22, 2010) (Sullivan, J.); *Hemphill v. Kimberly-Clark Corp.*, 530 F. Supp. 2d 108, 111 (D.D.C. 2008) (noting that because a court may take judicial notice of public records from other proceedings, *res judicata* is a defense that is "properly brought in a pre-answer Rule 12(b)(6) motion").

An unsuccessful litigant may not re-litigate a lost action by asserting related claims against new defendants.  As the D.C. Circuit held in *McLaughlin v. Bradlee*, 803 F.2d 1197 (D.C. Cir. 1986), "little good and much harm can come from allowing a determined plaintiff to retry the same issues in exhausting fashion against successive defendants." *Id.* at 1204-05. Courts have repeatedly held that the doctrine of *res judicata* mandates the dismissal of claims against alleged co-conspirators when the plaintiff lost an earlier action against others based on the same alleged conspiracy.[14]  Preclusion is particularly appropriate where, as here, the later suit

---

[14]       *See, e.g.*, *McLaughlin v. Bradlee*, 599 F. Supp. 839, 847-48 (D.D.C. 1984), *aff'd*, 803 F.2d 1197 (D.C. Cir. 1986); *In re Teltronics Servs., Inc.*, 762 F.2d 185, 192 (2d Cir. 1985); *Gambocz v. Yelencsics*, 468 F.2d 837, 842 (3d Cir. 1972); *Discon Inc. v. NYNEX Corp.*, 86 F. Supp. 2d 154, 166 (W.D.N.Y. 2000); *Fonseca v. Columbia Gas Sys., Inc.*, 37 F. Supp. 2d 214, 227-28 (W.D.N.Y. 1998); *Gambrell v. Hess*, 777 F. Supp. 375, 381 (D.N.J. 1991); *Milsap v.*

"reflect[s] no more than a last desperate effort by a plaintiff who is pursuing a thin claim against defendants who were omitted from the first action because they were less directly involved than the original defendants."  *See* 18A Wright et al., *Federal Practice & Procedure* § 4464.1, at 726 (2d ed. 2002).  We respectfully submit that this principle and those cases make dismissal especially appropriate here.

A plaintiff's action is barred by the doctrine of *res judicata* "if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction."  *Natural Res. Def. Council v. EPA*, 513 F.3d 257, 260 (D.C. Cir. 2008) (internal quotation marks omitted).  All four of these conditions are satisfied here.

The third and fourth prerequisites for the *res judicata* test are met because the *Fridman* court (i) had jurisdiction based on diversity of citizenship between the parties, *see* 643 F. Supp. 2d at 400, and (ii) rendered a final judgment on the merits by dismissing RSM's claims with prejudice, *see id.* at 413-14; *see also Federated Dep't Stores Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits.") (internal quotation marks and citations omitted).[15]

---

*United States Dep't of Hous. & Urban Dev.*, No. 86-220, 1986 WL 6633, at *4 n.1 (D. Minn. June 11, 1986).

[15]     "Under well-settled federal law, the pendency of [RSM's] appeal does not diminish the *res judicata* effect of the judgment."  *Hunt v. Liberty Lobby, Inc.*, 707 F.2d 1493, 1497 (D.C. Cir. 1983); *see National Post Office Mail Handlers, Watchmen, Messengers, & Group Leaders Div. of Laborers Int'l Union of N. Am., AFL-CIO v. American Postal Workers Union, AFL-CIO*, 907 F.2d 190, 192 (D.C. Cir. 1990) (noting that the federal rule is to grant preclusive effect to a final judgment even when an appeal is pending) (citing 18 Wright et al., *Federal Practice & Procedure* § 4433, at 305-12 & n.8 (1981)); *Blinder, Robinson & Co. v. SEC*, 837 F.2d 1099, 1104 (D.C. Cir. 1988) ("We note that the fact that a judgment is pending on appeal ordinarily does not detract from its finality (and therefore its preclusive effect) for purposes of subsequent litigation.").  On facts such as those presented by the instant case, courts in this district have not hesitated to enter outright dismissals.  *See, e.g.*, *Kissi v. EMC Mortgage Corp.*, 627 F. Supp. 2d

The first requirement—that the same claims be at issue—is satisfied because the *Fridman* complaint was founded on the same alleged facts and circumstances as this one.  To be sure, RSM now asserts a RICO claim rather than the other tort theories it pursued in *Fridman*.  But a plaintiff cannot evade *res judicata* merely by advancing a new legal theory for the same alleged injury based on the same events alleged in the earlier action.  As the D.C. Circuit recently explained, "it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory on which a litigant relies." *Capitol Hill Group v. Pillsbury, Winthrop, Shaw, Pittman, LLC,* 569 F.3d 485, 490 (D.C. Cir. 2009) (internal quotation marks omitted).  *Res judicata* applies not only to arguments that were made, but also to arguments "that *should have been* raised in an earlier suit."  *SBC Commc'ns Inc. v. FCC*, 407 F.3d 1223, 1230 (D.C. Cir. 2005) (emphasis in original).  To avoid piecemeal, repetitive litigation, the D.C. Circuit applies a "pragmatic, transactional approach to determine what constitutes a cause of action." *U.S. Indus., Inc. v. Blake Const. Co.*, 765 F.2d 195, 205 (D.C. Cir. 1985).  Preclusion applies so long as the claim arises out of the "same nucleus of facts" as an earlier action.  *Capitol Hill Group*, 569 F.3d at 490; *see also Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210, 217 (D.C. Cir. 2004) (in determining whether two cases arise from the same claim, "the court will consider whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage") (internal quotation marks omitted).

The claim against Freshfields in this case arises out of the same nucleus of facts as the claims alleged against the defendants in the *Fridman* action.  In a section called "Conspirators

27, 33 (D.D.C. 2009); *Nader v. Democratic Nat'l Comm.*, 590 F. Supp. 2d 164, 169 (D.D.C. 2008).

Who Are Not Named As Defendants," the Complaint describes each of the *Fridman* defendants as either directly involved in the alleged conspiracy or as having been involved indirectly through a corporate "front."  The allegations here merely add Freshfields as another supposed member of the conspiracy alleged in *Fridman*.  And the Complaint here is founded on the same purported misconduct:  alleged bribery in the form of direct payments to Grenadian officials and funding of the ICSID arbitration, all for the alleged purpose of denying RSM the exploration license and securing the exploration rights for Global Petroleum.  Many of Plaintiff's *Fridman* allegations are repeated verbatim or almost verbatim in the Complaint:

- Both suits allege that in September of 1996, Minister Bowen solicited a bribe from RSM, and upon being rebuffed, "Bowen obstructed, harassed and intimidated RSM and Grynberg in their efforts to explore, develop and produce Grenada's oil and gas natural resources."  *Compare* Compl. ¶ 12, *with Fridman*, 643 F. Supp. 2d at 391 (quoting Third Amended Complaint) and Ex. B [*Fridman* Compl.] ¶ 15.

