# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

RSM PRODUCTION CORPORATION,   )
   )
Plaintiff,   )
   )  Civil Action No. 1:10-cv-00457 (EGS)
v.   )
   )
FRESHFIELDS BRUCKHAUS DERINGER U.S.   )
LLP, JAN PAULSSON, and BRIAN KING,   )
   )
Defendants.   )
   )

_____

# REPLY MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ......................................................................................1

ARGUMENT..................................................................................................................2

I.      PLAINTIFF'S RICO CLAIM IS BARRED BY *RES JUDICATA*. ....................................2

II.     FRESHFIELDS IS IMMUNE FROM SUIT UNDER THE ICSID
        CONVENTION. ..............................................................................................8

III.    RSM'S RICO CLAIM IS TIME-BARRED BECAUSE ITS
        ALLEGATIONS DO NOT IDENTIFY ANY INJURY TO BUSINESS
        OR PROPERTY WITHIN THE FOUR-YEAR LIMITATIONS PERIOD. ...................11

IV.     RSM POINTS TO NO FACTS THAT RENDER PLAUSIBLE ITS
        CONCLUSORY ALLEGATIONS THAT FRESHFIELDS KNEW OF
        AND AGREED TO JOIN A RICO CONSPIRACY. ......................................16

        A.      Pleading Standard ................................................................16

        B.      The Facts Alleged By Plaintiff Do Not Plausibly Support A
                Violation of § 1962(d). ........................................................18

                1.      RSM Fails To Provide Plausible Grounds For Inferring
                        That Freshfields Knew Of The Alleged Bribery Scheme. ........18

                2.      RSM Fails To Provide Plausible Grounds For Inferring
                        That Defendants Agreed To Join A RICO Conspiracy. ..........20

                3.      RSM Fails To Provide Plausible Grounds For Inferring
                        That Freshfields Knew And Agreed To Each Of The
                        Elements Of A RICO Conspiracy. ........................................24

V.      THE COURT SHOULD DENY PLAINTIFF LEAVE TO AMEND ITS
        COMPLAINT. ..............................................................................................25

CONCLUSION...............................................................................................................25

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Airframe Systems, Inc. v. Raytheon Co.*, 520 F. Supp. 2d 258 (D. Mass 2007), *aff'd*, 601 F.3d 9 (1st Cir. 2010) ..................................................................................7

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ......................................................................17

*Ashelman v. Pope*, 793 F.2d 1072 (9th Cir. 1986)...........................................................11

*Bankers Trust Co. v. Rhoades*, 859 F.2d 1096 (2d Cir. 1988).................................14, 15

*Baumer v. Pachl*, 8 F.3d 1341 (9th Cir. 1993).................................................................24

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................17

*Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961 (7th Cir. 2000) .......................21

*Brzak v. United Nations*, 597 F.3d 107 (2d Cir. 2010) ...................................................10

*Capitol Hill Group v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485 (D.C. Cir. 2009) .................................................................................................5

*Chalabi v. Hashemite Kingdom of Jordan*, 543 F.3d 725 (D.C. Cir. 2008) ............14, 15

*Confederate Memorial Ass'n, Inc. v. Hines*, 995 F.2d 295 (D.C. Cir. 1993) ..........12, 25

*Daley's Dump Truck Service, Inc. v. Kiewit Pacific Co.*, 759 F. Supp. 1498 (W.D. Wash. 1991) ............................................................................................................13

*DeShazo v. Nations Energy Co.*, 286 F. App'x 110 (5th Cir. 2008) (unpublished) ......15

*Diggs v. Richardson*, 555 F.2d 848 (D.C. Cir. 1976) .......................................................9

*District Telecommunications Development Corp. v. District Cablevision, Inc.*, 638 F. Supp. 418 (D.D.C. 1985)..............................................................................13

*Doe v. Allied-Signal, Inc.*, 985 F.2d 908 (7th Cir. 1993)..............................................6, 7

*Doe I v. State of Israel*, 400 F. Supp. 2d 86 (D.D.C. 2005)...........................................17

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260 (D.C. Cir. 1995) ........................................................................................................................24

*Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297 (S.D.N.Y. 2010) .........................16

*Fortney v. Kuipers*, No. 98-5387, 1999 WL 102772 (N.D. Ill. Feb. 22, 1999)..............21

*Fund for Animals, Inc. v. Kempthorne*, 472 F.3d 872 (D.C. Cir. 2006) .........................................9

*Gambocz v. Yelencsics*, 468 F.2d 837 (3d Cir. 1972) .....................................................................5

*Grynberg v. BP P.L.C.,* 585 F. Supp. 2d 50 (D.D.C. 2008) ...........................................................8

*Hargraves v. Capital City Mortgage Corp.*, 140 F. Supp. 2d 7 (D.D.C. 2000) ...........................12

*Henderson v. Ratner*, 677 F. Supp. 2d 37 (D.D.C. 2009).............................................................25

*Hopkins v. Women's Division, General Board of Global Ministries*, 238 F. Supp.
2d 174 (D.D.C. 2002) .............................................................................................................8

*Howard v. America Online Inc.*, 208 F.3d 741 (9th Cir. 2000).....................................................24

*In re Merrill Lynch Ltd. Partnerships Litigation*, 154 F.3d 56 (2d Cir. 1998)..............................15

*In re Teltronics Services, Inc.*, 762 F.2d 185 (2d Cir. 1985) ..........................................................5

*In re Vitamins Antitrust Litigation*, Misc. No. 99-197, 2000 WL 1475705 (D.D.C.
May 9, 2000) .........................................................................................................................15

*Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997) ...................................................................14, 15

*Kolovrat v. Oregon*, 366 U.S. 187 (1961).....................................................................................10

*Lidas, Inc. v. United States*, 238 F.3d 1076 (9th Cir. 2001) ........................................................10

*Lopez v. Council on American-Islamic Relations Action Network, Inc.*, 657 F.
Supp. 2d 104 (D.D.C. 2009) .................................................................................................12

*Love v. National Medical Enterprises*, 230 F.3d 765 (5th Cir. 2000) ..........................................14

*McCool v. Strata Oil Co.*, 972 F.2d 1452 (7th Cir. 1992) ............................................................14

*McKesson Corp. v. Islamic Republic of Iran*, 539 F.3d 485 (D.C. Cir. 2008) .............................10

*McLaughlin v. Bradlee*, 599 F. Supp. 839 (D.D.C. 1984), *aff'd*, 803 F.2d 1197
(D.C. Cir. 1986) ......................................................................................................................5

*Medellin v. Texas*, 552 U.S. 491 (2008) .........................................................................................9

*Morin v. Trupin*, 711 F. Supp. 97 (S.D.N.Y. 1989).....................................................................22

*National Group for Communications & Computers Ltd. v. Lucent Technologies
Inc.*, 420 F. Supp. 2d 253 (S.D.N.Y. 2006) ........................................................................15

*Polak v. International Monetary Fund*, 657 F. Supp. 2d 116 (D.D.C. 2009)................................10

*Price v. Pinnacle Brands, Inc.*, 138 F.3d 602 (5th Cir. 1998) ..........................................12

*Regions Bank v. J.R. Oil Co.*, 387 F.3d 721 (8th Cir. 2004).............................................12

*RSM Production Corp. v. Fridman*, 643 F. Supp. 2d 382 (S.D.N.Y. 2009)......................2, 4, 7, 19

*RSM Production Corp. v. Fridman*, No. 09-1201, 2010 WL 2838582 (2d Cir. July 21, 2010) ................................................................................................2, 4

*Salinas v. United States*, 522 U.S. 52 (1997).......................................................................22

*Saud v. Bank of New York*, 929 F.2d 916, 920 (2d Cir. 1991) .........................................6

*Smith v. Berg*, 247 F.3d 532 (3d Cir. 2001).......................................................................22

