**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| | ) | |
| RSM PRODUCTION CORP., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:10-cv-00457 (EGS) |
| | ) | |
| v. | ) | |
| | ) | |
| FRESHFIELDS BRUCKHAUS DERINGER | ) | |
| U.S. LLP, JAN PAULSSON, and BRIAN | ) | |
| KING, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**NOTICE OF SUPPLEMENTAL AUTHORITY**

Currently pending before this Court is the Motion of Defendants Freshfields Bruckhaus

Deringer U.S. LLP, Jan Paulsson, and Brian King ("Defendants") to Dismiss Plaintiff RSM

Production Corporation's Complaint, which was accompanied by a Memorandum of Points and

Authorities setting forth four independent reasons that this case should be dismissed with

prejudice. *See* Dkt. #8 (filed June 1, 2010). Defendants wish to notify the Court of the recent

decision of the Second Circuit in *Norex Petroleum Limited v. Access Industries*, -- F.3d --, 2010

WL 3749281 (2d Cir. Sept. 28, 2010), a case with significant parallels to this one, which

suggests an additional ground for dismissal.

*Norex* held that the Supreme Court's recent decision in *Morrison v. Nat'l Australia Bank*,

130 S. Ct. 2869 (2010), mandated a change in Second Circuit law governing the extraterritorial

application of the civil provisions of the Racketeer Influenced and Corrupt Organizations statute

("RICO"), 18 U.S.C. § 1961 *et seq. Morrison* overturned the "conduct and effects" tests

previously used to determine the application of the federal securities laws to securities

transactions abroad, and *Norex* concluded that the same principle required reversal of Second

Circuit law applying the conduct and effects tests to determine the application of RICO to

conduct centered outside of the United States.  Considering whether under the new approach to

extraterritoriality adopted in *Morrison* RICO could be applied to "allegations of a conspiracy

which primarily involves foreign actors and foreign acts," *Norex* held that the RICO statute does

not have such extraterritorial reach.  *Norex*, 2010 WL 3749281, at *1.  Because the allegations in

the Complaint filed by Plaintiff in this RICO case plainly center on conduct occurring abroad,

and because "merely alleging that some domestic conduct occurred" is insufficient to support a

claim, *id.* at *3, the Complaint fails to state a claim under the principles outlined in *Morrison* and

*Norex*.

Prior to *Norex* and *Morrison*, RICO was widely interpreted as reaching foreign-focused

activity so long as the plaintiff could establish that some aspect of the wrongful conduct occurred

in the United States, or that the foreign-based conduct had an impact in the United States.  The

Second Circuit was among the courts that so held, *see North South Finance Corporation v. Al-*

*Turki*, 100 F.3d 1046 (2d Cir. 1996), as was the D.C. Circuit, *see United States v. Philip Morris*

*USA Inc.*, 566 F.3d 1095, 1130 (D.C. Cir. 2009), *cert denied* 130 S. Ct. 3502 (2010), *reh'g*

*denied* 2010 WL 3447461 (U.S. Sept. 23, 2010) (articulating the test as "whether [defendant's]

conduct has a substantial, direct, and foreseeable effect within the United States").  Last term,

however, the Supreme Court decided *Morrison*, a case addressing the extraterritorial reach of

Section 10(b) of the Securities and Exchange Act.  Section 10(b) had long been interpreted as

having extraterritorial reach in cases where wrongful conduct occurred in the United States or

where the conduct complained of had a domestic effect.  The *Morrison* Court repudiated the use

of conduct- and effects-based tests in assessing the extraterritorial application of statutes, finding

- 2 -

them "vague", "not easy to administer", "unpredictable," and incompatible with the strong

presumption that is to be taken against extraterritorial application of domestic laws.  *See* 130 S.

Ct. at 2878-2879, 2883.  The Court went on explicitly to "reject the notion that the Exchange Act

reaches conduct in this country affecting exchanges or transactions abroad."  *Id.* at 2885.

The *Norex* court concluded that the approach to statutory interpretation mandated in

*Morrison* applies equally to RICO, and that under that standard, RICO could not be deemed to

apply to conduct occurring almost exclusively outside of the United States.  Indeed, the impact

of the *Morrison* decision was deemed so incontrovertible that the *Norex* court ceased to adhere to

*Al-Turki,* which allowed extraterritorial application of RICO under a variant of the conduct and

effects tests, without even taking the matter *en banc*.  Judge Rakoff, author of a leading RICO

treatise, has likewise recognized that the application of RICO to conduct abroad must now be

restricted, consistent with the limitations on extraterritoriality imposed by *Morrison*.  *See Cedeno*

*v. InTech Group, Inc.*, -- F. Supp. 2d --, 2010 WL 3359468 (S.D.N.Y. August 25, 2010)

(dismissing a RICO claim where the only contact the defendants' alleged scheme had with the

United States was the movement of funds into and out of U.S.-based bank accounts).

In this case, Defendants did not initially seek to dismiss Plaintiff's Complaint as

impermissibly focused on foreign conduct because Defendants deemed that argument

inconsistent with the expansive approach to the extraterritorial application of RICO taken by the

D.C. Circuit in *Philip Morris*.  However, the D.C. Circuit's decision regarding the applicability

of RICO to the foreign-based conduct in *Philip Morris* was founded on an application of an

effects test, which *Morrison* rejected and the *Norex* court concluded is now an impermissible

interpretation of RICO.  In the wake of *Norex*, and the Second Circuit's overruling of *Al-Turki*, it

is now apparent that the approach taken in *Philip Morris* did not and cannot survive *Morrison*.

To the extent that the Court believes supplemental briefing on the implications of

*Morrison* and *Norex* for this case would be helpful, Defendants will do so.


Dated:          October 28, 2010                    Respectfully submitted,

                                                    /s/  David W. Ogden

                                                    David W. Ogden, D.C. Bar No. 375951
                                                    Andrew Weissman, D.C. Bar No. 245720
                                                    Danielle Conley, D.C. Bar No. 503345
                                                    Joshua M. Salzman, D.C. Bar No. 982239
                                                    WILMER CUTLER PICKERING
                                                           HALE AND DORR LLP
                                                    1875 Pennsylvania Ave., NW
                                                    Washington, DC 20006
                                                    (202) 663-6000 (telephone)
                                                    (202) 663-6363 (facsimile)
                                                    david.ogden@wilmerhale.com


                                                    *Counsel for Freshfields Bruckhaus
                                                    Deringer U.S. LLP, Brian King, and
                                                    Jan Paulsson*