# EXHIBIT A

INTERNATIONAL CENTRE FOR SETTLEMENT OF INVESTMENT DISPUTES

WASHINGTON, D.C.

RSM PRODUCTION CORPORATION

*Applicant*

- AND -

GRENADA

*Respondent*

ICSID CASE NO ARB/05/14

(ANNULMENT PROCEEDING)

---

## ORDER OF THE COMMITTEE DISCONTINUING THE PROCEEDING AND DECISION ON COSTS

---

*Members of the* ad hoc *Committee:*
Dr Gavan Griffith QC, *President*
Tan Sri Cecil W M Abraham, *Member*
Professor Campbell McLachlan QC, *Member*

*Secretary to the* ad hoc *Committee:*
*Ms Milanka Kostadinova*

*Assistant to the* ad hoc *Committee:*
*Dr Chester Brown*

*The Parties' Legal Representatives:*

*Representing the Applicant:*        *Representing the Respondent:*

*Mr Jack Grynberg*                    *Freshfields Bruckhaus Deringer LLP*
*Mr Roger Jatko*
*Ms Janice Orr*
*RSM Production Corporation*

*Date of dispatch to the parties*: **April 28, 2011**

A.  Introduction and Procedural History

1.  On 26 June 2009, RSM Production Corporation ('the Applicant'), submitted a
    Request for Annulment to the ICSID Secretariat ('ICSID') pursuant to Article 52(1)
    of the ICSID Convention and Rule 50(1)(iii) of the ICSID Arbitration Rules,
    requesting the annulment of the Award of 13 March 2009 rendered by the
    Tribunal in the arbitration proceeding between the Applicant and Grenada ('the
    Respondent').  The Request for Annulment was registered by the ICSID
    Secretariat on 10 July 2009, and the *ad hoc* Annulment Committee ('the
    Committee') was constituted on 17 August 2009.

2.  In its Request for Annulment, the Applicant submitted that in rendering the
    Award, the Tribunal 'manifestly exceeded its powers' (contrary to Article 52(1)(b)
    of the ICSID Convention); that there was a 'serious departure from a fundamental
    rule of procedure' (contrary to Article 52(1)(d)); and that the Award 'failed to state
    the reasons on which it is based' (contrary to Article 52(1)(e)).

3.  On 17 September 2009, pursuant to Regulation 14(3)(d) and (e) of the ICSID
    Administrative and Financial Regulations, ICSID invited the Applicant to make an
    advance payment of USD 150,000 to enable it to meet the direct costs of the
    proceeding in the next three to six months.   The Applicant made an initial
    payment of USD 118,105 and subsequently paid the difference to the requested
    USD 150,000.

4.  The Committee convened a procedural hearing in London on 16 October 2009
    ('the First Session').  At the First Session, the parties agreed that the annulment
    proceeding would consist of two phases, written and oral.  The dates 15 – 17
    February 2010 were set aside for the oral hearing.

5.  At the First Session, the Applicant made an application in which it requested the
    Committee to investigate suspicions of corruption in the contract underlying the
    present dispute.  The Committee invited the Applicant to put its application in
    writing.  The Applicant duly submitted its application by letter dated 29 October

2009, to which it attached various exhibits.   The Respondent submitted its observations on the Applicant's application, together with various exhibits, by letter dated 16 November 2009.

6. On 16 November 2009, the Applicant submitted its Memorial in Support of its Request for Annulment.

7. On 7 December 2009, the *Ad Hoc* Committee issued a Decision on RSM Production Corporation's Application for a Preliminary Ruling of 29 October 2009, in which it rejected the Applicant's application.

8. Under cover of an email dated 31 December 2009, the Respondent submitted its Counter-Memorial to the Request for Annulment.

9. By letter dated 13 January 2010, ICSID requested a second advance payment in the amount of USD 300,000.  The amount was an estimate of the further costs incurred and to be incurred in relation to the annulment proceeding to finality, including the hearing in Washington, D.C., and was arrived at in consultation with the President of the Committee pursuant to Regulation 14(3)(a)(ii) of the ICSID Administrative and Financial Regulations.