- In the *Fridman* action, as here, RSM alleged that "Melnicke revealed to Grynberg that Blavatnik and Fridman had bribed Bowen so that their group could develop the petroleum reserves believed to exist off the shore of Grenada.  Melnicke further revealed that Blavatnik and Fridman had also promised to furnish bribes to Grenadian government officials in the future, and had also promised to finance Grenada's legal defense in the ICSID arbitration" and that "at least one of the meetings designed to discuss the scheme occurred in New York, with Blavatnik, Fridman and Bowen all in attendance."  643 F. Supp. 2d at 392, 406; *see* Ex. B [*Fridman* Compl.] ¶ 50.[16]

---

[16]   *Compare* Compl. ¶ 42 ("In the course of trying to negotiate this agreement, Melnicke revealed to Grynberg in early 2006 that Len Blavatnik and Mikhail Fridman had bribed Gregory Bowen so that their group could develop the vast petroleum reserves believed to exist in the

- In the *Fridman* action, as here, RSM alleged that "[i]n June and July of 2007, certain official documentation was made public by the Government of Grenada; these documents showed that Global Petroleum had invested more than $4 million into Grenada's legal defense before the ICSID tribunal." 643 F. Supp. 2d at 392; *see also id.* at 406 ("Fridman and Blavatnik promised to fund, and are funding Grenada's legal defense in the ICSID claim for breach of contract initiated by RSM after its license application was denied."); Ex. B [*Fridman* Compl.] ¶¶ 53-54.[17]

Because the factual core in *Fridman* was nearly identical to the facts alleged to support RSM's RICO claim here, both complaints arise out of the "same nucleus of facts." *Capitol Hill Group*, 569 F.3d at 490. RSM itself admits as much in the final paragraph of the section of its Complaint here entitled "RSM Discovers the Illegal Scheme," *see* Compl. ¶ 36, where RSM's

---

offshore Grenadian territory. Melnicke further revealed that Blavatnik and Fridman had promised additional bribes to Grenadian government officials in the future, and had promised to pay all of Grenada's legal fees in connection with the arbitration between RSM and Grenada. According to Melnicke, at least one of the meetings designed to facilitate this bribe occurred in New York, with Blavatnik, Fridman and Bowen all in attendance. Melnicke also told Grynberg that he had arranged a fundraiser in New York for Prime Minister Mitchell's re-election effort. Melnicke's account to Grynberg rang true, since Fridman and Blavatnik have been named in the past for being alleged participants in conspiracies to bribe the individual officials of cash-poor, oil-rich governments.").

[17]     *Compare* Compl. ¶ 45 ("In June and July 2007, minutes of certain official Grenadian Government proceedings were made public. These proceedings show that Global Petroleum Group had to that point invested over $4 million into the legal defense of the Government of Grenada in the arbitration against RSM. RSM has since uncovered specific evidence of the payments—one check of $2,500,000 which appears to have been paid personally by Lev Model to the Government of Grenada by check dated October 12, 2005, and going from Bank of Grenada Limited to Bank of New York's Wall Street Branch, and a Republic Bank wire transfer of $1,899,975 dated May 25, 2006.").

filing of the *Fridman* action culminates its discovery of "the Illegal Scheme" allegedly at issue here. *Id.* ¶ 43.[18]

Last, the requirement that the subsequent litigation be between "the same parties or their privies" is met where, as here, the plaintiff alleges that the defendant was a member of an alleged conspiracy at issue in a prior action. The need for privity is met and *res judicata* will apply when a plaintiff brings multiple actions arising from the same purported conspiracy, even if subsequent suits name new defendants. *See Negron-Fuentes v. UPS Supply Chain Solutions*, 532 F.3d 1, 10 (1st Cir. 2008) (*res judicata* applies "where some alleged conspirators are sued in the first (unsuccessful) action and the remainder in a second suit based on the same allegations"); *In re Teltronics Servs., Inc.*, 762 F.2d 185, 192 (2d Cir. 1985) (holding suit barred by *res judicata* where defendant was alleged to be a co-conspirator of the defendant from a prior unsuccessful action which arose from the same events); *Gambocz v. Yelencsics*, 468 F.2d 837, 842 (3d Cir. 1972) (same); *cf. McLaughlin*, 803 F.2d at 1204-05 (D.C. Cir.) (claims against alleged co-conspirator named for the first time in the later action barred under doctrine of issue preclusion). Many district courts, including this Court in *McLaughlin*, have applied this principle.[19]

RSM asserted the same nucleus of operative facts in the *Fridman* action against Defendants' alleged co-conspirators. The *Fridman* court ruled RSM was unable to support its

---

[18]     As in *McLaughlin*, therefore, "the issues in the two suits are very 'closely related,' there remains at least 'a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first,' and evidentiary proceedings in the first action could 'reasonably have expected to have embraced the matter sought to be presented in the second.'"  803 F.2d at 1203 (quoting *Restatement (Second) of Judgments* § 27, cmt. c (1982)).

[19]     *See McLaughlin*, 599 F. Supp. at 847-48; *Discon Inc.*, 86 F. Supp. at 166; *Fonseca*, 37 F. Supp. 2d at 227-28 (collecting cases from the Second Circuit); *Gambrell*, 777 F. Supp. at 381; *Milsap*, 1986 WL 6633, at *4 n.1.

claims.  RSM is not permitted to bring variants of those same claims against Freshfields as a new action in another court.  Its claims here should be dismissed.

## II.      THIS ACTION SHOULD BE DISMISSED BECAUSE DEFENDANTS ENJOY ABSOLUTE IMMUNITY FROM SUIT UNDER THE ICSID CONVENTION.

The ICSID Convention, which the United States signed and ratified, specifically confers "immunity from legal process" on counsel in ICSID proceedings "with respect to acts performed" in connection with such proceedings.  Oct. 14, 1966, 17 U.S.T. 1270, T.I.A.S. No. 6090, Arts. 21-22.  Under the plain language of these immunity provisions, Freshfields, King, and Paulsson are immune from a suit, such as this one, that relates to their representation of Grenada before an ICSID Tribunal.  That immunity deprives this Court of subject matter jurisdiction, and the Complaint must be dismissed under Rule 12(b)(1).[20]

### A.      Under the Plain Language of Articles 21 and 22 of the ICSID Convention Defendants Are Immune from this Suit.

The ICSID Convention provides the participants in ICSID proceedings—including arbitrators, counsel, and others—with broad immunity from suit in national courts.  Article 22 of the Convention provides that the "provisions of Article 21 shall apply to persons appearing in proceedings under this Convention as parties, agents, *counsel,* advocates, witnesses or experts" (emphasis added).  Article 21, in turn, provides that such persons "*shall enjoy immunity from*

---

[20]    Dismissal based on immunity is for want of subject matter jurisdiction.  *See Polak v. International Monetary Fund*, 657 F. Supp. 2d 116, 121 (D.D.C. 2009) (dismissing suit for want of subject matter jurisdiction where defendants were immune from suit under the International Organizations Immunity Act); *Osseiran v. International Fin. Corp.*, 498 F. Supp. 2d 139, 143 (D.D.C. 2007), *aff'd*, 552 F.3d 836 (D.C. Cir. 2009) ("A court must dismiss a claim if it does not possess subject matter jurisdiction to hear and decide the dispute due to a defendant's immunity from suit.").

*legal process with respect to acts performed by them in the exercise of their functions*, except when the Centre waives this immunity" (emphasis added).[21]

Articles 21 and 22 of the ICSID Convention, therefore, afford to counsel in ICSID proceedings "immunity from legal process with respect to acts performed by them in the exercise of their functions."[22]  This immunity clearly bars any legal proceeding, such as this lawsuit, based on a lawyer's representation of a client in an ICSID proceeding.[23]  *See Brzak v. United Nations*, 597 F.3d 107, 111 (2d Cir. 2010) (affirming dismissal because Convention on Privileges and Immunities of the United Nations, which similarly confers "immunity from every form of legal process," affords absolute immunity from suit).[24]  Indeed, immunity from legal

---

[21]    The only exception would be where the Centre waived immunity, which has not occurred in this case.  A waiver of the immunity accorded to international organizations, under national and international law, "must generally be expressly stated."  *Mendaro v. World Bank*, 717 F.2d 610, 617 (D.C. Cir. 1983).  Plaintiff has not alleged any waiver of immunity.