*Stanton v. District of Columbia Court of Appeals*, 127 F.3d 72 (D.C. Cir. 1997)...........................3

*State Farm Mutual Auto Insurance Co. v. Ammann*, 828 F.2d 4 (9th Cir. 1987).........................14

*Tel-Instrument Electronics Corp. v. Teledyne Industries, Inc.*, 934 F.2d 320 (4th Cir. 1991) ..................................................................................................13

*United States v. Alston-Graves*, 435 F.3d 331 (D.C. Cir. 2006)......................................20

*United States v. Frega*, 179 F.3d 793 (9th Cir. 1999) ....................................................22

*United States v. Mellen*, 393 F.3d 175 (D.C. Cir. 2004).................................................20

*United States v. Reyes*, 302 F.3d 48 (2d Cir. 2002) .......................................................20

## TREATIES

Convention on the Settlement of Investment Disputes Between States and Nationals of Other States, Oct. 14, 1966, 17 U.S.T. 1270, 1966 WL 86269......................9

## STATUTES AND RULES

18 U.S.C. § 1964(c) (2006)................................................................................................12

22 U.S.C. § 1650(a) ..........................................................................................................10

Fed. R. Civ. P. Rule 9 .......................................................................................................17

## OTHER AUTHORITIES

*Restatement (Third) of Foreign Relations Law* § 111, cmt. h (1986)............................10

Vazquez, Carlos M., *The Four Doctrines of Self-Executing Treaties*, 89 Am. J. Int'l L. 695 (1995)..........................................................................................10

10A Wright et al., *Federal Practice & Procedure* § 2690 (3d ed. 1998)........................................4

Young, Ernest A., *Treaties As "Part of Our Law,"* 88 Tex. L. Rev. 91 (2009)............................10

## PRELIMINARY STATEMENT

RSM Production Corporation ("RSM" or "Plaintiff") urges this Court to apply "common sense" in evaluating the plausibility of RSM's allegations that Freshfields Bruckhaus Deringer U.S. LLP, Jan Paulsson, and Brian King ("Defendants" or "Freshfields"), joined a RICO conspiracy when they agreed to defend the government of Grenada in an international arbitration initiated by Plaintiff.  RSM Mem. 14.  There are multiple independent reasons why the Complaint must be dismissed.  Common sense is certainly one of them.

Common sense would preclude RSM from imposing upon this Court a lawsuit that recycles (often verbatim) flawed allegations RSM made in a prior federal suit that has been dismissed on the merits with prejudice—a dismissal affirmed just last week by the Second Circuit.  Common sense would say that RSM cannot sue opposing counsel in ICSID proceedings in the face of express immunity afforded ICSID counsel under a binding treaty obligation of the United States and under rules RSM accepted by contract and itself chose to invoke in its ICSID filing.  Because Supreme Court precedent squarely holds that the statute of limitations for RICO actions runs from the date of injury, common sense holds that RSM's expired claims based on the loss of exploration rights in 2004 cannot be revived when RSM loses an arbitration about it or when another entity later obtains the rights RSM long before had lost.  And above all, common sense would advise that a sovereign nation should be able to hire counsel to defend it in an arbitration without implicating that counsel in a purported racketeering conspiracy.

Not only common sense, but the law, requires dismissal here.  RSM repeatedly ignores arguments and authorities it cannot refute.  When it does try to respond to the authorities cited by Freshfields, Plaintiff repeatedly labels them "distinguishable," but without bothering to discuss their underlying legal principles.  And RSM repeatedly fails to cite authority to support its own

inaccurate characterization of the law.  Most notably, RSM does not cite a single case allowing

RICO claims to proceed against attorneys for rendering legitimate legal services to a client.

Having neither the law nor common sense on its side, Plaintiff cites large quantities of extrinsic

material regarding matters unrelated to RSM and persons not even allegedly involved in the

RSM-contract process.  Even if they were a proper response to a motion to dismiss (which they

plainly are not), the extrinsic materials themselves fail to demonstrate how lawyers engaged in

defending the government of Grenada in a contract dispute could *ipso facto* become liable for an

alleged conspiracy.  They fail to lend plausibility to RSM's fantastic and groundless allegations

that Freshfields joined a conspiracy—an accusation Freshfields categorically denies.

For each of the four grounds set forth in Defendant's opening memorandum, therefore,

this suit should be dismissed with prejudice.[1]

## ARGUMENT

## I.   **PLAINTIFF'S RICO CLAIM IS BARRED BY *RES JUDICATA*.**

RSM does not (and cannot) deny that this suit arises from precisely the same nucleus of

factual allegations that was the subject of its unsuccessful suit in the Southern District of New

York.  *See RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382 (S.D.N.Y. 2009).  On July 21,

2010, the Second Circuit affirmed that dismissal.  *See RSM Prod. Corp. v. Fridman*, No. 09-

---

[1]      As Freshfields made clear in its opening memorandum, this suit is merely the latest in a
long line of abusive cases for which RSM and its principal, Jack Grynberg, have been
responsible.  *See* Defs. Mem. 4.  Although Plaintiff now contends that its reputation in the oil
and gas business is "impeccable" and that many of the numerous cases it has brought were
"successful efforts to expose corruption in the oil and gas industry" (RSM Mem. 5 n.1), Plaintiff
points to *nothing* in the public record (or anything that this Court could judicially notice) to
demonstrate this supposed success.  *See* RSM Ex. C.  Moreover, Plaintiff cannot dispute that its
chief executive has been admonished by several courts for his abusive litigation tactics and
groundless claims, or that both the ICSID tribunal and the district court in the Southern District
of New York in this matter have directly questioned Mr. Grynberg's veracity.  *See* Defs. Mem. 1,
3-4.

1201, 2010 WL 2838582 (2d Cir. July 21, 2010) (attached as Defs. Ex. D).  RSM also cannot

deny that its Complaint contains verbatim recitals of many of the allegations made in its prior

suit.  Having failed to state a conspiracy claim in *Fridman*, RSM now attempts to re-litigate the

same factual allegations that were deemed insufficient in that case under a new legal theory

against defendants that it knowingly excluded from *Fridman*.  Such an attempt to retry a case

that already received its day in court is abusive, a waste of judicial resources, and highlights the

frivolous nature of this suit.  *See Stanton v. District of Columbia Court of Appeals*, 127 F.3d 72,

77 (D.C. Cir. 1997).

RSM's two lead arguments against the imposition of *res judicata* are its claims that

(1) the *Fridman* dismissal is likely to be overturned on appeal (RSM Mem. 30); and (2) some

*Fridman* defendants (including Global Petroleum, Inc., Lev Model, and Minister Bowen)

supposedly were not dismissed on the merits (RSM Mem. 30-32), and Freshfields is supposedly

not in privity with the *Fridman* defendants who were dismissed on the merits.  Since the filing of

RSM's opposition, the Second Circuit affirmed the district court's dismissal in its entirety, which

disposes of RSM's first response.  The Second Circuit also explicitly held that dismissal on the

merits as to *all* defendants was proper because RSM had failed to state a civil conspiracy claim,

which disposes of RSM's second response.  Accordingly, this case must be dismissed.