10. Under cover of a letter dated 15 January 2010, the Applicant submitted its Reply to Grenada's Counter-Memorial to the Request for Annulment.

11. On 19 January 2010, the Applicant requested that the hearing be reduced to one day and be held by a video conference.  On 20 January 2010, ICSID informed the parties that the Committee did not accede to the Applicant's request given the parties' earlier consent for an in-person hearing.  By letter dated 20 January 2010, the Applicant objected to the request for a second advance payment of USD 300,000 as 'unreasonable', and indicated that it was prepared to pay USD 100,000.

12. By letter dated 22 January 2010, ICSID confirmed on behalf of the Committee that the advance payment of USD 300,000 was intended to meet the further

expenses in the proceedings, and that the call for USD 300,000 was a reasonable pre-estimate in light of the expedited time schedule agreed at the First Session of the Committee.  In addition to providing a breakdown of the estimates, in that letter ICSID informed the parties that if the funds were not received by the beginning of the following week, it would have to 'recommend a postponement of the hearing on Annulment' if it was not clear that ICSID would be able to pay 'all of the resulting bills associated with the continuation of the proceeding.'

13. By letter dated 25 January 2010, Mr Jack Grynberg, the President and Chief Executive Officer of the Applicant, informed the Secretary-General of ICSID, Ms Meg Kinnear, that he considered the requested advance payments of USD 300,000 to be 'unreasonable and excessive', and requested that she intervene to persuade the Committee to accept a less expensive procedure for the hearing. By letter dated 26 January 2010, the Secretary-General replied to Mr Grynberg, noting that the parties had, at the First Session, agreed to an oral hearing, and that the specified estimate remained payable.  She also requested Mr Grynberg to address future correspondence through the Secretary to the Committee.

14. By letter dated 28 January 2010, Dewey & LeBoeuf informed ICSID and the Committee of its withdrawal as counsel for the Applicant.

15. By letter dated 28 January 2010, ICSID observed that the advance of USD 300,000, as requested in the letter dated 13 January 2010, remained outstanding, including the amount of USD 31,895 which was due after the first call of funds, but which had not been received.  The Committee noted that if any part of the amount remained outstanding by 12 February 2010, the proceeding would be suspended.  The Applicant was invited to confirm by 3 February 2010 whether the requested deposits would be paid and the hearing confirmed.

16. By letter dated 29 January 2010, Mr Jack Grynberg, the President and Chief Executive Officer of the Applicant, informed ICSID that the outstanding amount of USD 31,895 had been wired to ICSID, and requested that the hearing be

postponed for a reasonable period in order for the Applicant to retain and instruct new counsel.

17. By letter dated 2 February 2010, the Respondent submitted that the Applicant 'should not be able to preserve the pendency of this proceeding, without making the payments that it undertook, as applicant, to pay pursuant to the Administrative and Financial Regulations.'  The Respondent observed that '[i]t would be scandalous if this case were allowed to languish for many months, only to be ultimately dismissed for RSM's failure to go through with what it started – without any compensation for Grenada's wasted costs' (Respondent's letter dated 2 February 2010).

18. Under cover of an email dated 3 February 2010, the Respondent submitted its Rejoinder to the Request for Annulment.

19. Since no payment was received from the Applicant, the Committee vacated the hearing dates by letter dated 4 February 2010.  In that letter, the Committee also informed the parties that, in the event of non-payment by the Applicant of the request for advance payment of costs by 12 February 2010, the proceeding would be subject to the procedure in Regulation 14(3)(d) of the ICSID Administrative and Financial Regulations, and that, in such case, the advance payment would have to be made by one party or the other, if the Respondent were to request the Committee to proceed further under default or other provisions of the ICSID Convention or ICSID Arbitration Rules.

20. On 17 February 2010, ICSID notified the parties that the advance on costs had not been paid by 12 February 2010.  In accordance with Regulation 14(3)(d) and (e) of the ICSID Administrative and Financial Regulations, the parties were given the opportunity to make the outstanding payment within 15 days (i.e., by 5 March 2010), and were informed that the Secretary-General may move that the Committee stay the proceedings if part of the required advance payment was still outstanding after that date.