[22]    *See* Schreuer et al., *The ICSID Convention:  A Commentary* 62, 65 (2d ed. 2009) (confirming that "Art. 21 deals with the personal immunities and privileges of individuals associated with the Centre's work," and "Art. 22 extends the privileges and immunities granted by Art. 21 to parties and their representatives as well as to witnesses and experts").

[23]    Notably, the Convention's broad grant of immunity is not subject to carve-outs and exceptions, unlike some other species of immunity.  *Compare Oceanic Exploration Co. v. ConocoPhillips, Inc.*, No. 04-332, 2006 WL 2711527, at *3-10, 14-15 (D.D.C. Sept. 21, 2006) (Sullivan, J.) (discussing limitations on the Foreign Sovereign Immunities Act and the Act of State Doctrine).

[24]    This grant of immunity is not unusual.  *See Brzak*, 597 F.3d at 114 ("Legislatively and judicially crafted immunities of one sort or another have existed since well before the framing of the Constitution, have been extended and modified over time, and are firmly embedded in American law.").  The United States affords immunity of similar scope to a broad range of international organizations (and the people affiliated with them) through the International Organizations Immunity Act ("IOIA"), 22 U.S.C. §§ 288a-288b.  In fact, ICSID is an international organization encompassed by the IOIA.  *See* Executive Order 11966 of January 19, 1977, 42 Fed. Reg. 4331 (1977) (designating ICSID as a public international organization entitled to enjoy the privileges, exemptions, and immunities conferred by the IOIA).  And of course, the United States is a party to several treaties that, like the ICSID Convention, confer broad immunities.  *See generally Bzrak*, 597 F.3d at 107.

process has been interpreted in a wide variety of statutes as providing immunity from suit.[25]

The scope of this immunity is broad, as confirmed by the ICSID Convention's use of the expansive phrase "with respect to."  A number of courts have noted that "with respect to" should be construed as reaching every form of connection, and is even broader than a phrase such as "arising out of," in that it is "not necessarily tied to the concept of a causal connection."  *Coregis Ins. Co. v. American Health Found., Inc.*, 241 F.3d 123, 128 (2d Cir. 2001); *see Vango Media, Inc. v. City of New York*, 34 F.3d 68, 74 (2d Cir. 1994) (treating "with respect to" as synonymous with "relating to," and noting that the Supreme Court has interpreted the latter phrase expansively).  The ICSID Convention therefore provides for immunity against suits encompassing counsel's participation in an ICSID proceeding.

Here, the allegations against Freshfields in the Complaint rely upon the Defendants' participation as counsel in an ICSID proceeding.  The Complaint uses Freshfields' agreement to serve as counsel in the ICSID proceeding, its provision of those services during the ICSID proceeding, and its receipt of compensation for those services, as the sole manifestations of Defendants' alleged agreement to join the purported conspiracy.  But Freshfields' agreement to represent Grenada was an essential step in serving as counsel in the ICSID proceeding, and was therefore an act performed in the exercise of that function.  Similarly, the provision of those

---

[25]     *See, e.g.*, *Lutcher S. A. Celulose e Papel v. Inter-American Dev. Bank*, 382 F.2d 454, 459 (D.C. Cir. 1967) (discussing "immunity from every form of legal process" provided by the Inter-American Development Bank Agreement as providing immunity from suit); *Emmanuel v. United States*, 253 F.3d 755, 756 (1st Cir. 2001) (Convention on the Privileges and Immunities of the United Nations); *De Luca v. United Nations Org.*, 841 F. Supp. 531, 533, (S.D.N.Y. 1994), *aff'd*, 41 F.3d 1502 (2d Cir. 1994) (same); *Galustian v. Peter*, 591 F.3d 724, 728 (4th Cir. 2010) (Coalition Provisional Authority Order Number 17, providing immunity to American forces in Iraq); *Estate of Manook v. Research Triangle Inst., Int'l & Unity Res. Group, L.L.C.*, Nos. 08-0096, 0595, 2010 WL 675264, at *10 (D.D.C. Feb. 5, 2010) (same); *Weinstock v. Asian Dev. Bank*, No. 05-00174, 2005 WL 1902858, at *4 (D.D.C. July 13, 2005) (Asian Development Bank Act).

services and the acceptance of compensation for them are intimately bound up with that function.

Allowing RSM's claim to proceed, therefore, would interfere with the ICSID Convention's

stated intent to protect arbitration counsel from exposure to legal process as a result of

participating in an ICSID proceeding.  That protection would be thwarted if immunity could be

overcome by the allegation that agreement to participate in an ICSID arbitration, the substance of

that participation, or the acceptance of remuneration for those services, could form the basis for

liability in another proceeding.  *Compare Ashelman v. Pope*, 793 F.2d 1072 (9th Cir. 1986) (en

banc) ("The primary policy of extending immunity to judges and to prosecutors is to ensure

independent and disinterested judicial and prosecutorial decisionmaking. . . .  To foreclose

immunity upon allegations that judicial and prosecutorial decisions were conditioned upon a

conspiracy or bribery serves to defeat these policies.").  Accordingly, the claim asserted by RSM

here falls squarely within the ICSID immunity provision.

### B.      The ICSID Immunity Provisions Are Binding Here.

RSM is bound by the immunity provisions of Articles 21 and 22 of the ICSID

Convention for three independent reasons:

*First*, those provisions are self-executing and are therefore the domestic law of the United

States.  Articles 21 and 22 relate expressly and exclusively to "legal process," and thus constitute

specific directives to the courts that counsel who represent parties in ICSID proceedings "*shall*"

enjoy immunity from suit with respect to acts performed in the course of such representation.  A

treaty provision that provides a directive to the judiciary is self-executing.  *See McKesson Corp.*

*v. Islamic Rep. of Iran*, 539 F.3d 485, 489 (D.C. Cir. 2008); *Diggs v. Richardson*, 555 F.2d 848,

851 (D.C. Cir. 1976).  The ICSID immunity provisions therefore preclude jurisdiction here.  *See,*

*e.g.*, *Brzak*, 597 F.3d at 113 (finding similar treaty provisions self-executing and "binding on

American courts"); *see Fund for Animals, Inc. v. Kempthorne*, 472 F.3d 872, 879 (D.C. Cir.

2006) (Kavanaugh, J., concurring) (noting that "self-executing treaties automatically become part of domestic American law").