The Second Circuit opinion directly forecloses RSM's argument that the only defendants

who received dismissal on the merits in New York were those who had been able to distance

themselves from the core conspirators.  RSM Mem. 31.  Ruling that the district court had erred in

holding that Minister Bowen was entitled to immunity under the Foreign Sovereign Immunities

Act, the Second Circuit upheld the dismissal of the claims against him instead on the merits:

"We need not . . . remand to the district court for further proceedings … because the district

court concluded, and we agree, *that plaintiffs have failed in any event to state a civil conspiracy claim*." *Fridman*, 2010 WL 2838582 at *2 (internal citation omitted) (emphasis added). The Second Circuit expressly deemed this a "dismiss[al] *on the merits*." *Id.* at *2 n.2 (emphasis added). This rationale also plainly applies to Model and Global Petroleum, and the Second Circuit also affirmed dismissal as to them: "[I]f the action is dismissed, it should be dismissed as to the defaulting party as well as the remaining defendants." *Id.* at *2 (quoting 10A Wright et al., *Federal Practice & Procedure* § 2690, at 75 (3d ed. 1998)) (alteration in original).[2] RSM effectively concedes, for purposes of *res judicata*, that Bowen, Global Petroleum, and Model are in "privity" with Freshfields. RSM could hardly contend otherwise, having alleged in the Complaint that they are unnamed co-conspirators. *See* Compl. ¶¶ 5, 6.[3] Because the claims against these defendants have been dismissed on the merits and with prejudice, that concession is fatal here.

In any case, *all* of the *Fridman* defendants—including those RSM concedes were dismissed on the merits—are in privity with Freshfields for present purposes. Numerous courts, including this one, have repeatedly held that two parties alleged to have participated in the same

---

[2]    The district court, like the Second Circuit, plainly dismissed the claims against these defendants on the merits. The *Fridman* district court expressly held that "the Third Amended Complaint is dismissed with prejudice against *all* Defendants," 643 F. Supp. 2d at 415 (emphasis added), and entered a judgment expressly confirming this, declaring without qualification that "Plaintiffs' Third Amended Complaint be, and hereby is, DISMISSED, with prejudice." *Fridman*, Dkt. #188. The *Fridman* district court further expressly found that "Plaintiffs' allegations that Model and Global Petroleum Group serve as fronts for Fridman's, Blavatnik's, BP's, and TNK–BP's efforts to bribe Grenadian officials … *suffer from the same defects as their allegations against the appearing Defendants: they are not based on any cognizable facts properly before the court*." 643 F. Supp. 2d at 414-15 (internal citation and quotation marks omitted) (emphasis added). The same allegations fail here. Compl. ¶ 7.

[3]    For purposes of *res judicata*, as for almost all purposes in connection with a motion to dismiss, it is the allegations of the complaint that govern. Freshfields, of course, categorically denies any allegation that it entered into a conspiracy with any of the *Fridman* defendants. But because RSM has alleged in this suit that Freshfields was a participant in the conspiracy adjudicated and dismissed in *Fridman*, it is bound by those allegations, which require dismissal.

conspiracy are in privity for the purpose of *res judicata*, and that alleged co-conspirators not named in an initial suit are therefore entitled to *res judicata* in a successive suit predicated on the same conspiracy.  *See, e.g.*, *McLaughlin v. Bradlee*, 599 F. Supp. 839, 847-48 (D.D.C. 1984), *aff'd*, 803 F.2d 1197 (D.C. Cir. 1986); *In re Teltronics Servs., Inc.*, 762 F.2d 185, 192 (2d Cir. 1985); *Gambocz v. Yelencsics*, 468 F.2d 837, 842 (3d Cir. 1972); *see* Defs. Mem. 13 & n.14, 18 (collecting cases).  It is indisputable that according to RSM's allegations, all of the *Fridman* defendants were "allegedly involved in the same conspiracy" as the one alleged here. *McLaughlin*, 599 F. Supp. at 848.  And RSM's allegations against Freshfields here necessarily depend on a connection between Freshfields and all of the *Fridman* defendants, specifically including Blavatnik and Fridman.  RSM expressly pleads that those defendants operated Global Petroleum as "a front" for illegal activities.  Compl. ¶ 7.  RSM further contends that "Len Blavatnik and Mikhail Fridman … bribed Gregory Bowen so that their group could develop the vast petroleum reserves believed to exist in the offshore Grenadian territory."  *Id.* ¶ 42.  Thus, RSM's Complaint is predicated on a supposed conspiratorial relationship allegedly existing between Freshfields and all of the *Fridman* defendants, and *res judicata* precludes this suit.

RSM cannot evade preclusion on the ground that it now asserts a civil RICO claim rather than the common law claims of *Fridman*.  *Res judicata* turns on whether the two suits are based on the same *factual* nucleus, *not* on an identity of legal theory.  As the D.C. Circuit has held, "it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory on which a litigant relies."  *Capitol Hill Group v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 490 (D.C. Cir. 2009) (internal quotation marks

omitted).  *Capitol Hill Group* is controlling on this point of law here.[4]  *See, e.g.*, *Saud v. Bank of New York*, 929 F.2d 916, 920 (2d Cir. 1991) (applying this principle to a RICO claim).  Just as RSM could not now attempt to sue the *Fridman* defendants on the same factual nucleus under a new legal theory, it may not sue others, such as the defendants here, deemed to be in privity with them.

Finally, contrary to RSM's assertions (*see* RSM Mem. 33), the Seventh Circuit's decision in *Doe v. Allied-Signal, Inc.*, 985 F.2d 908 (7th Cir. 1993), does not provide a basis to excuse this duplicative action on the ground that RSM did not know crucial facts when it filed the *Fridman* action.  *First*, even if it were true that RSM had not discovered material facts until after initiating suit in *Fridman*, RSM concededly learned them prior to the *conclusion* of the *Fridman* litigation.[5]  Indeed, although the Second and Third Amended Complaints in that case do not name Freshfields as a defendant, they contain literally every material fact contained in the Complaint here.  In the Second Amended Complaint (Defs. Ex. E), RSM explicitly alleged that some of the defendants "had promised to pay all of Grenada's legal fees in connection with the arbitration between RSM and Grenada" and that "Global Petroleum Group has invested over $4

---

[4]    RSM cannot seriously contend otherwise.  *Compare* RSM Mem. 32 (purporting to distinguish *Capitol Hill Group* on its facts).  Indeed, the Seventh Circuit decision relied on by RSM (RSM Mem. 33), explicitly states that a "plaintiff may not avoid an earlier judgment on the merits by merely concocting a new legal theory," and reiterates the well-established, dispositive proposition that preclusion applies when "new legal theories [are] grafted onto an old set of facts."  *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 913, 914 (7th Cir. 1993).

[5]    The suggestion that RSM did not know certain facts even when it filed the *Fridman* action is dubious.  *Allied-Signal* explicitly acknowledges that "a plaintiff will be precluded from raising . . . facts later if, by exercising due diligence, he or she could have discovered the relevant information before filing the initial suit."  985 F.2d at 914.  Many of the facts that RSM claims it learned after the *Fridman* Complaint was filed in 2006 are the very same facts it elsewhere insists that *Defendants* should have learned through public sources *in 2005*.  RSM Mem. 4.  By its own account, therefore, RSM could have discovered these supposedly important facts itself prior to filing its *Fridman* Complaint.  In any event, for the reasons set forth in the text, this Court need not hold RSM to its allegations in this regard to find its claims precluded under *Allied-Signal*.

million (and quite possibly much more) into the legal defense of the Government of Grenada in the arbitration against RSM." *Id.* ¶¶ 50, 53. And RSM's Third Amended Complaint in *Fridman* (Defs. Ex. B) reasserted the earlier allegations that the alleged conspirators were funding Grenada's defense in the ICSID litigation, and added specific allegations that Freshfields was serving as Grenada's counsel. *Id.* ¶ 40.

*Allied-Signal* was entirely different. The second action there arose from a different set of operative facts than the first, and the claim that was the subject of the second suit *was not even ripe* until after the conclusion of the first suit. 985 F.2d at 913-15. In contrast to the present case, the *Allied-Signal* plaintiff obviously could not be faulted for failing to amend her complaint in the first action to incorporate as-yet unripe claims. But where (as here) (1) the second suit arises from the *same* nucleus of fact as the prior action, (2) the plaintiff learned the facts underlying its second suit while the first suit was still pending, and (3) the claim brought in the second suit was fully ripe before the first suit was dismissed, then *res judicata* dismissal is certainly appropriate. *See Airframe Sys., Inc. v. Raytheon Co.*, 520 F. Supp. 2d 258, 265 (D. Mass. 2007), *aff'd*, 601 F.3d 9 (1st Cir. 2010) (applying *res judicata* because plaintiff had been "obligated to amend its complaint" in a prior action).