21. By letter dated 4 March 2010, the Respondent requested that the Committee continue the proceeding and, acting on the basis of Article 45(2) of the ICSID Convention, Rule 42 of the ICSID Arbitration Rules, and its inherent powers, issue a decision dismissing the Applicant's annulment application for want of prosecution and abuse of process and award costs.   Alternatively, the Respondent requested that the Committee proceed to rule on the merits of the annulment application and on the issue of costs.

22. By letter dated 4 March 2010, Mr Grynberg objected to the Respondent's request, which it described as 'wholly improper'.

23. By letter dated 11 March 2010, ICSID informed the parties of the proposal of the Committee to convene for a one-day procedural hearing in Washington D.C. to consider the applications and submissions of either party as to the course of the proceeding.   The parties were also advised that the procedural hearing would take place subject to the payment by 24 March 2010, by either party, of an advance of USD 150,000 to finance that hearing.

24. Not having received any payment, by letter dated 26 March 2010, the Secretary to the Committee, on behalf of the Secretary-General and in accordance with Regulation 14(3)(d) of the ICSID Administrative and Financial Regulations, moved that the Committee stay the proceeding for lack of payment.   By letter dated 29 March 2010, the Committee decided to stay the proceeding, effective 29 March 2010.

25. By letter dated 9 April 2010, Mr Grynberg, the President and Chief Executive Officer of the Applicant, brought to the Committee's attention certain allegations of criminal behaviour being carried out against the Minister of Finance, Planning, Economic Development, Energy and Foreign Trade of Grenada, and requested that the Committee 'immediately make a decision, without any meetings, based on the comprehensive briefing by both sides'.

26. By letter dated 30 September 2010, the Respondent observed that the proceeding had been suspended for six months, and noted that the Secretary-

General may move the Committee to discontinue the proceeding in accordance with Regulation 14(3)(d) of the ICSID Administrative and Financial Regulations. In the event that the Committee discontinued the proceeding, the Respondent renewed its request that the Committee award full costs to Grenada.   The Respondent also drew the attention of the Committee to two recent decisions, namely *Foresti v Republic of South Africa* (ICSID Case No ARB(AF)/07/1, Award of 4 August 2010), and *Howard v Government of Canada* (Order for the Termination of the Proceedings and Award on Costs of 2 August 2010), which, the Respondent claimed, supported its position.

27. By letter dated 14 October 2010, the Applicant stated that it 'does not contest that the Tribunal has the discretionary authority to order payments of fees of one party from another.' But it opposed the Respondent's request that the Committee award full costs (which, the Applicant noted, consisted of the Respondent's legal fees), asserting that its annulment application was 'far from frivolous', and alleged that, in any event, the Respondent 'did not pay its own attorney fees for this proceeding'.  The Applicant submitted that the Committee could only entertain the Respondent's request after investigating whether the Respondent had actually incurred any costs, and whether the fees requested were reasonable, as to which an opportunity for discovery and argument ought to be granted.

28. On 27 October 2010, ICSID notified the parties that the Secretary-General may move that the Committee discontinue the proceedings and requested each party's view in this regard.  By letter dated 3 November 2010, the Respondent requested that the Secretary-General move the Committee to discontinue the proceeding, and it repeated its request that the Committee award the Respondent its full costs in doing so.  By letter dated 4 November 2010, the Applicant confirmed that it had no objections to the discontinuance, and restated its objection to the Respondent's claim for its legal fees.

29. By letter dated 5 November 2010, the Respondent brought to the Committee's attention the case *Quadrant Pacific Growth Fund LP and Canasco Holdings Inc, v Republic of Costa Rica* (ICSID Case No ARB(AF)/08/1, Order of the Tribunal

Taking Note of the Discontinuance of the Proceeding and Allocation of Costs of 27 October 2010).