*Second*, RSM is bound by Articles 21 and 22 under traditional contract law principles because it *agreed* to be bound by the ICSID Convention, including Articles 21 and 22, in its Petroleum Agreement with Grenada.  *See* Compl. Ex. A, art. 26, at 30;[26] *see also Grynberg v. BP P.L.C.*, 585 F. Supp. 2d 50, 55 (D.D.C. 2008) (holding in another of Grynberg's lawsuits that because the parties' contract contained a mandatory arbitration clause incorporating rules of the American Arbitration Association, Grynberg was bound by the terms of those rules); *Liberian E. Timber Corp. v. Gov't of Rep. of Liber.*, 650 F. Supp. 73, 76 (S.D.N.Y. 1986) (holding that when state entered into a contract specifying that disputes would be settled through ICSID arbitration, state necessarily consented to ICSID Convention's rules, including its enforcement provision); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989) (holding that "[b]y contracting to have all disputes resolved according to the Rules of the ICC . . . [plaintiff] agreed to be bound by" provisions in those rules requiring that issue of validity be determined by arbitrator).[27]

*Third*, when RSM initiated the ICSID proceeding that underlies its claims against Freshfields here, it thereby invoked and sought the aid of the rules of the ICSID Convention in

---

[26]     Plaintiff attached the Petroleum Agreement to the Complaint, and in deciding a motion to dismiss, a court may consider "any documents either attached to or incorporated into the complaint."  *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-45 (D.C. Cir. 1997).

[27]     Because counsel in ICSID proceedings are intended beneficiaries of Articles 21 and 22, as incorporated in the Agreement, Defendants have the right to enforce RSM's agreement to be bound by the immunity provisions of the ICSID Convention.  *See Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 286 (D.C. Cir. 1993) ("[I]t is a fundamental principle of contract law that parties to a contract may create enforceable contract rights in a third party beneficiary."); *accord SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 157 (D.C. Cir. 1998).  When RSM agreed to resolve all disputes arising under the Petroleum Agreement in an ICSID proceeding under the ICSID Convention, RSM consented to Defendants' immunity because the "mutual promises contained in the [ICSID Convention] were intended by the parties to benefit" Defendants as counsel in the ICSID proceeding.  *Ashton v. Pierce*, 716 F.2d 56, 66 (D.C. Cir. 1983).

connection with the underlying dispute.  Accordingly, RSM is bound by those rules under the doctrine of equitable estoppel.  Under that doctrine, "a party [like RSM] with full knowledge of the facts, which accepts the benefits of a transaction, contract, statute, regulation, or order [is prohibited from] subsequently taking an inconsistent position [to] avoid the corresponding obligations or effects."  *See First Am. Discount Corp. v. Commodity Futures Trading Comm'n*, 222 F.3d 1008, 1016 (D.C. Cir. 2000) (citation omitted).  Equitable estoppel binds a party when (1) that party has made a representation to the party claiming estoppel; (2) the party seeking estoppel relied upon its adversary's conduct to its detriment; and (3) reliance on the representation was "reasonable."  *Carroll v. Fremont Inv. & Loan*, 636 F. Supp. 2d 41, 55 (D.D.C. 2009).  All of these conditions are met here.  By initiating ICSID proceedings against Grenada, RSM implicitly represented to all participants that it would adhere to the ICSID Convention's rules and regulations, including Articles 21 and 22.  Having chosen the benefits of the ICSID forum and the ICSID Convention, RSM is estopped from evading the corresponding limitations imposed by that Convention.

For these reasons, this Court lacks subject matter jurisdiction and the matter should be dismissed.

## III.   RSM'S RICO CLAIM IS BARRED BY THE FOUR-YEAR STATUTE OF LIMITATIONS.

RSM's RICO claim against Freshfields is time-barred.  The statute of limitations applicable to civil RICO claims is four years.  *See Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 156 (1987).  Courts within the District of Columbia Circuit apply the "injury discovery rule" to determine when a plaintiff's RICO claim accrues for purposes of the statute.  *See, e.g.*, *Hargraves v. Capital City Mortgage Corp.*, 140 F. Supp. 2d 7, 16 (D.D.C. 2000).  Pursuant to this rule, "a cause of action [for a RICO claim] accrues when the plaintiff has

knowledge of (or by the exercise of reasonable diligence should have knowledge of) (1) the existence of the injury, (2) its cause in fact, and (3) *some* evidence of wrongdoing." *Chalabi v. Hashemite Kingdom of Jordan*, 503 F. Supp. 2d 267, 274 (D.D.C. 2007) (emphasis in original) (quoting *Goldman v. Bequai*, 19 F.3d 666, 671-72 (D.C. Cir. 1994)).   Once a plaintiff has notice of its injury, the accrual of the RICO claim for that injury is not delayed by the timing of the alleged acts of racketeering activity.   *See Rotella v. Wood*, 528 U.S. 549, 556-59 (2000); *see also Hargraves*, 140 F. Supp. 2d at 17 (*Rotella* "makes clear that knowledge of the injury, rather than knowledge of the pattern of RICO activity, starts the clock running for statute of limitations purposes").

RSM's Complaint in this case was filed March 17, 2010.   Thus, the action is timely only as to injury RSM knew or should have known about on or after *March 17, 2006*.   But it is plain on the face of the Complaint that RSM discovered the alleged injuries here long before that date. The only property injury alleged by RSM is the loss of its alleged exploration contract rights, which occurred when Grenada decided not to issue the exploration license to RSM pursuant to the Petroleum Agreement.   That decision was made, and known to RSM, well more than *five* years before the Complaint was filed.   According to RSM's own allegations, it knew by no later than August 2004 (when it initiated the ICSID proceeding) that Grenada had denied RSM the exploration license.   *See* Compl. ¶ 29.   That fact is fatal to the Complaint.[28]   Accordingly, any argument that RSM was unaware of its injuries before March 2006 is foreclosed by RSM's own allegations.

---

[28]     Moreover, although accrual of the RICO claim does not turn on when Plaintiff learned about the alleged predicate offenses, the Complaint specifically alleges that RSM knew by no later than August 2005 of the alleged bribery, which Plaintiff claims was the cause of Grenada's decision to deny the license. *Id*. ¶ 37.

RSM attempts to frame its damages as resulting from Freshfields' participation in the ICSID proceeding, rather than the license denial, but all of RSM's alleged injuries flow from the denial of the exploration license.  *See, e.g.*, Compl. ¶ 60 ("Freshfields' actions have prevented RSM from developing the giant oil and natural gas potential and recoverable hydrocarbon reserves in the Grenadian offshore territory[.]"); *see also id.* (alleging that RSM was denied the benefit of its "multi-million investments" in the Grenada project).  The ICSID Tribunal merely upheld the lawfulness of the denial Grenada imposed in August 2004.  That proceeding no more imposed the denial than the dismissal of the complaint in *Fridman* did.  The Supreme Court has made clear that a plaintiff cannot use a later predicate act as a bootstrap to recover for injuries caused by other earlier acts that occurred outside the limitations period.  *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997) (rejecting the argument that a RICO claim accrues when the plaintiff becomes aware of the "last predicate act" and holding that "a separate new overt act generally does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period"); *cf. Browning v. Clinton*, 292 F.3d 235, 249 (D.C. Cir. 2002) (rejecting plaintiff's attempt to avoid the statute of limitations bar by framing her allegations to suggest that her injuries came later because plaintiff "plead[ed] no facts suggesting some direct relation between the injury asserted and injurious conduct alleged") (internal quotation marks omitted).

Because RSM became aware of its alleged injuries prior to March 17, 2006, this Court should dismiss the RICO claim against Freshfields as time-barred.

## IV. RSM'S COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO STATE A RICO CLAIM.

"RICO is a complex statute, whose defining elements consist of abstract conceptions (the 'enterprise' and the 'pattern of racketeering' activity) that must exist in specified, also highly abstract relationships."  *Zito v. Leasecomm Corp.*, No. 02-8074, 2003 WL 22251352, at *5

(S.D.N.Y. Sept. 30, 2003); *see Jennings v. Emry*, 910 F.2d 1434, 1435 (7th Cir. 1990).