*Second*, even if RSM had not been obliged to amend the *Fridman* Complaint to add all potential defendants, RSM in fact elected to amend the *Fridman* Complaint to add *some* defendants yet failed to name Freshfields. RSM filed its Second Amended Complaint on October 3, 2007 (Defs. Ex. E), approximately ten months after Freshfields appeared in the ICSID arbitration, naming five new defendants. *See Fridman*, 643 F. Supp. 2d at 393. RSM filed the Third Amended Complaint on February 25, 2008 (Defs. Ex. B, at 32), specifically identifying Freshfields as Grenada's counsel but not adding Freshfields as a defendant. Thus, RSM's claim

that it lacked the information necessary to include Freshfields in the *Fridman* action is

insupportable, and this action is precluded.

## II.    FRESHFIELDS IS IMMUNE FROM SUIT UNDER THE ICSID CONVENTION.

RSM appears to recognize that the United States has assumed binding treaty obligations

requiring it to afford immunity from suit to counsel in ICSID proceedings.  *See* Defs. Mem. 19-

22 (discussing Articles 21 and 22 of the ICSID Convention).  Those obligations require that this

suit be dismissed.

*It is undisputed that the operative immunity provisions of the ICSID Convention are*

*binding on RSM here*.  RSM does not dispute Defendants' contention that the ICSID Convention

and its immunity provisions are incorporated into the contract between Grenada and RSM, and

that this contract provision therefore vests enforceable rights in Freshfields (Defs. Mem. 23).

Nor does RSM dispute Defendants' contention that, having voluntarily availed itself of the

benefit of the ICSID forum by filing an arbitration there, RSM is now precluded under principles

of promissory estoppel from bringing a suit in contravention of ICSID's rules (Defs. Mem. 23-

24).  RSM's decision not to challenge these propositions is particularly telling because RSM's

principal, Jack Grynberg, was the losing party in a leading case, cited in Defendants'

Memorandum, that support them.  Defs. Mem. 23 (citing *Grynberg v. BP P.L.C.,* 585 F. Supp.

2d 50, 55 (D.D.C. 2008)).  Because RSM has made no effort to distinguish that case or otherwise

address these arguments, they may be treated as conceded.  *See Hopkins v. Women's Div., Gen.*

*Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("It is well understood in this

Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain

arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to

address as conceded.").  RSM is bound by Articles 21 and 22 on these grounds even if the immunity provisions of the ICSID Convention were not otherwise self-executing.

In any event, Articles 21 and 22 are self-executing.  They lack all of the hallmarks of non-self-executing treaty provisions.  They do not contemplate a need for further implementing legislation, and are not in tension with the United States Constitution.  *See Fund for Animals, Inc. v. Kempthorne*, 472 F.3d 872, 881 (D.C. Cir. 2006) (Kavanaugh, J., concurring).  They are not "precatory, aspirational, or otherwise too vague to be judicially enforceable."  *Id.*  Moreover, they have all of the attributes of self-executing provisions.  They are "addressed to the judicial branch of our government" and provide a concrete directive that counsel in ICSID proceedings "shall" enjoy immunity from suit in national courts.  *Diggs v. Richardson*, 555 F.2d 848, 851 (D.C. Cir. 1976); *compare Medellin v. Texas*, 552 U.S. 491, 508 (2008) (noting that use of the word "shall" can constitute a directive signifying self-execution).  Thus, on their face, the immunity provisions are intended to be self-executing.[6]

Freshfields is not asserting a private right of action against RSM, and thus it is immaterial that some cases hold that there is a presumption against construing treaties as creating private rights of action.  *Compare* RSM Mem. 34.  Freshfields here asserts only that, by operation of law, Articles 21 and 22 divest the Court of subject matter jurisdiction to entertain *RSM's* cause of action.  "[E]ven without a 'private right of action,' private individuals may enforce treaties defensively if they are being sued or prosecuted under statutes that are inconsistent with treaty

---

[6]     Contemporaneous statements by President Lyndon Johnson upon signing the ICSID Convention confirm the view that the entire treaty would take effect without need for further congressional action.  *See* Convention on the Settlement of Investment Disputes Between States and Nationals of Other States, Oct. 14, 1966, 17 U.S.T. 1270, 1355, 1966 WL 86269 ("[O]n and after October 14, 1966, the [ICSID Convention] and *each and every article and clause thereof shall be observed and fulfilled with good faith* by the United States of America[.]) (emphasis added).

provisions." Carlos M. Vazquez, *The Four Doctrines of Self-Executing Treaties*, 89 Am. J. Int'l

L. 695, 720 (1995); *see also id.* at 720 n.117; Ernest A. Young, *Treaties As "Part of Our Law*,"

88 Tex. L. Rev. 91, 109 (2009).  For example, the U.S. Supreme Court held, without any

discussion of private rights of action, that private parties could invoke a treaty to prevent the

State of Oregon from escheating property.  *See Kolovrat v. Oregon*, 366 U.S. 187, 191 (1961).

Whether the ICSID Convention would support a lawsuit filed under its provisions is thus

immaterial, because "'[w]hether a treaty is self-executing is a question distinct from whether the

treaty creates private rights or remedies.'"  *McKesson Corp. v. Islamic Repub. of Iran*, 539 F.3d

485, 488-89 (D.C. Cir. 2008) (quoting *Restatement (Third) of Foreign Relations Law* § 111, cmt.

h (1986)).  Here, the Treaty's intent to confer immunity from suit is plain on its face.[7]

      Finally, RSM's suit falls squarely within the scope of the immunity afforded to ICSID

counsel.  Service as ICSID counsel is unquestionably a protected function, and Freshfields'

agreement to serve that protected function is the act RSM cites as Freshfields' agreement to join

the conspiracy.  Compl. ¶ 57.  RSM's allegations of corrupt intent—even if they were plausible

(and they are not, *see* Part IV.B.2, *infra*)—cannot provide a route around this protection.  A

plaintiff can always allege a bad motive, and if that sufficed to support a suit, the immunity

would be worthless.  For that reason, immunities from suit typically turn not on allegations of

---

[7]     It does not help RSM that Congress has implemented a portion of the ICSID Convention by creating a cause of action making ICSID awards enforceable in domestic courts.  RSM Mem. 34; *see* 22 U.S.C. § 1650(a).  It is well-established that "[s]ome provisions of an international agreement may be self-executing and others non-self-executing."  *Restatement (Third) of Foreign Relations Law* § 111, cmt. h (1986); *see Lidas, Inc. v. United States*, 238 F.3d 1076, 1080 (9th Cir. 2001) ("[I]t is far from uncommon for a treaty to contain both self-executing and non-self-executing provisions.").  Nor does the fact that ICSID is designated under the International Organizations Immunities Act ("IOIA") suggest that Articles 21 and 22 are not self-executing.  RSM Mem. 35.  A number of international organizations have more than one independent source of immunity.  *See Brzak v. United Nations*, 597 F.3d 107, 112 (2d Cir. 2010) (United Nations is immune under IOIA as well as other authorities); *Polak v. Int'l Monetary Fund*, 657 F. Supp. 2d 116, 120 (D.D.C. 2009) (same re International Monetary Fund).

intent, but instead solely on whether the allegations concern the immunized function.  *See Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) (en banc) ("Intent should play no role in the immunity analysis.  Moreover, allegations that a conspiracy produced a certain decision should no more pierce the actor's immunity than allegations of bad faith, personal interest or outright malevolence.") (internal citations and quotation marks omitted).