30. After more than six months had elapsed since the stay of the proceeding, by letter dated 8 November 2010, the Secretary to the Committee moved, in accordance with Regulation 14(3)(d) of the ICSID Administrative and Financial Regulations, and on behalf of the Secretary-General, that the Committee discontinue the annulment proceeding in this case for non-payment of advances for the direct expenses of the proceeding.

31. By letter dated 7 December 2010, ICSID informed the parties that part of the actual costs incurred in the proceeding remained outstanding and could not be covered since the balance of the case was negative. It requested the Applicant to pay USD 35,000 by 7 January 2011 to allow ICSID to cover costs already incurred before the discontinuance.

32. By letter dated 14 January 2011, ICSID observed that the Applicant had failed to pay the USD 35,000 as requested. ICSID invited either party to advance the relevant amount within 15 days, i.e., by 31 January 2011.

33. On 23 March 2011, the Respondent transferred to ICSID USD 31,424.74 to cover outstanding fees and expenses relating to the conclusion of this proceeding. By letter dated 8 April 2011, ICSID acknowledged receipt of this amount.

34. By letter dated 11 April 2011, the Respondent amended its claim for costs to include this additional sum, with the result that the Respondent's claim for costs amounts to USD 186,072.81.

B.  Issues before the Committee

35. The Committee observes that there are two issues before it: first, whether the annulment proceeding should be discontinued; and second, whether the

Respondent is entitled to an award of costs.  The Committee considers these issues in turn.

B(1).  Discontinuance of the Annulment Proceeding

36. The Committee has set out the procedural history of the arbitration, including the failure of the Applicant to pay the advance on costs, despite repeated requests. The Applicant was asked to pay the advance on costs by letters dated 13 January 2010, 28 January 2010, 4 February 2010, 17 February 2010, and 11 March 2010.  Despite these requests, the Applicant failed to make the relevant payment.  On 26 March 2010, ICSID moved that the Committee stay the proceeding for lack of payment in accordance with Regulation 14(3)(d) of the ICSID Administrative and Financial Regulations.  The Committee stayed the proceeding on 29 March 2010.

37. As noted above, by letter dated 27 October 2010, ICSID notified the parties that the Secretary-General may move that Committee discontinue the proceeding, and requested the parties' views on the matter.  By letter dated 3 November 2010, the Respondent requested that 'the Secretary-General … move the *ad hoc* Committee to discontinue the annulment proceeding'. By letter dated 4 November 2010, the Applicant stated that it had 'no objection to the discontinuance of the case'.

38. By letter dated 8 November 2010, the Secretary to the Committee, acting on behalf of the Secretary-General, and in accordance with Regulation 14(3)(d) of the ICSID Administrative and Financial Regulations, moved that the Committee discontinue the annulment proceeding in this case.

39. Regulation 14(3)(d) provides, in relevant part, that:

'If any proceeding is stayed for non-payment for a consecutive period in excess of six months, the Secretary-General may, after notice to and as far as possible in consultation with the parties, move that the competent body discontinue the proceeding'.

Regulation 14(3)(e) applies this provision *mutatis mutandis* to an application for annulment of an award.

40. These proceedings were stayed for non-payment with effect from 29 March 2010. Accordingly, the six month period elapsed on 30 September 2010. The Secretary-General gave notice to the parties of her intention to move the Committee to discontinue the proceeding by letter dated 27 October 2010 and consulted the parties (as evidenced by their letters of 3 and 4 November 2010 respectively).  She moved that the Committee discontinue the proceeding by letter dated 8 November 2010. Therefore, in accordance with Regulation 14(3)(d), the Committee is now empowered with the discretion to order that this annulment proceeding be discontinued.

41. The Committee observes that neither party objects to the discontinuance of the proceeding pursuant to Regulation 14(3)(d) and (e).  The Committee accordingly hereby now determines that the annulment proceeding is discontinued on that ground, subject to its decision on the Respondent's application for payment of its costs, as set out below.