Plaintiff's RICO claim fails because it seeks to bring Freshfields within RICO's complex web without regard for the statute's required elements and relationships.

Plaintiff alleges a single cause of action—that Freshfields entered into a conspiracy to violate RICO with a Grenadian official (Bowen), an RSM competitor (Global Petroleum), and a group of individuals associated with Global Petroleum (Model, Melnicke and Korchagin), in violation of 18 U.S.C. § 1962(d).[29]  In *Salinas v. United States*, 522 U.S. 52 (1997), the Supreme Court emphasized that § 1962(d) requires that a "conspirator . . . intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive" RICO violation.  522 U.S. at 65.[30]  The Complaint ignores the fact that RICO has three very different substantive prohibitions (18 U.S.C. §§ 1962(a), (b), and (c)), leaving it to the defendants and the Court to guess what statutory provisions Freshfields supposedly agreed to violate.[31]  Given the nature of the allegations, Plaintiff presumably contends that Freshfields conspired to violate 18 U.S.C § 1962(c).[32]

---

[29]   The Complaint further alleges that Global Petroleum was "a front" for the other *Fridman* defendants (BP plc, TNK-BP, Browne, Blavatnik and Fridman).  Compl. ¶ 8.

[30]   *Salinas* is a criminal RICO case, but RICO's criminal conspiracy requirements apply equally to civil RICO conspiracy claims.  *See, e.g.*, *Oceanic Exploration Co.*, 2006 WL 2711527, at *17.

[31]   This shortcoming alone is grounds for dismissal.  *See, e.g.*, *B.V. Optische Industrie de Oude Delft v. Hologic, Inc.*, 909 F. Supp. 162, 168 n.2 (S.D.N.Y. 1995).

[32]   Section 1962(a) prohibits using income derived from racketeering activity to acquire an interest in, establish or operate an enterprise.  Section 1962(b) prohibits using racketeering activity to gain an interest in or control over an enterprise.  Because the Complaint does not refer to the use of alleged racketeering proceeds or gaining control over an enterprise, it cannot be addressed to these provisions.

A violation of § 1962(c) requires: "(1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity." *Salinas*, 522 U.S. at 62.  Consistent with *Salinas*, the D.C. Circuit recognizes that a conspiracy to violate § 1962(c) requires a multifaceted agreement covering multiple elements: "(1) the existence of an enterprise which affects interstate or foreign commerce; (2) that the defendant 'associated with' the enterprise; (3) that the defendant participated in the conduct of the enterprise's affairs; and, (4) that the participation was through a pattern of racketeering activity." *United States v. Hoyle*, 122 F.3d 48, 50 (D.C. Cir. 1997) (quoting *United States v. Phillips*, 664 F.2d 971, 1011 (5th Cir. 1981)).[33]

The case law makes it clear that a civil action for such a conspiracy must allege an agreement that satisfies *all of these elements*, and provide factual grounds in support of those allegations.  A civil RICO conspiracy claim "may not be conclusory, but must set forth specific facts tending to show that each of the defendants entered into an agreement *to conduct the affairs of a particular, identified enterprise through a pattern of racketeering activity*." *Elsevier Inc. v. W.H.P.R., Inc.*, No. 09-6512, 2010 WL 710786, at *14 (S.D.N.Y. Feb. 19, 2010) (emphasis in original).[34]  To enter into such an agreement, the defendant must (1) know about, *and agree to*

---

[33]     As noted in *Hoyle*, in *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993), the Supreme Court held that in order to participate in the conduct of the enterprise's affairs in violation of § 1962(c), a person must "have some part in directing those affairs." *Hoyle*, 122 F.3d at 50 n.3. The D.C. Circuit has not yet decided whether a person must agree to participate in the operation or management of a RICO enterprise to enter into a conspiracy to violate section 1962(c).  *See id.*; *but see United States v. Philip Morris USA, Inc.*, 327 F. Supp. 2d 13, 18-20 (D.D.C. 2004). If there is such a requirement, the claim against Freshfields fails as a matter of law because it is crystal clear that the provision of services to a client by a lawyer or other professional does not satisfy that requirement. *See, e.g.*, *Nolte v. Pearson*, 994 F.2d 1311 (8th Cir. 1993) (lawyers); *University of Md. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534 (3d Cir. 1993) (accountants); *Sassoon v. Altgelt 777, Inc.*, 822 F. Supp. 1303 (N.D. Ill. 1993) (lawyers).

[34]     *Accord Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 732 (7th Cir. 1998) (allegations must show "(1) that each defendant agreed to . . . participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals"); *Bank Brussels Lambert v.*

*the commission of*, the predicate offenses;[35] (2) know that these predicate offenses "were part of a pattern of racketeering activity";[36] (3) understand "the essential nature and scope of the enterprise and intend[] to participate in it";[37] and (4) with this knowledge, "agree[] to participate in what he knew to be a collective venture directed toward a common goal."[38]  It is not

---

*Credit Lyonnais (Suisse) S.A.*, No. 93-6876, 1998 WL 42575 at *3 (S.D.N.Y. Feb. 4, 1998) ("In order to state a claim under 18 U.S.C. §1962(d), a plaintiff must allege not only that there was an agreement to commit predicate acts, but 'knowledge that those acts were part of a pattern of racketeering activity conducted in such a way as to violate [18 U.S.C. §1962 (a), (b), or (c)].'") (quoting *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989)); *Midwest Grinding Co. v. Spitz*, 716 F. Supp. 1087, 1093-94 (N.D. Ill. 1989), *aff'd*, 976 F.2d 1016 (7th Cir. 1992).

[35]     *See, e.g.*, *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) ("[A] defendant who did not agree to the commission of crimes constituting a pattern of racketeering activity is not in violation of section 1962(d), even though he is somehow affiliated with a RICO enterprise[.]"); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990) ("Because the core of a civil RICO conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement.").

[36]     *Glessner v. Kenny*, 952 F.2d 702, 714 (3d Cir. 1991) (affirming dismissal for failure adequately "to allege the conspiracy elements of agreement and knowledge that the defendants' acts were part of a pattern of racketeering activity"); *accord Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 245 (2d Cir. 1999) (Section 1962(d) requires an "agreement to engage in a pattern of racketeering activity"); *Schiffels v. Kemper Fin. Servs., Inc.*, 978 F.2d 344, 352 (7th Cir. 1992) (RICO conspiracy pleadings require "that each defendant knew that those predicate acts were part of a pattern of racketeering activity"), *abrogated on other grounds by Beck v. Prupis*, 529 U.S. 494 (2000).

[37]     *Baumer*, 8 F.3d at 1346 (quoting *United States v. Muskovsky*, 863 F.2d 1319, 1324 (7th Cir. 1988)); *Howard v. America Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) (quoting *Baumer*); *see Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 354 (S.D.N.Y. 1998) (dismissing complaints that "do not adequately allege that Fleet understood the scope of the enterprise"); *Morin v. Trupin,* 711 F. Supp. 97, 111 (S.D.N.Y. 1989) (plaintiff "must show that the defendants understood the scope of the enterprise and knowingly agreed to further its affairs through the commission of various offenses").