Seeking to distinguish such authorities, RSM asserts that prosecutorial and judicial immunity are somehow distinguishable from immunity for private counsel in ICSID arbitration. RSM Mem. 37.  But Articles 21 and 22 afford immunity to private counsel in ICSID proceedings in precisely the same phrase and language as it affords immunity to the arbitrators themselves, and to officials of ICSID, whose roles in that process are closely analogous to those of judges. There can be no textual basis for making a distinction.  Moreover, the rationale for protecting *all* participants in those specialized proceedings from litigation in national courts is readily apparent. ICSID exists to adjudicate contentious international disputes where the parties may not trust their respective national courts to operate impartially.  If mere allegations of bad intent could pierce the immunity, the losing party could retaliate by filing suit in its home courts against the winner's counsel—precisely what has happened here—and the potential for such retaliatory litigation would chill the willingness of qualified counsel to provide assistance.  Because RSM's claim is premised upon a bare allegation that Freshfields performed a protected function for an impermissible reason, the Complaint must be dismissed under Articles 21 and 22.

## III.   RSM'S RICO CLAIM IS TIME-BARRED BECAUSE ITS ALLEGATIONS DO NOT IDENTIFY ANY INJURY TO BUSINESS OR PROPERTY WITHIN THE FOUR-YEAR LIMITATIONS PERIOD.

As Defendants explained in their opening brief, RSM's RICO claim is barred by the statute of limitations because the only injury to business or property alleged was Grenada's

decision to terminate its contractual relationship with RSM by denying an exploration license pursuant to the Petroleum Agreement.  That decision was made in 2004, *more than five years* before the Complaint in this action was filed.  *See* Defs. Mem. 26.  RSM does not dispute that courts in this Circuit apply the "injury discovery" rule (RSM Mem. 38), which dictates that a cause of action for a RICO claim accrues when the plaintiff knew or should have known of its alleged injury.  *See Hargraves v. Capital City Mortg. Corp.*, 140 F. Supp. 2d 7, 16 (D.D.C. 2000).  To evade the necessary consequence of this rule (*i.e.*, that its suit is time-barred), Plaintiff argues that it suffered injury from conduct occurring *after* the license denial—specifically, the alleged award of an exploration license to Global Petroleum in 2008, or the ICSID Panel's ruling in 2009 that Grenada's decision to deny RSM the license was lawful and did not constitute a breach of contract.  Neither of these events constitutes a new injury to business or property as to which a new civil RICO action would accrue, and thus this action must be dismissed.

A civil RICO claim must be founded on "injury to business or property."  18 U.S.C. § 1964(c) (2006).  "[G]enerically alleging injury" is insufficient to meet this requirement. *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993).  There must be a concrete loss to a tangible property interest.  *See, e.g.*, *Lopez v. Council on American-Islamic Relations Action Network, Inc.*, 657 F. Supp. 2d 104, 114 (D.D.C. 2009) (plaintiffs failed to make the requisite showing under RICO because their injuries were "speculative at best").[8]  The only potential concrete "injury to business or property" that RSM allegedly suffered is its allegation that in 2004 it was denied contract rights under the Petroleum Agreement when Grenada declined to issue it an exploration license.  Grenada's issuance of an exploration license

---

[8]     *Cf. Regions Bank v. J.R. Oil Co.*, 387 F.3d 721, 730 (8th Cir. 2004) ("Injury to mere expectancy interests or to an intangible property interest is not sufficient to confer RICO standing.") (citation omitted); *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998) (same).

to another applicant (whether Global Petroleum or someone else) at most deprived RSM of a *hope* that it might successfully reapply for that license after losing its contract case—and hope is not a form of business or property under RICO.  *See, e.g.*, *Dist. Telecomm. Dev. Corp. v. Dist. Cablevision, Inc*., 638 F. Supp. 418, 422 (D.D.C. 1985) (plaintiff had not established an "injury to business or property" under RICO in part because it did not demonstrate "that but for defendants' alleged fraud, plaintiff *would have received* the cable franchise") (emphasis added); *Tel-Instrument Elecs. Corp. v. Teledyne Indus., Inc.*, 934 F.2d 320 (4th Cir. 1991) (per curiam) (plaintiff had "no cognizable property interest" for purposes of RICO in the "mere expectation" of a contract) (internal quotation marks omitted); *Daley's Dump Truck Servs., Inc. v. Kiewit Pac. Co.*, 759 F. Supp. 1498 (W.D. Wash. 1991) (concluding that plaintiff did not suffer a direct injury under RICO where plaintiff merely alleged a reduced opportunity to compete for government contracts).

Similarly, the ICSID Panel's ruling that Grenada did not breach RSM's rights under the Petroleum Agreement did not "cause[] RSM to incur separate injuries."  RSM Mem. 38.  The ruling merely affirmed that Grenada had acted lawfully and within its rights, and that RSM was not entitled to any damages for the 2004 decision.  The panel's ruling that the denial in question was within Grenada's rights does not impose a cognizable injury separate from the denial itself.[9]

Moreover, neither Grenada's alleged issuance of the exploration license to Global Petroleum nor the ICSID Panel's ruling caused "new injury" cognizable under RICO, because

---

[9]     RSM argues that this initial denial in 2004 only "delayed" its contractual right to obtain a license and did not "defeat" this right.  RSM Mem. 38.  But a senior Grenadian official "formally notified RSM that Grenada was terminating the Agreement" in July 2005, more than four years before the filing of this suit.  *See* Defs. Ex. A [ICSID Award] ¶ 207.  Thus, even if this Court were to accept the characterization of the 2004 exchange as "delaying" RSM's rights, these rights were assuredly "defeated" in 2005 when Grenada unequivocally terminated the contract between the parties.  This official termination of RSM's contract rights was the last possible date of an actual injury to business or property suffered by RSM.

- 13 -

the alleged injury in both circumstances is the very same harm that befell RSM when Grenada

originally denied its application for the exploration license in 2004.  Although several Circuits

have held that a new claim accrues, and thus a new limitations period begins, when a plaintiff

discovers new injury from an ongoing RICO violation,[10] that injury *must* be separate and distinct

from injury previously suffered outside of the four-year limitations period.  *See Klehr v. A.O.

Smith Corp.*, 521 U.S. 179, 190 (1997).  A plaintiff unable to demonstrate "how any new act

could have caused [it] harm over and above the harm that the earlier acts caused" cannot claim a

new injury "even though [it] alleged predicate acts that occurred within the limitations period."

*Chalabi v. Hashemite Kingdom of Jordan*, 543 F.3d 725, 730 (D.C. Cir. 2008) (quoting *Klehr*,

521 U.S. at 190).[11]

   Here, the only injury cognizable under RICO—that is, "injury to business or property"—

that Plaintiff conceivably could have suffered is the denial of an exploration license.[12]  Each of

---

[10]   Although many Circuits have adopted this "separate accrual" rule in civil RICO actions,
neither the D.C. Circuit nor the D.C. district court have applied it to date.  *See Bankers Trust Co.
v. Rhoades,* 859 F.2d 1096, 1102 (2d Cir. 1988) (adopting the separate accrual rule); *McCool v.
Strata Oil Co.*, 972 F.2d 1452, 1465-66 (7th Cir. 1992) (adopting the rule "[f]ollowing the First,
Second, Eighth, Ninth, Tenth, and Eleventh Circuits"); *Love v. Nat'l Med. Enters.*, 230 F.3d 765,
773-75 (5th Cir. 2000) (adopting the rule that "a civil RICO claim [] accrues for each injury
when the plaintiff discovers, or should have discovered, that injury"); *but cf. Chalabi v.
Hashemite Kingdom of Jordan*, 543 F.3d 725, 728-730 (D.C. Cir. 2008) (analyzing a claim of a
"new injury" under the continuing tort doctrine and not mentioning "separate accrual").