B(2).  The Respondent's Application for Costs

*(a)  The Respondent's Submissions*

42. The second issue before the Committee is the Respondent's application for costs.  As is apparent from the procedural history of this case, by its letters dated 30 September 2010, and 3 November 2010, the Respondent requests that the Committee discontinue the annulment proceeding and award it its full costs.  The Respondent submits that the Committee has the power to make such an award under Article 45(2) of the ICSID Convention, Rule 42 of the ICSID Arbitration Rules, and on the basis of its inherent powers (Respondent's letter dated September 30, 2010).

43. Further, the Respondent submits that, as a 'judicial formation governed by public international law', the Committee has an inherent power 'to take measures to preserve the integrity of its proceedings' (*Hrvatska Elektroprivreda v Slovenia* (ICSID Case No ARB/05/24, Decision on the Participation of Counsel of 6 May 2008), para 33), and that this encompasses the power 'to dismiss an annulment application for manifestly failing to prosecute, abusing and manipulating the Committee's process, and proceeding dishonestly and in bad faith' (Respondent's letter dated 4 March 2010).

44. In the view of the Respondent, the conduct of the Applicant dictates that it should bear the legal fees incurred by the Respondent in the course of this proceeding. The Respondent submits that the Applicant has 'manipulated and abused the ICSID process', and that the Applicant's apparent strategy was 'to maintain the pendency of legal proceedings against Grenada for as long as possible, thereby casting a cloud over Grenada's ability to deal responsibly with its natural resources and frightening away potential investors' (Respondent's letter dated 4 March 2010).  The Respondent  recalls that '[o]n 15 January 2010, [the Applicant] and its three shareholders … submitted a request for arbitration to commence a new case' under the Grenada-United States Bilateral Investment Treaty ('BIT'), and that 'shortly after filing the new request for arbitration, [the Applicant] challenged the advance requested by ICSID in this proceeding, dismissed its counsel, refused to pay the advance, and then subsided into silence once it had scuttled the hearing' (Respondent's letter dated 4 March 2010).  Although the Respondent does not request a decision on the merits of the Applicant's Request for Annulment, it submits that it is 'entitled to finality and to reimbursement of the costs it has been forced to waste on an annulment proceeding that was always without merit and that [the Applicant] has now abandoned'.  In the alternative, the Respondent submits that if the Committee decides that it can only consider its request for costs only after having decided the merits of the Applicant's Request for Annulment, the Respondent requests that the Committee 'proceed to rule on the merits of the annulment application and the question of costs' (Respondent's letter dated 4 March 2010).

45. In support of its application for costs, the Respondent refers to *Foresti v Republic of South Africa* (ICSID Case No ARB(AF)/07/1, Award of 4 August 2010).  The Tribunal in that case observed that 'claimants in investment arbitrations … cannot expect to leave respondent States to carry the costs of defending claims that are abandoned' (para 132).  The Respondent claims that this is the very situation it faces, as the Applicant had 'abandoned' the present proceeding, taking no further steps.

46. The Respondent also refers to *Howard v Government of Canada* (Order for the Termination of the Proceedings and Award on Costs of 2 August 2010), in which the NAFTA Tribunal, acting under the UNCITRAL Rules, issued an order terminating the proceedings and making an award on costs in light of the 'persistent refusal of the Claimants to make the required deposit of costs' (para 64).  In making an award of costs, the Tribunal further held that although it had not ruled on the merits of the Claimants' claims, the Claimants were to be regarded as the unsuccessful party in light of their 'failure to meet their basic obligations and to orderly prosecute their claims' (para 75).

47. Further, the Respondent refers to the decision in *Quadrant Pacific Growth Fund LP and Canasco Holdings Inc, v Republic of Costa Rica* (ICSID Case No ARB(AF)/08/1, Order of the Tribunal Taking Note of the Discontinuance of the Proceeding and Allocation of Costs of 27 October 2010).  In that case, the Tribunal observed that '[a]fter almost two years of adjudication and on the eve of the hearing on the merits, Claimants suddenly decided to abandon their claims' (para 68).  The Tribunal in that case noted further that counsel for the Claimants withdrew from the proceeding one week before the hearing planned for 13 – 17 November 2009, and that this occurred 'shortly after receiving the Tribunal's request for a second advance payment to meet costs to be incurred in the proceeding, including the costs of the hearing on the merits' (para 68).  The Tribunal questioned whether the Claimants had 'thoughtfully considered the costs involved in this arbitration and whether they had been adequately advised on the matter before filing their claim' (para 69), and whether the Claimants 'ever had a genuine intention to participate at [the] evidentiary hearing' (para 69).  The Tribunal determined that 'much of Respondent's costs, those of [ICSID]