[38]     *Laterza v. American Broad. Co.*, 581 F. Supp. 408, 413 (S.D.N.Y. 1984) (quoting *United States v. Martino*, 664 F.2d 860, 876 (2d Cir. 1981)); *see O'Malley v. O'Neill*, 887 F.2d 1557, 1560 (11th Cir. 1989) (dismissal of RICO conspiracy claim affirmed because "there are no facts alleged that would indicate that [defendants] were willing participants in a conspiracy"); *Landy v. Heller, White & Co.*, 783 F. Supp. 125, 132 (S.D.N.Y. 1991) (dismissing RICO conspiracy claim with no "factual allegations supporting an inference that [defendant] consciously agreed to become part of a RICO conspiracy").

"sufficient if the defendants merely participated in the same enterprise." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 567 F. Supp. 1146, 1154 (D.N.J. 1983) (citing *United States v. Riccobene*, 709 F.2d 214, 224 (3d Cir. 1983)), *aff'd in relevant part*, 742 F.2d 786, 792 n.8 (3d Cir. 1984).

RSM's Complaint falls short of these requirements.  Strikingly few allegations even address Freshfields.  Those that do never identify grounds for inferring that Freshfields knew about and agreed to the commission of predicate acts, knew that the predicate acts were part of a pattern of racketeering activity, knowingly associated with the enterprise alleged, or agreed to participate in a collective venture aimed at achieving Global Petroleum's business goals through alleged bribery.

The few allegations relating to Freshfields assert nothing more than that the firm engaged in the usual, legitimate profession of representing a client in an adversarial legal proceeding.  To this unremarkable fact, the Complaint adds only unsupported speculation regarding Defendants' supposed knowledge about the reputations of others and conclusory assertions about their intent to participate in wrongdoing.  These presumptions and speculative charges are not sufficient to establish that Freshfields knowingly agreed to enter into a conspiracy involving each (or even any) of the elements of a RICO violation, or to make the existence of such an agreement more plausible than the obvious innocent explanations for the business arrangement.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-57 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1959 (2009).

## A.    Pleading Standards

Conclusory allegations of conspiracy are insufficient to support a civil RICO conspiracy claim.  Even before the Supreme Court's decisions in *Twombly* and *Iqbal*, the courts agreed that proper RICO conspiracy pleadings required a "factual basis for a finding of a conscious

agreement" to join in a criminal conspiracy with others.[39]  In this district as well, RICO

conspiracy claims have been dismissed for failing to plead "specific facts" supporting the alleged

agreement.  *See Doe I v. State of Israel*, 400 F. Supp. 2d 86, 120 (D.D.C. 2005).[40]  This is

particularly true where, as here, the alleged acts of racketeering include alleged frauds.  *See*

Compl. ¶ 61 (alleging wire fraud violations); *Prunte v. Universal Music Group*, 484 F. Supp. 2d

32, 42 (D.D.C. 2007); *Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220,

1229 (D.C. Cir. 1991).

Moreover, in *Twombly* and *Iqbal,* the Supreme Court made clear that for all claims

Federal Rule of Civil Procedure 8(a) requires more than conclusory and speculative pleading,

particularly as to allegations of conspiracy and like allegations concerning *mens rea*.  The Court

held that under Rule 8, a plaintiff must plead factual allegations sufficient to render the claim

"plausible."  *Twombly*, 550 U.S. at 556; *see id.* at 557 ("The need at the pleading stage for

allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold

requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the

pleader is entitled to relief.'") (alteration in original); *Iqbal*, 129 S. Ct. at 1950 (holding a motion

---

[39]     *See Hecht*, 897 F.2d at 26 n.4; *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,*
119 F.3d 935, 950 (11th Cir. 1997) (plaintiff must provide "sufficient facts to infer" defendant's
agreement to enter into a RICO conspiracy and to commit the alleged predicate acts); *Alfie's
Original Souliers, Inc. v. Fleet Bank*, No. 95-8741, 1996 WL 263004 (S.D.N.Y. May 17, 1996)
(dismissing RICO conspiracy claim where no facts alleged showed that the bank "knowingly
agreed to participate in a collective venture aimed at defrauding plaintiff"); *Frymire v. Peat,
Marwick, Mitchell & Co.*, 657 F. Supp. 889, 896 (N.D. Ill. 1987) (holding that "since conspiracy
rests on agreement, the plaintiff must allege with some particularity facts sufficient to show an
agreement between the parties to inflict the alleged wrong").

[40]     *See also* Rakoff et al., *RICO Civil & Criminal Law* § 1.06 (2009) ("Many courts require
that, in order to support a Subsection 1962(d) claim, a plaintiff must plead its conspiracy
allegations with some specificity.  If a plaintiff merely submits conclusory allegations that fail to
demonstrate each defendant's agreement to the commission of two or more predicate acts by
some member of the conspiracy, or that each defendant knew that these predicates were part of a
pattern of racketeering, the complaint is subject to dismissal.").

to dismiss should be granted "where the well-pleaded facts do not permit the court to infer more

than the mere possibility of misconduct").[41]   A number of courts have applied these standards in

RICO conspiracy cases and dismissed claims dependent on implausible inferences.[42]

**B.    RSM Alleges No Facts To Render Plausible Its Conclusory Allegation that Freshfields Consciously Agreed To Participate in a RICO Violation.**

RSM's RICO conspiracy allegations fail on multiple grounds because they do not allege

facts giving rise to a plausible inference that Freshfields agreed to *any* of the multiple elements

of a section 1962(c) violation.   RSM's few non-conclusory and non-speculative allegations do

not support a plausible inference that (i) Freshfields knew that racketeering acts were being

committed; (ii) Freshfields agreed to the commission of those acts; or (iii) Freshfields knew that

these acts were part of a pattern of racketeering activity used to conduct or operate the alleged

enterprise.

1.    *RSM fails to allege facts sufficient to make plausible any inference that Freshfields knew about the alleged acts of racketeering.*

RSM makes repeated conclusory assertions that Freshfields gave knowing assistance to a

corrupt enterprise.   Compl. ¶¶ 50, 56, 57, 62.   In each case, RSM fails to allege "*specific facts* to

suggest" that Freshfields "knew . . . predicate acts were occurring."   *Doe I*, 400 F. Supp. 2d at

120 (emphasis added).   This is fatal to RSM's Complaint.   *See id.* (dismissing § 1962(d) claim

where the "complaint use[d] the word 'knowingly' as a bare, conclusory assertion," and noting

that "without sufficient allegations of basic awareness, there is not adequate pleading of

---

[41]     *Twombly* is particularly pertinent because it involved allegations of an antitrust conspiracy, and the RICO statute is modeled on, and often interpreted in parity with, antitrust law.   *See* 2 Matthews, Weissman & Sturc, *Civil RICO Litigation* § 8.01 (2d ed. 1992).

[42]     *E.g.*, *Elsevier*, 2010 WL 710786, at *14; *McGee v. Moon*, 685 F. Supp. 2d 737, 2010 WL 621536, at *7 (N.D. Ohio Feb. 23, 2010); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 400-01 (7th Cir. 2009); *In re Managed Care Litig.*, No. 03-21266, 2009 WL 347795, at *2 (S.D. Fla. Feb. 11, 2009) (collecting cases).

subjective agreement or intent"); *Twombly*, 550 U.S. at 555 (noting allegations of conspiracy "must be enough to raise a right to relief above the speculative level").