[11]   Plaintiff mistakenly relies on *State Farm Mutual Auto Insurance Co. v. Ammann*, 828
F.2d 4 (9th Cir. 1987), for the proposition that a cause of action accrues when "new overt acts"
(as opposed to *new injuries*) occur outside the limitations period.  RSM Mem. 39.  The *Ammann*
concurrence that Plaintiff cites clearly stated its "hold[ing] that as to each injury[,] the civil
RICO statute of limitations period begins to run when the plaintiff knows or has *reason to know
of the injury* which is the basis of the action."  828 F.2d at 5 (emphasis added).  To the extent that
the quote cited by Plaintiff supports a different rule based solely on overt acts, the Supreme
Court expressly rejected such a rule in *Klehr*.  The *Klehr* Court specifically held that although a
new and separate *injury* could re-start the clock for statute of limitations purposes, a "plaintiff
cannot use an independent, new *act* as a bootstrap to recover for injuries caused by other
predicate acts that took place outside the limitations period."  521 U.S at 181 (emphasis added).

[12]   Indeed, RSM has consistently traced its alleged injuries to the license denial.  As early as

the events that occurred after Plaintiff was denied its claim to that license under the Petroleum

Agreement, including the alleged issuance of a license to Global Petroleum and the ICSID

Panel's ruling, caused no loss "above the harm" supposedly caused by the initial denial of the

license.[13]  Accordingly, because RSM fails to allege a separate, independent injury within the

four-year limitations period, its RICO claims are time-barred and should be dismissed.

the initial *Fridman* Complaint, filed in October 2006, RSM alleged damages of "at least
$500,000,000"—the same unsubstantiated (and specious) amount it claims here—because the
defendants allegedly interfered with the contractual agreement under which the "production
license [would have been] issued automatically by Grenada to RSM."  Defs. Ex. F ¶¶ 34, 36,
37.  Thereafter, RSM has continued to trace its injuries to the license denial.  *See, e.g.*, Defs. Ex.
E ¶ 60 ("The Defendants have conspired to tortiously interfere with the issuance of an oil and
natural gas exploration, development and production license by Grenada to Plaintiffs."); Defs.
Ex. B ¶ 61 (same).

[13]     *See Chalabi*, 543 F.3d at 730 (quoting *Klehr*, 521 U.S. at 190) (rejecting plaintiff's
argument that defendant's "ongoing failure to return" wrongfully seized property constituted a
new injury sufficient to restart the statute of limitations); *In re Merrill Lynch Ltd. P'ships Litig.*,
154 F.3d 56, 59-60 (2d Cir. 1998) (no subsequent injury alleged where defendant investor's
annual fee collection and continued misleading statements were not "separate and distinct
fraudulent acts" but merely "continuing efforts to conceal the initial fraud"); *cf. Nat'l Group for
Commc'ns & Computers, Ltd. v. Lucent Techs., Inc.*, 420 F. Supp. 2d 253, 266 (S.D.N.Y. 2006)
(noting that, "at least in some cases, injuries are not 'new and independent' when they are
attributable to a common scheme").  Plaintiff cites three cases that purportedly support its
attempt to pigeonhole its claims into the "separate accrual" rule.  RSM Mem. at 40.  An
examination of each of these decisions further demonstrates that (1) Plaintiff has not alleged the
requisite *separate* injury to invoke this rule, and (2) Plaintiff's claims for injuries suffered well
over four years ago are time-barred.  *See DeShazo v. Nations Energy Co.*, 286 F. App'x 110,
116-17 (5th Cir. 2008) (unpublished) (concluding that plaintiff's RICO claim was precluded by a
Canadian court's prior decision that it was time-barred because the plaintiff "was or should have
been aware of the fraudulent scheme" more than four years before the filing of the original
claim); *Bankers Trust*, 859 F.2d at 1102-05 (adopting the "separate accrual rule" and allowing
plaintiff to bring a civil RICO action for a wholly separate injury); *In re Vitamins Antitrust Litig.*,
Misc. No. 99-197, 2000 WL 1475705, at *16 (D.D.C. May 9, 2000) (rejecting plaintiffs' reliance
on the continuing tort doctrine and applying the antitrust four-year statute of limitations to
determine that some claims were time-barred and others were not solely because plaintiffs had
specifically alleged equitable tolling).

IV.     **RSM POINTS TO NO FACTS THAT RENDER PLAUSIBLE ITS CONCLUSORY ALLEGATIONS THAT FRESHFIELDS KNEW OF AND AGREED TO JOIN A RICO CONSPIRACY.**

RSM begins from the mistaken assumption that "pleading a RICO Conspiracy is relatively simple."  RSM Mem. 14.  As Defendants discussed in their opening memorandum (at 28-29), citing cases RSM elects simply to ignore, there is much more to stating a cognizable violation of § 1962(d) than alleging that the defendants performed acts that they knew might be of incidental help to criminals.  RSM must also allege facts plausibly showing that Defendants *agreed* to the commission of those criminal acts, and *agreed* to further conduct that encompassed *all* of the elements of a substantive offense under RICO.  Thus, RSM must plausibly allege facts that would show that Defendants (1) knew about, and agreed to the commission of the predicate offenses; (2) knew that these predicate offenses were part of a pattern of racketeering activity; (3) understood the essential nature and scope of the enterprise and intended to participate in it; and (4) with this knowledge, agreed to participate in what they knew to be a collective venture directed toward a common goal.  The allegations in the Complaint do not even attempt to meet this burden, and in its opposition, RSM never tries to show they do so.

A.     **Pleading Standard**

Because of the "inevitable stigmatizing effects" on those named as defendants in RICO actions, "courts are charged with flushing out frivolous RICO allegations at the earliest possible stage of litigation."  *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 298 (S.D.N.Y. 2010).  Accordingly, courts will not allow a civil RICO case to survive a motion to dismiss if the Complaint does not provide a sufficient factual basis to lend credence to allegations of a RICO conspiracy.  *See* Defs. Mem. 30-31.  RSM counters by citing out-of-circuit authority for the proposition that civil RICO claims (at least those not alleging frauds) need not be pleaded with particularity.  RSM Mem. 16.  But this Court has stressed that a plaintiff must plead specific

facts when alleging an agreement to participate in a RICO conspiracy.  *See, e.g.*, *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 120 (D.D.C. 2005).[14]  RSM also ignores the reality that it *has* alleged acts of fraud (Compl. ¶ 61), which are always subject to a heightened pleading standard.  *See* Fed. R. Civ. P. 9(b).

In any case, under *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), RSM cannot rely on mere speculative assertions.  RSM concedes that under those authorities, it was required to plead facts sufficient to render its claim plausible. RSM Mem. 13.  Yet RSM fails to grapple with the significance of those decisions, particularly their implications for allegations concerning *mens rea*.  Both cases squarely hold that a plaintiff cannot make out a case when its only alleged evidence of corrupt intent are events that would also be the natural consequence of legitimate business activity.  *Twombly*, 550 U.S. at 557; *Iqbal*, 129 S. Ct. at 1950.  RSM also ignores the striking similarities between this case and *Twombly*, where the Supreme Court deemed insufficient allegations of conspiracy under the antitrust laws (the statute on which RICO is modeled).  Like the unsuccessful plaintiff in *Twombly*, RSM relies on a mundane fact—here, that private attorneys agreed to represent a client with a meritorious defense for a fee—as evidence of a supposed conspiratorial agreement.  Such an argument is squarely foreclosed by *Twombly*.  550 U.S. at 554-55.