administering this arbitration, as well as the time of the members of the Tribunal, could have been spared if the Claimants had given timely and adequate consideration to the consequences of their action', and ordered that the Claimants bear the Respondent's costs, as requested by the Respondent (paras 70-72).   In doing so, it reiterated the principle that 'Claimants cannot expect Respondent to carry the burden of the costs of defending claims that Claimants decided to abandon' (para 71).

48. Finally, with regard to the Applicant's submission that the Respondent should not be awarded costs in respect of its legal fees on the basis that those legal fees are allegedly being paid for by a third party – which is not admitted by the Respondent – the Respondent refers to the Award in *Ioannis Kardassopoulos and Ron Fuchs v Georgia* (ICSID Case Nos ARB/05/18 and ARB/07/15, Award of 3 March 2010), in which the Tribunal stated that it knew 'of no principle why any … third party financing arrangement should be taken into consideration in determining the amount of recovery by the Claimants of their costs' (para 691).

49. In sum, the Respondent requests that the Committee issue an order discontinuing the annulment proceeding with an award of full costs, in the amount of USD 186,072.81 (Respondent's letters dated 30 September 2010 and 11 April 2011).

*(b)  The Applicant's Submissions*

50. As noted above, the Applicant accepts that the Tribunal has the discretionary authority to order payments of fees of one party from another. But the Applicant objects to the Respondent's application for costs on its merits.  It draws attention to the fact that 'this is an annulment proceeding', and that, accordingly, it, as the Applicant, 'was responsible for payment of all of the costs of the Tribunal and ICSID' (Applicant's letter dated 14 October 2010).  It observes that 'Grenada had the option of continuing the proceeding by paying the requested costs, but it chose not to do so' (Applicant's letter dated 14 October 2010).

51. As for the Respondent's legal fees, the Applicant does not deny that the Committee has the power to order payments of legal fees from one party to another, but it submits that the Committee can only do so after an investigation in to (i) whether the Respondent actually paid any costs, without any reimbursement from other sources; and (ii) whether the fees requested by Respondent are reasonable.

52. On the first issue, the Applicant refers to a passage in the Award in *Foresti v Republic of South Africa* (ICSID Case No ARB(AF)/07/1, Award of 4 August 2010), where the Tribunal expressed the view that '[a] Tribunal cannot properly order that the costs of a Party's adviser who engages in the solicitation of bribes should be recovered from the other Party' (para 120). Although the Applicant does not suggest that the alleged payment of the Respondent's legal fees by an undisclosed third party amounts to a bribe, it submits that it would be improper for the Tribunal 'to award payment to … an undisclosed party' (Applicant's letter dated 14 October 2010).

53. On the second issue, concerning the reasonableness of the claimed costs, the Applicant refers to the approach of the Tribunal in *Howard v Government of Canada* (Order for the Termination of the Proceedings and Award on Costs of 2 August 2010), in which the Tribunal undertook a 'careful and detailed analysis of the costs, fees and disbursements spent in that case', and only ordered the reimbursement of 'out of pocket expenses' which did not include the respondent State's legal fees (Applicant's letter dated 14 October 2010).

54. The Applicant submits, in conclusion, that 'the Respondent should not be awarded reimbursement of attorney fees … but should the Tribunal determine that it might consider any such award, the inquiries outlined must be made, and an appropriate opportunity for discovery and argument must be granted beforehand'(Applicant's letter dated 14 October 2010).