RSM's only allegations regarding Freshfields' supposed knowledge of the alleged conspiracy are rank speculation. Paragraph 50—the only paragraph in the entire Complaint that even attempts to offer support for RSM's conclusory assertions—alleges:

> At the very beginning Defendants *can be reasonably presumed to have been aware* that Grenada—an extremely cash-poor country of approximately 90,000 people–did not have the funds to pay Freshfields' legal fees, that Grenada's fees would be paid by investors looking to obtain the same exclusive license as to which RSM claimed entitlement, and that the Grenadian government at-the-time had a reputation for corruption and bribery. Freshfields also was aware of the fact that Global Petroleum would be paying their fees, and a law firm in Freshfields' position *can be expected to do* a search of Global Petroleum that would have revealed the felony conviction of its CEO. *On information and belief,* Freshfields was also aware of the fact that DLA Piper had turned down the representation. By 2007, Freshfields' legal fees paid by Global Petroleum had reached several million dollars, and *public reports confirmed* that Global Petroleum's CEO (Lev Model) was a convicted felon, that Lev Model was paying the college tuition of Bowen's daughter, that Korchagin had bragged that his group "owned" the Government of Grenada, and that Bowen had traveled to New York to receive bribe monies. (emphasis added).

Nothing in this paragraph provides factual support for the assertion that the Freshfields defendants knew the alleged co-conspirators had supposedly committed multiple acts of bribery. Even if the conclusory allegations and "presumptions" in this paragraph were entitled to be taken as true—and they are not, *see Iqbal*, 129 S. Ct. at 1951—they would establish, at most, that Freshfields knew (i) Global Petroleum was funding the ICSID arbitration with the hope that it could win the exploration license for itself; (ii) an individual associated with Global Petroleum was previously convicted of an unrelated criminal offense; (iii) another law firm turned down the representation (possibly over fear that "Grenada did not have funds adequate to pay their bills" (Compl. ¶ 30)); and (iv) at some point after Freshfields assumed the representation of Grenada,

"published reports" accused individuals associated with Global Petroleum of making payments to a Grenadian official.

The first allegation is entirely innocuous on its face.  It is not uncommon and not at all inappropriate or suspect for third parties to pay the legal fees for litigation in which they have an actual or potential interest.  *See, e.g.*, ABA Model Rule 1.8(f) (a lawyer may accept compensation from a third party as long as there is no interference with the lawyer's independent professional judgment and the client gives informed consent).  Parties to international arbitrations, and sovereigns in particular, routinely use third-party funding agreements to fund their disputes.  *See* Steinitz, *Whose Claim Is This Anyway? Third Party Litigation Funding*, 95 Minn. L. Rev. -- (forthcoming 2010), http://ssrn.com/abstract=1586053, at *42.

Sovereign governments, particularly developing countries, often use such funding to enforce their rights because of a "lack of funds [and the] inability to justify to their impoverished constituencies spending high-end Western rates on lawyers."  *Id.* at *42-43.  Indeed, RSM appears to have conceded during the *Fridman* litigation that such arrangements are commonplace, "acknowledg[ing] at oral argument that 'there's nothing wrong with paying someone else's legal fees,' but stating that 'if it's tied up with bribery,' there is."  *See* 643 F. Supp. 2d at 412 n.35.  The allegation that a third party is paying legal fees certainly does not suggest knowledge of any bribery scheme.  *See Twombly*, 550 U.S. at 556.

Nor do the other alleged facts give rise to a plausible inference that Freshfields knew of the alleged bribery in this case.  The alleged fact that Grenada first took the assignment to another law firm does not suggest anything untoward.  Clients and law firms have multiple reasons for discontinuing assignments, including conflicts of interest, concerns about fees, relative experience in a particular field, and the like.  The alleged knowledge that someone

associated with Global Petroleum was convicted of a crime provides no notice whatsoever of a bribery scheme. Reports of misconduct published after commencement of the representation, the reliability of which are not alleged and are by no means assured, likewise do not constitute a basis to infer "knowledge" that bribes had been paid.

> 2.     *RSM fails to allege facts sufficient to render plausible that Freshfields agreed to the commission of racketeering acts.*

The Complaint also fails to allege facts sufficient to provide a plausible basis to infer that Freshfields *agreed* to the commission of the alleged bribery scheme. In fact, the opposite is true: the Complaint makes it plain that the alleged bribes took place before RSM and Grynberg commenced the ICSID action and well before Freshfields was even approached to represent Grenada in that arbitration. The allegations make it clear that Freshfields could not have agreed that the bribes should be paid because the firm had no role at all until a much later date. *See Schiffels v. Kemper Fin. Servs., Inc.*, 978 F.2d 344, 352 (7th Cir. 1992) (where alleged conspirators "entered the picture" after predicate acts occurred, "the other conspirators could not agree to commit predicate acts that had already occurred").[43]

Even aside from this contradiction, the allegations fail to support a plausible inference that Freshfields agreed to the commission of predicate acts by others. The only allegation RSM advances as support for its claim that Freshfields *agreed* to the commission of racketeering acts is that Freshfields provided legal services to the government of Grenada while knowing that

---

[43]     *See Albright v. Attorney's Title Ins. Fund*, 504 F. Supp. 2d 1187, 1208 (D. Utah 2007) ("[P]laintiffs . . . failed to provide evidence sufficient to support a finding that the [defendant] was aware of the [co-conspirators'] fraudulent schemes until after the frauds had been committed. And, being unaware of the fraudulent schemes, the [defendant] could not have agreed to facilitate the schemes in which plaintiffs lost their money."); *see also Lopez v. Council on American-Islamic Relations Action Network, Inc.*, 657 F. Supp. 2d 104, 112 (D.D.C. 2009) (RICO conspiracy defendants who allegedly assisted a cover-up after another person's successful fraudulent scheme were not part of an agreement to commit the fraud that occurred before their involvement).

Global Petroleum was paying the legal fees. But "legitimate acts of attorneys on behalf of clients cannot form the basis of a RICO claim." *Morin v. Trupin*, 711 F. Supp. 97, 105-06 (S.D.N.Y. 1989). And the allegation that lawyers may have provided services to clients engaged in crime has repeatedly been held insufficient to support a RICO claim. *See, e.g.*, *Handeen v. Lemaire*, 112 F.3d 1339, 1348-49 (8th Cir. 1997) ("[W]e find it extremely difficult to fathom any scenario in which an attorney might expose himself to RICO liability by offering conventional advice to a client or performing ordinary legal tasks (that is, by acting like an attorney)."); *Crooked Creek Props., Inc. v. Ensley*, No. 08-1002, 2009 WL 3644835, at *23 (M.D. Ala. Oct. 28, 2009) (granting motion to dismiss § 1962(d) claims because defendant's "alleged corrupt role is confined to providing legal services to the other Defendants"); *D'Orange v. Feely*, 877 F. Supp. 152, 159 (S.D.N.Y. 1995) (no basis for inferring that estate lawyers entered into conspiracy with executor to misappropriate assets even if they had possession of records alerting them to the misdeeds). Likewise, the provision of services by other professionals in connection with what is alleged to be unlawful conduct by their clients is not a basis to conclude that those professionals agreed to the underlying alleged crimes.[44]

Nothing in the Complaint supports its conclusory claims that there was "a transparent conflict of interest" nor that providing representation itself was a "conscious decision to join the