---

[14]      RSM attempts to distinguish *Doe I* on the basis of its supposedly "inapposite" facts (RSM Mem. 18 n.7), but (as is true in many instances when RSM tries to distinguish Freshfields' authorities) it never explains the significance of those supposed factual differences. Accordingly, RSM does not provide a reason to question the applicability here of *Doe I*'s holding that allegations of agreement must be predicated on specific facts.

**B.** **The Facts Alleged By Plaintiff Do Not Plausibly Support A Violation Of § 1962(d).**

**1.** **RSM Fails To Provide Plausible Grounds For Inferring That Freshfields Knew Of The Alleged Bribery Scheme.**

RSM does not offer a single concrete allegation that Defendants were aware of the alleged association-in-fact enterprise or of any acts of racketeering. Instead, RSM argues that Freshfields must have inferred that corruption was afoot from newspaper stories (of unconfirmed reliability) alleging unrelated corruption by government officials not directly involved in RSM's license dispute, and because the CEO of a company Freshfields never acted for (Global Petroleum) supposedly had a decade-old criminal conviction for an offense unrelated to either Grenada or political corruption. RSM Mem. 21-23. But those claims come nowhere close to alleging that Freshfields had specific knowledge of a bribery scheme involving oil exploration rights.[15]

Nor, contrary to RSM's claim, can knowledge of bribery be inferred from the allegation that Freshfields knew Global Petroleum was funding Grenada's defense in the ICSID proceeding in the hope of winning the license for itself.[16] RSM Mem. 18. Indeed, as RSM's own counsel expressly conceded during the *Fridman* litigation, there is nothing improper or unusual about

---

[15]    This point is unaltered by the fact that Freshfields runs checks on its clients. At most, these checks might have disclosed the unrelated corruption in Grenada and Mr. Model's unrelated conviction. There is no support for the notion that Freshfields would have or should have drawn the inference from these facts that the license denial here had been procured by bribery.

[16]    Freshfields reiterates here that RSM's allegations regarding the alleged payment arrangement between Global Petroleum and Freshfields are inaccurate in a number of significant respects, and are being taken at face value herein solely for purposes of this motion to dismiss. Among the egregious misstatements is the allegation that Freshfields has received over $10 million in legal fees. Compl. ¶ 10. In fact, Freshfields has charged Grenada reduced fees (a fact that was disclosed to RSM in cost submissions made to the ICSID tribunal) and (though it is not material to the present motion) Freshfields informs the Court that its total billings have been far lower.

third-party funding of litigation.  643 F. Supp. 2d at 412 n.35.  It would not be improper for

Global Petroleum to provide funding in the hope of having the chance to win a business

opportunity.  Paying the Grenadian *government's* legal fees is in no sense the equivalent of

illegally paying bribes to Grenadian *officials*.  Moreover, one need not know or believe that

bribery was afoot to understand that Global Petroleum would have a legitimate interest in

helping Grenada to vindicate its right (eventually held by the arbitral tribunal to be valid) to be

free of any contractual commitment to RSM, so that it could entertain options other than RSM.

RSM's allegations of third-party funding therefore do nothing to render its conspiracy claims

plausible.

Next, RSM argues that even if Freshfields were not aware of the alleged bribery at the

time it assumed the representation in 2005, it must have become aware of the bribes by the end

of 2007.  RSM Mem. 23.  RSM further claims that Freshfields was required to cease providing

ongoing services as soon as it learned of the alleged corruption.  *Id.*  Yet prominent among

RSM's reasons that Defendants must have become aware of the alleged bribery by the end of

2007 is the fact that Plaintiff made certain "allegations in the New York Case."  *Id.*  In other

words, according to RSM, Freshfields was required to terminate its ongoing representation of

Grenada in the ICSID action brought by RSM because RSM had now filed a separate lawsuit

alleging misconduct by Grenadian officials.  Merely restating this contention refutes it: a litigant

surely cannot disqualify its opposition's counsel by bringing a separate lawsuit accusing the

opposing party of corruption.  Such plainly self-interested and self-serving allegations by an

adverse party cannot be the source of "knowledge" that corrupt acts actually occurred.

Finally, RSM argues that even if Defendants were not specifically aware of the corrupt

activity, they still had sufficient *mens rea* to be held liable on the theory of conscious avoidance

because they must have known that there was a high probability that bribes were being paid. RSM Mem. 25.  But conscious avoidance is not lightly presumed.  *See United States v. Alston-Graves*, 435 F.3d 331, 340-41 (D.C. Cir. 2006) (collecting cases holding that the doctrine should be used cautiously and sparingly).  RSM has not alleged *any* facts to demonstrate that Defendants must have inferred the existence of any racketeering enterprise.  Moreover, the conscious avoidance doctrine can play only a narrow role in conspiracy cases.  *See United States v. Mellen*, 393 F.3d 175, 184 (D.C. Cir. 2004) (the conscious avoidance doctrine "may be invoked to prove defendant had *knowledge* of the unlawful conspiracy.  But we do not permit the doctrine to be used to prove intent to participate in a conspiracy.") (quoting *United States v. Reyes*, 302 F.3d 48, 54 (2d Cir. 2002)).  And even if conscious avoidance could give Defendants constructive knowledge of an alleged, unrelated bribery scheme, and even assuming that RSM has alleged facts sufficient to give rise to a theory of conscious avoidance here (which it plainly has not), RSM alleges no facts from which Freshfields must have concluded that the alleged bribes were part of a RICO conspiracy, *see* Part IV.B.3 *infra*.  Thus, RSM has failed to provide plausible grounds for inferring that Freshfields knew of the alleged bribery scheme.

## 2.    RSM Fails To Provide Plausible Grounds For Inferring That Defendants Agreed To Join A RICO Conspiracy.

As RSM concedes, to state a claim, it was required not only to make plausible allegations that Defendants had *knowledge* of the existence of the enterprise and the alleged acts of racketeering to further the enterprise, but also that Defendants "*agreed* to the overall objective of the RICO offense."  RSM Mem. 15 (emphasis added).  The Complaint falls well short of plausibly alleging that Freshfields knew about and agreed to the objective of a RICO conspiracy, which the Complaint describes as having the "purpose of enriching Bowen and other high-level

Grenadian officials, including former Prime Minister Keith Mitchell, and obtaining rights to receive an exclusive exploration license."  Compl. ¶ 57.

RSM alleges *no* facts to support its claim that Defendants agreed to assist in the achievement of these objectives.  Instead, stacking questionable inference upon blatant speculation, RSM does nothing more than attempt to use Freshfields' agreement to represent Grenada in the ICSID proceeding as a proxy for agreement to join a conspiracy.  But Freshfields plainly had sufficient reason to accept the ICSID assignment for its own sake, namely the opportunity to earn a fee for making meritorious contract arguments in a forum in which it has expertise.  RSM's theory of liability here would lead ineluctably to the absurd conclusion that *no counsel could represent Grenada in the ICSID proceeding without entering into a criminal racketeering scheme, even though there was a meritorious defense against RSM's breach of contract claim*.