*(c)  The Committee's Determination*

55. Having already determined that the present annulment proceeding is discontinued, the issue before the Committee is whether the Committee should entertain the Respondent's application for costs.  The Respondent's costs include its legal fees and disbursements, as well as direct costs of the annulment proceeding, in the amount of USD 186,072.81.   The Applicant opposes the Respondent's application.

56. The Committee recalls that, by letter dated 8 November 2010, the Secretary-General of ICSID moved that the Committee discontinue the proceeding under Regulation 14(3)(d) of the ICSID Administrative and Financial Regulations.  The Committee also recalls that it has decided above that the annulment proceeding is to be hereby discontinued in accordance with those Regulations, subject to its decision on costs.

57. The Committee notes that, under Article 61(2) of the ICSID Convention, it has the power to 'assess the expenses incurred by the parties in connection with the proceedings, and shall decide how and by whom those expenses, the fees and expenses of the members of the Tribunal and the charges for the use of the facilities shall be paid.'  The Committee observes that Article 61(2) is applicable in annulment proceedings by virtue of Article 52(4) of the ICSID Convention.

58. Furthermore Regulation 14(3)(e) expressly confirms this power by providing that, in the case of an application for annulment:

> 'the applicant shall be solely responsible for making the advance payments requested by the Secretary-General to cover expenses following the constitution of the Committee, … without prejudice to the right of the Committee in accordance with Article 52(4) of the Convention to decide how and by whom expenses incurred in connection with the annulment proceeding shall be paid.'

59. In any event, the Committee notes that its power to make an award of costs is not contested by the Applicant, which agreed in its letter dated 14 October 2010 that the Committee has the power 'to order payments of fees of one party to another'.

60. The Committee is conscious of the fact that orders for costs are not normally made on the discontinuance of proceedings.  Nonetheless, for the reasons stated below, the Committee considers that it is appropriate to render a Decision awarding the Respondent its fees and expenses incurred in connection with these annulment proceedings, in view of the exceptional circumstances of this case.

61. In considering the Respondent's application for costs, the Committee agrees with the views expressed by the Tribunal in *Quadrant Pacific Growth Fund LP and Canasco Holdings Inc, v Republic of Costa Rica* (ICSID Case No ARB(AF)/08/1, Order of the Tribunal Taking Note of the Discontinuance of the Proceeding and Allocation of Costs of 27 October 2010), which stated that:

> 'Although the termination of this arbitration cannot be understood in terms of success or failure for either side, the Tribunal may proceed to a decision on the allocation of costs on the basis of other factors, such in a case where a party's bad faith, lack of cooperation, dilatory or otherwise improper conduct justifies that the costs of the proceedings be assessed against such party' (para 67).

62. The Committee recalls that the Applicant submitted its Request for Annulment in the present proceeding on 26 June 2009, and that at the First Session on 16 October 2009, it raised an allegation of corruption.  This allegation was developed in a substantive application to which the Respondent was required to make two rounds of written submissions.  The Committee dismissed the Applicant's application in its Decision on RSM Production Corporation's Application for a Preliminary Ruling, which it rendered on 7 December 2009.

63. The Committee further recalls that the Applicant failed to pay the advance on costs requested by letter dated 13 January 2010, despite the proximity of the

merits hearing on 15-16 February 2010.  Despite repeated requests from ICSID, the Applicant did not pay the necessary costs for the annulment proceeding to move forward.   The Committee also notes that, on 15 January 2010, the Applicant and its three shareholders commenced a separate proceeding against the Respondent under the Grenada-United States BIT (*Rachel Grynberg, Stephen Grynberg, Miriam Grynberg and RSM Production Corporation v Grenada* (ICSID Case No ARB/10/6)), the object of which appears to have been substantively similar to the object of the present annulment proceedings; namely, an effort to attack the Tribunal's Award of 13 March 2009 in the present case. Later that month, on 28 January 2010, counsel for the Applicant notified the Committee that it was withdrawing as counsel in the present proceeding. Further, the Applicant having failed to make the requested advance payment on costs, the present annulment proceeding was suspended on 29 March 2010.