---

[44]      *See, e.g.*, *Republic of Panama*, 119 F.3d at 950-51 (RICO conspiracy claim against bankers providing bank services critical to alleged scheme not adequately pled without facts showing they were "aware of the 'essential nature of the plan'"); *Landy*, 783 F. Supp. at 132 (no basis for inferring entry into conspiracy by consultants providing reports used by others in fraudulent scheme); *Alves v. Players Edge, Inc.*, No. 05-1654, 2007 WL 6004919, at *12 (S.D. Cal. Aug. 8, 2007) (alleging that defendants agreed to do business with the alleged enterprise does not establish a RICO conspiracy claim against them); *Dietrich v. Bauer*, 76 F. Supp. 2d 312, 347 (S.D.N.Y. 1999) ("RICO liability may not be imposed on a defendant who merely carries on its own professional activities."); *LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.*, 951 F. Supp. 1071, 1090 (S.D.N.Y. 1996) ("Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result.").

conspiracy." Compl. ¶ 52.  Representing Grenada in the ICSID proceeding and receiving fees

for the work, whether paid by Grenada or a third party, is entirely consistent with a rational—

indeed, a typical—and lawful course of conduct by a law firm.  RSM has not alleged *any* facts to

support an inference that Freshfields agreed, in undertaking the representation, "to facilitate and

be a part of the conspiracy." *Id.* ¶ 50.  And Global Petroleum had a perfectly legitimate interest

in Grenada's decision denying a license to RSM:  vindication of that decision would make it

possible for Global Petroleum to compete for that license in the future.  That interest in no way

undermines the legitimacy of Grenada's decision with respect to RSM, and therefore affords no

basis to claim a conflict of interest, "transparent" or otherwise.

       In *Twombly,* the Supreme Court made clear that a conspiratorial agreement cannot be

inferred from conduct that can be explained by wholly legitimate economic incentives.  *Twombly*

addressed an antitrust conspiracy claim based on certain conduct by competitors that was

consistent with conspiracy, but also consistent with rational individual economic conduct.  The

Court concluded that these allegations could not support a conspiracy claim, holding that

allegations "consistent with conspiracy, but just as much in line with a wide swath of rational

and competitive business strategy" cannot provide plausible support for the existence of an

illegal conspiracy.  550 U.S. at 554.  Similarly, the *Iqbal* Court emphasized that if factual

allegations are "merely consistent with," but do not plausibly indicate, unlawful action, then they

are inadequate under Rule 8.  129 S. Ct. at 1949.

       Here, for the reasons explained above, no agreement to enter into a bribery scheme can

be gleaned from the allegation that Freshfields' legal fees were being paid by Global Petroleum,

Grenadian officials' supposed susceptibility to corruption, or the alleged poor reputations of

Global Petroleum and its principals.  In the end, Freshfields' actions here are far more consistent

with the normal, lawful behavior of commercial lawyers than agreement to the bribery of

Grenadian officials.

Because the Complaint is devoid of factual allegations showing that Freshfields agreed to

the alleged bribery scheme, and because rational and appropriate economic incentives fully

explain Freshfields' alleged conduct here, the Complaint fails to provide "enough factual matter

(taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556.

> 3.   *RSM fails to allege facts sufficient to demonstrate that Freshfields knew either that the co-conspirators were engaged in a pattern of racketeering activity or the purported scope and nature of the enterprise.*

Finally, even if RSM had set forth facts sufficient to render plausible that Freshfields

knew that illegal acts were occurring and agreed to their commission—and it has not—the

Complaint still fails because there is no attempt to allege, even in conclusory fashion (much less

with the required supporting grounds), that Freshfields knew about and agreed to either a *pattern*

of racketeering activity or the nature of the alleged enterprise.

RICO's pattern element requires that multiple predicate acts be "related, and that they

amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel.

Co.*, 492 U.S. 229, 239 (1989); *see Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48

F.3d 1260, 1264 (D.C. Cir. 1995). The Complaint contains *no factual allegations whatsoever*

that permit an inference that Freshfields *knew* of any alleged scheme involving a long-term,

continuous series of criminal racketeering acts that posed a threat of ongoing criminality. Even

if, at most, the Complaint could be read as alleging that Freshfields had speculative reasons to

suspect the alleged bribery scheme, the alleged scheme was directed at a single goal—to obtain a

single exploration license for a single entity, Global Petroleum. That on its face would constitute

"a single scheme to accomplish one discrete goal, directed at one individual with no potential to

extend to other persons or entities," *Edmondson & Gallagher*, 48 F.3d at 1265 (internal

quotation marks omitted), which, under the clear law of this Circuit, is not a "pattern of racketeering activity" under RICO.  *Id.*; *accord Western Assocs. Ltd. P'ship v. Market Square Assocs.*, 235 F.3d 629 (D.C. Cir. 2001).[45]  There is nothing alleged in the Complaint that even *suggests* a basis for concluding that Freshfields knew about and agreed to a pattern of racketeering activity under the standards laid out in *Edmondson* and forcefully reiterated in *Western Associates*.

There likewise are no allegations in the Complaint that render plausible the required inference that Freshfields knew about and agreed to the conduct of affairs of the alleged enterprise through a pattern of racketeering activity.  Knowing and agreeing to the scope of the enterprise is critical:  The case law makes it plain that "agreement merely to commit the predicate offenses would not be sufficient to support a RICO conspiracy.  Nor is it sufficient if the defendants merely participated in the same enterprise."  *Seville*, 567 F. Supp. at 1154.  What is necessary is "an agreement *to assist the enterprise's* involvement in corrupt endeavors," *id.* (emphasis in original), and to make such an agreement the defendant must know the nature and scope of the enterprise involved, *see id.* at 1154-55; *Howard v. America Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000); *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993).  But the Complaint here lacks any allegations supporting a plausible inference that Freshfields knew the nature and scope of the enterprise alleged by RSM, or that Freshfields consciously agreed to

---

[45]     The fact that the allegations involve a single scheme with a single victim to obtain a single goal strongly suggests there is no underlying substantive RICO violation adequately alleged, which would plainly require dismissal of the alleged RICO conspiracy claim.  *See, e.g.*, *Howard*, 208 F.3d at 751.  But the Court need not reach the pattern issue itself, because in the context of the conspiracy claim, the lack of any alleged grounds to conclude that Freshfields knew of and agreed to an underlying pattern of racketeering activity calls for dismissal of the claim.

assist the corrupt activities of that enterprise.  For that reason, in addition to all the others, the

RICO claim fails as a matter of law.  *See Baumer*, 8 F.3d at 1347.

## **CONCLUSION**

For the above stated reasons, RSM's Complaint should be dismissed with prejudice.



Dated:          June 1, 2010                              Respectfully submitted,

                                                          /s/  David W. Ogden
                                                          David W. Ogden, D.C. Bar No. 375951
                                                          Andrew Weissman, D.C. Bar No. 245720
                                                          Danielle Conley, D.C. Bar No. 503345
                                                          Joshua M. Salzman, D.C. Bar No. 982239
                                                          WILMER CUTLER PICKERING
                                                               HALE AND DORR LLP
                                                          1875 Pennsylvania Ave., NW
                                                          Washington, DC 20006
                                                          (202) 663-6000 (telephone)
                                                          (202) 663-6363 (facsimile)
                                                          david.ogden@wilmerhale.com

                                                          *Counsel for Freshfields Bruckhaus
                                                          Deringer U.S. LLP, Brian King, and
                                                          Jan Paulsson*