RSM provides no authority (legal or otherwise) for that chilling proposition.  RSM cites three cases for the proposition that "lawyers providing even ostensibly routine legal services may be held liable under RICO conspiracy."  RSM Mem. 26.  But in each of these cases, the attorneys did not provide anything resembling "routine" legal services.  In *Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961 (7th Cir. 2000), the defendant law firm was hired to perform due diligence on a transaction and allegedly instead intentionally concealed the reality that the transaction was a pyramid scheme.  *Id.* at 963.  In *Fortney v. Kuipers*, No. 98-5387, 1999 WL 102772 (N.D. Ill. Feb. 22, 1999), an attorney had allegedly "made false statements of material fact in devising and recording property transfers" and had otherwise allegedly performed sham transactions to help shield assets from a judgment creditor.  *Id.* at *9.  And in *United States v.*

*Frega*, 179 F.3d 793 (9th Cir. 1999), the defendant attorney was the organizer of a bribery

scheme and personally paid bribes to judges.  *Id.* at 798.[17]

     Far from showing that lawyers face conspiratorial liability when they provide "routine

legal services," the only rule that can be gleaned from RSM's cases is that lawyers—like

everyone else—face RICO liability when they directly assist criminal behavior through their own

*wrongful* conduct.  A lawyer who is providing *illegal* services that further a conspiracy's illegal

goals is one thing.  But here, RSM argues that Freshfields directly facilitated criminal conduct

because "RSM's rights needed to be addressed before Global Petroleum Group could obtain any

license."  RSM Mem. 7.  In other words, unlike the cases on which RSM relies, RSM accuses

Freshfields here only of providing traditional, legitimate legal services.[18]  RSM's authorities are

thus wholly inapplicable to the facts alleged as to Freshfields.  The applicable rule is that

"legitimate acts of attorneys on behalf of clients cannot form the basis of a RICO claim."  *Morin

v. Trupin*, 711 F. Supp. 97, 105-06 (S.D.N.Y. 1989); *see* Defs. Mem. 35-36.

     In the end, RSM's only effort to contest the legitimacy of Freshfields' role is its argument

that Freshfields could not serve as litigation counsel with (alleged) funding from Global

Petroleum because of an "obvious[]" conflict of interest between Grenada and Global Petroleum.

---

[17]    Likewise, the defendants in the other RICO conspiracy cases that RSM relies upon were alleged to have directly engaged in illegal conduct.  In *Smith v. Berg*, 247 F.3d 532 (3d Cir. 2001), the defendant title insurance companies were alleged to have facilitated a corrupt developer's illegal activities by, *inter alia*, "recording false information on HUD-1 Settlement Statements" and failing to make required Truth-In-Lending Law disclosures.  *Id.* at 535.  In *Salinas v. United States*, 522 U.S. 52 (1997), the defendant deputy had personally arranged "contact visits" between a prisoner and his wife; had stood watch during the visits; and had received lavish gifts in return.  *Id.* at 54.

[18]    Nor do RSM's allegations even bear out its own flawed logic; while contending in this portion of its brief that the conspiracy required resolution of the ICSID proceeding before the rights would be granted to Global Petroleum, RSM elsewhere alleges that Global Petroleum was granted the license in 2008, *before* the 2009 ruling of the ICSID panel.  *See, e.g.*, RSM Mem. 2.

RSM Mem. 20.  RSM never bothers to explain the source of this supposed conflict.  With good reason: the alleged conflict is illusory.

For Freshfields to accept Global Petroleum's funding of a litigation in which Freshfields represented Grenada, it was not necessary that Global Petroleum's interests be perfectly aligned with those of Grenada in every conceivable respect.  More pertinent is whether the parties' interests conflicted *within the scope of the representation*.  The only issue in the ICSID proceeding was whether Grenada was bound by contract to issue the license to RSM instead of being free to choose any applicant, and it plainly could not be contrary to Grenada's interests to affirm its freedom to contract with any party of its choosing.  Indeed, as the ICSID panel found, Grenada had many good and valid reasons for wishing to get out from under the one-sided and commercially unreasonable contract with RSM.  *See* Defs. Mem. 6 (citing the ICSID Panel's findings that RSM lacked both the expertise and the financial resources it had represented at the time the contract was signed).

Indeed, in the face of RSM's repeated allegations of conflict of interest, it is telling that since 2008, the government of Grenada has been run by different officials, against whom RSM levels no accusations, yet these new officials have taken the same view of Grenada's interests as was taken by their allegedly bribe-induced predecessors.  Over the past two years, Grenadian officials, acting with what RSM apparently concedes to be untainted judgment, have elected not to issue RSM a license—despite incessant litigation by RSM.  Grenada likewise continues to contest RSM's ongoing efforts to deny Grenada the right to choose a licensee for exploration rights, and continues to use Freshfields as its counsel in doing so.

Freshfields' agreement to represent Grenada cannot be conflated with agreement to participate in a criminal conspiracy with knowledge of its object, and RSM has not plausibly

alleged that Freshfields had corrupt intent in furnishing legitimate legal services.  Accordingly,

the Complaint must be dismissed.

> **3.      RSM Fails To Provide Plausible Grounds For Inferring That Freshfields Knew And Agreed To Each Of The Elements Of A RICO Conspiracy.**

RSM also argues at considerable length that it sufficiently pleaded facts suggesting that

the alleged criminal conspiracy had the requisite continuity to satisfy RICO's pattern

requirement.  RSM Mem. 26-29.  Defendants never argued the contrary.  Defendants do argue,

and Plaintiff has ignored, that the Complaint fails to allege a plausible basis for believing that

Freshfields *knew* that the alleged conspiracy involved a pattern of racketeering activity, including

the continuity requirement, or that Freshfields *agreed* to it.  Freshfields' agreement to defend

Grenada in the arbitration against RSM is a single isolated transaction, with only one apparent

affected party.  Even the supposed bribery scheme Freshfields allegedly "must have" known

about involved a single contract with a single entity.  RSM fails entirely to advance allegations

that provide plausible grounds for inferring that Freshfields knew about and agreed to a pattern

of racketeering activity that violated section 1962(c).  *See Edmondson & Gallagher v. Alban*

*Towers Tenants Ass'n*, 48 F.3d 1260, 1264 (D.C. Cir. 1995).[19]

---

[19]      RSM also fails to allege any factual basis for plausibly inferring that Freshfields knew the nature and scope of the alleged enterprise.  All of Freshfields' knowledge was supposedly gleaned from Grenada's alleged reputation for corruption and Model's prior conviction.  Even assuming *arguendo* that Freshfields could have deduced that bribes were being paid, it still would not have known the extent and objectives of the enterprise.  Without such knowledge, Freshfields could not have had intent to further the enterprise's overall objective.  *See Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000); *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993).

**V.      THE COURT SHOULD DENY PLAINTIFF LEAVE TO AMEND ITS COMPLAINT.**

RSM asks this Court to grant leave to amend the Complaint in lieu of dismissal.  This request should be denied.  No additional factual allegations can overcome the three procedural defects with this suit.  *See Henderson v. Ratner*, 677 F. Supp. 2d 37, 41-42 (D.D.C. 2009) (Sullivan, J.) (denying motion for leave to file an amended complaint because "the Court cannot conceive of any amendment to the complaint that would not be futile").  Moreover, RSM was given three separate opportunities during the *Fridman* litigation to amend its Complaint attacking the same alleged conspiracy, yet still never managed to state a claim.  *See Confederate Mem'l Ass'n*, 995 F.2d at 299 (noting that denying leave to amend a defective RICO complaint is particularly appropriate when the plaintiff "effectively ha[s] had multiple bites at the apple already" because the claims had previously been unsuccessfully litigated in state court).  We respectfully submit that this suit should be dismissed with prejudice, without leave to amend.

<u>**CONCLUSION**</u>

For the above stated reasons, RSM's Complaint should be dismissed with prejudice.

Dated:          July 26, 2010                    Respectfully submitted,

                                                 /s/  David W. Ogden
                                                 David W. Ogden, D.C. Bar No. 375951
                                                 Andrew Weissman, D.C. Bar No. 245720
                                                 Danielle Conley, D.C. Bar No. 503345
                                                 Joshua M. Salzman, D.C. Bar No. 982239
                                                 WILMER CUTLER PICKERING
                                                    HALE AND DORR LLP
                                                 1875 Pennsylvania Ave., NW
                                                 Washington, DC 20006
                                                 (202) 663-6000 (telephone)
                                                 (202) 663-6363 (facsimile)
                                                 david.ogden@wilmerhale.com

                                                 *Counsel for Freshfields Bruckhaus
                                                 Deringer U.S. LLP, Brian King, and
                                                 Jan Paulsson*