64. The Respondent has submitted that the Applicant has engaged in a 'cynical manipulation of this proceeding', and an 'abuse of process', referring to the parallel claim brought by the Applicant and its shareholders under the Grenada-United States BIT, as well as a claim commenced in US federal court against counsel for the Respondent in which the Applicant alleges violations of the Racketeer Influenced and Corrupt Organisations Act (Respondent's letter dated 30 September 2010).

65. It is not necessary for the Committee to find that the Applicant has committed an abuse of process in commencing separate proceedings against the Respondent. If the Applicant considers that it has legal rights, it is entitled to seek the vindication of those rights.   Bearing in mind the Applicant's approach to the present proceeding, however, as well all the relevant facts and circumstances, the Committee considers that an award of costs to the Respondent is justified. The Committee agrees with the view expressed by the Tribunal in *Foresti v Republic of South Africa* (ICSID Case No ARB(AF)/07/1, Award of 4 August 2010), which stated that 'claimants in investment arbitrations … cannot expect to leave respondent States to carry the costs of defending claims that are abandoned' (para 132).   Likewise, the Committee agrees with the Tribunal in *Quadrant Pacific Growth Fund LP and Canasco Holdings Inc v Republic of Costa*

*Rica* (ICSID Case No ARB(AF)/08/1, Order of the Tribunal Taking Note of the Discontinuance of the Proceeding and Allocation of Costs of 27 October 2010), where it expressed the view that claimants in arbitration proceedings cannot expect respondent States 'to carry the burden of the costs of defending claims' that are ultimately abandoned (para 71).

66. In the present case, the Committee considers that the Applicant effectively abandoned the annulment proceeding once it had launched its claim against the Respondent under the Grenada-United States BIT (which, the Committee observes, was rejected by the Tribunal in that separate proceeding as being 'manifestly without legal merit' within the meaning of Rule 41(5) of the ICSID Arbitration Rules: *Rachel Grynberg, Stephen Grynberg, Miriam Grynberg and RSM Production Corporation v Grenada* (ICSID Case No ARB/10/6, Award of 10 December 2010).

67. Having decided that an award of costs is appropriate in this case, the Committee turns to a consideration of whether the costs claimed by the Respondent are reasonable.  The Respondent has provided details of its costs as Annexure F to its letter dated 30 September 2010. The Respondent amended its claim for costs on 8 April 2011. In the view of the Committee, the Respondent's costs are reasonable, and are costs that would be expected by a procedure in which the Respondent was required (i) to produce two rounds of written submissions on the merits of the Applicant's Request for Annulment, with accompanying exhibits; (ii) to produce written submissions on the Applicant's application for a preliminary ruling on the allegation of corruption, also with accompanying exhibits;  (iii) to prepare for a hearing, which was then cancelled at relatively short notice, owing to the Applicant's default in payment; and also (iv) to pay an advance to cover outstanding expenses of the proceeding requested by ICSID by letter dated 7 December 2010, which advance ought, by virtue of Administrative Regulation 14(3)(e) to have been paid by the Applicant.

68. As for the Applicant's submission that the Committee should not order costs where those costs have allegedly been met by 'an undisclosed third party', the Committee concurs with the Tribunal in *Ioannis Kardassopoulos and Ron Fuchs v*

*Georgia* (ICSID Case Nos ARB/05/18 and ARB/07/15, Award of 3 March 2010), which stated that it knew 'of no principle why any … third party financing arrangement should be taken into consideration in determining the amount of recovery' by parties of the costs incurred in arbitration proceedings (para 691).

69. Accordingly, the Committee hereby determines that the Applicant shall pay the Respondent its claimed costs of USD 186,072.81.

C. Dispositive Part

70. For the reasons set forth above, the Committee:

  (a) Orders that these proceedings are hereby discontinued; and,

  (b) Decides that the Applicant shall pay the sum of USD 186,072.81 to the Respondent in respect of expenses incurred in connection with this annulment proceeding.


Gavan Griffith QC
President of the Committee


Tan Sri Cecil W M Abraham
Member of the Committee

C. a. McLachlan
Professor Campbell McLachlan QC
Member of the Committee
15 April 2011