APPEAL, CLOSED, JURY, TYPE−E

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:10−cv−00457−BAH

| | |
|---|---|
| RSM PRODUCTION CORPORATION v. FRESHFIELDS BRUCKHAUS DERINGER US LLP et al<br>Assigned to: Judge Beryl A. Howell<br>Demand: $500,000,000<br>Cause: 18:1962 Racketeering (RICO) Act | Date Filed: 03/17/2010<br>Date Terminated: 08/03/2011<br>Jury Demand: Plaintiff<br>Nature of Suit: 470 Racketeer/Corrupt Organization<br>Jurisdiction: Diversity |

**Plaintiff**

| | | |
|---|---|---|
| **RSM PRODUCTION CORPORATION** | represented by | **Daniel L. Abrams**<br>LAW OFFICE OF DANIEL L. ABRAMS PLLC<br>Two Penn Plaza<br>Suite 1910<br>New York, NY 10121<br>(212) 292−5663<br>Fax: (646) 536−8905<br>Email: dan@lawyerquality.com<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED*<br><br>**Kelly M. P. Hebron**<br>PRIDE LAW OFFICE<br>1300 Merchantile Lane<br>Suite 139ii<br>Largo, MD 20774<br>(301) 583−4633<br>Fax: (301) 306−7538<br>Email: khebron@pridelaw.com<br>*ATTORNEY TO BE NOTICED* |

V.

**Defendant**

| | | |
|---|---|---|
| **FRESHFIELDS BRUCKHAUS DERINGER US LLP** | represented by | **Andrew B. Weissman**<br>WILMER CUTLER PICKERING HALE and DORR LLP<br>1875 Pennsylvania Avenue NW<br>Washington, DC 20006<br>(202) 663−6612<br>Fax: (202) 663−6363<br>Email: andrew.weissman@wilmerhale.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Danielle Yvette Conley**
WILMER HALE
1875 Pennsylvania Avenue, NW
c/o Andrea Rainey
Washington, DC 20006
(202) 354−3563
Email: danielle.conley@wilmerhale.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David William Ogden**
WILMER CUTLER PICKERING HALE
&DORR, LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663−6440
Fax: (202) 663−6363
Email: david.ogden@wilmerhale.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua M. Salzman**
THE LAW OFFICE OF ELIZABETH
WELLER
1776 I Street, NW
Suite 900
Washington, DC 20006
(202) 663−6922
Fax: (202) 663−6363
Email: joshua.salzman@wilmerhale.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

BRIAN KING                           represented by   **Andrew B. Weissman**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Danielle Yvette Conley**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **David William Ogden**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Joshua M. Salzman**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Defendant**

**JAN PAULSSON**                represented by   **Andrew B. Weissman**
                                                 (See above for address)
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

                                                 **Danielle Yvette Conley**
                                                 (See above for address)
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

                                                 **David William Ogden**
                                                 (See above for address)
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

                                                 **Joshua M. Salzman**
                                                 (See above for address)
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 03/17/2010 | 1 | | COMPLAINT against FRESHFIELDS BRUCKHAUS DERINGER US LLP, BRIAN KING, JAN PAULSSON ( Filing fee $ 350, receipt number 4616028360) filed by RSM PRODUCTION CORPORATION. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E − Verification, # 6 Signature Page of Complaint, # 7 Civil Cover Sheet)(jf, ) Modified text on 3/24/2010 (td, ). (Entered: 03/22/2010) |
| 03/17/2010 | | | Summons (3) Issued as to FRESHFIELDS BRUCKHAUS DERINGER US LLP, BRIAN KING, JAN PAULSSON. (jf, ) Modified text on 3/24/2010 (td, ). (Entered: 03/22/2010) |
| 03/17/2010 | 2 | | LCvR 7.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests NONE by RSM PRODUCTION CORPORATION (jf, ) (Entered: 03/22/2010) |
| 03/26/2010 | | | SUMMONS REISSUED (3) as to FRESHFIELDS BRUCKHAUS DERINGER US LLP, BRIAN KING, JAN PAULSSON (ls, ) (Entered: 03/26/2010) |
| 04/09/2010 | 3 | | NOTICE of Appearance by David William Ogden on behalf of FRESHFIELDS BRUCKHAUS DERINGER US LLP, BRIAN KING, JAN PAULSSON (Ogden, David) (Main Document 3 replaced on 4/12/2010) (znmw, ). (Entered: 04/09/2010) |
| 04/09/2010 | 4 | | Joint MOTION for Extension of Time to File Answer *to the Complaint* by FRESHFIELDS BRUCKHAUS DERINGER US LLP, BRIAN KING, JAN PAULSSON, RSM PRODUCTION CORPORATION (Ogden, David) (Entered: 04/09/2010) |

| 04/09/2010 | 5 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Daniel L. Abrams, :Firm− Law Office of Daniel L. Abrams, :Address− 2 Penn Plaza, Suite 1500, New York, NY 10121. Phone No. − 212−292−5663. Fax No. − 646 − 536−8905 by RSM PRODUCTION CORPORATION (Attachments: # 1 Declaration Dan Abrams)(Hebron, Kelly) (Entered: 04/09/2010) |
|---|---|---|
| 04/09/2010 | 6 | NOTICE of Appearance by Andrew B. Weissman on behalf of FRESHFIELDS BRUCKHAUS DERINGER US LLP, BRIAN KING, JAN PAULSSON (Weissman, Andrew) (Main Document 6 replaced on 4/12/2010) (znmw, ). (Entered: 04/09/2010) |
| 04/12/2010 | | MINUTE ORDER granting 4 joint motion for extension of time. Defendants are directed to answer or otherwise respond to the complaint by no later than June 1, 2010. Signed by Judge Emmet G. Sullivan on April 12, 2010. (lcegs1) (Entered: 04/12/2010) |
| 04/13/2010 | | Set/Reset Deadlines: Answer due by 6/1/2010, (clv, ) (Entered: 04/13/2010) |
| 04/13/2010 | | MINUTE ORDER granting 5 Motion for Leave to Appear Pro Hac Vice. Daniel L. Abrams is admitted pro hac vice in this action. Signed by Judge Emmet G. Sullivan on April 13, 2010. (lcegs1) (Entered: 04/13/2010) |
| 05/27/2010 | 7 | STIPULATION *and Proposed Order* by FRESHFIELDS BRUCKHAUS DERINGER US LLP, BRIAN KING, JAN PAULSSON, RSM PRODUCTION CORPORATION. (Ogden, David) (Entered: 05/27/2010) |
| 06/01/2010 | 8 | MOTION to Dismiss *Complaint* by FRESHFIELDS BRUCKHAUS DERINGER US LLP, BRIAN KING, JAN PAULSSON (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Text of Proposed Order Propsed Order)(Ogden, David) (Entered: 06/01/2010) |
| 06/02/2010 | | MINUTE ORDER. Upon consideration of 7 the parties' Stipulation and Proposed Order, the Court hereby enters the following briefing schedule: plaintiff shall file its opposition to defendants' motion to dismiss by no later than July 6, 2010; defendants shall file their reply brief by no later than July 26, 2010. All other terms agreed to by the parties in the Stipulation are hereby incorporated by reference into this Court's Order. Signed by Judge Emmet G. Sullivan on June 2, 2010. (lcegs1) (Entered: 06/02/2010) |
| 06/02/2010 | | Set/Reset Deadlines: Response to Dispositive Motions due by 7/6/2010. Reply to Dispositive Motions due by 7/26/2010. (clv, ) (Entered: 06/02/2010) |
| 06/16/2010 | 9 | NOTICE OF SUPPLEMENTAL AUTHORITY by BRIAN KING, JAN PAULSSON, RSM PRODUCTION CORPORATION (Ogden, David) (Entered: 06/16/2010) |
| 06/18/2010 | 10 | NOTICE of Appearance by Joshua M. Salzman on behalf of FRESHFIELDS BRUCKHAUS DERINGER US LLP, BRIAN KING, JAN PAULSSON (Salzman, Joshua) (Entered: 06/18/2010) |
| 06/18/2010 | 11 | NOTICE of Appearance by Danielle Yvette Conley on behalf of FRESHFIELDS BRUCKHAUS DERINGER US LLP, BRIAN KING, JAN PAULSSON (Conley, Danielle) (Entered: 06/18/2010) |
| 07/06/2010 | 12 | Memorandum in opposition to re 8 MOTION to Dismiss *Complaint* filed by RSM PRODUCTION CORPORATION. (Attachments: # 1 Declaration |

| | | | |
|---|---|---|---|
| | | | Declaration of Daniel L. Abrams, Dated July 6, 2010, # 2 Exhibit A Grenada Articles, # 3 Exhibit B Lev Model Articles, # 4 Exhibit C Affidavit of Robert Pelo, # 5 Exhibit D Freshfields' Web Page, # 6 Exhibit E Grenada Fact Sheet, # 7 Exhibit F Kozeny/Resteiner Article, # 8 Exhibit G 2010 Articles, # 9 Exhibit H MN Law Review Article, # 10 Exhibit I June 2010 Order and Letter)(Abrams, Daniel) (Entered: 07/06/2010) |
| 07/23/2010 | 13 | | NOTICE OF SUPPLEMENTAL AUTHORITY by RSM PRODUCTION CORPORATION (Attachments: # 1 Supplement RSM v. Fridman: Summary Order)(Abrams, Daniel) (Entered: 07/23/2010) |
| 07/26/2010 | 14 | | REPLY to opposition to motion re 8 MOTION to Dismiss *Complaint* filed by FRESHFIELDS BRUCKHAUS DERINGER US LLP, BRIAN KING, JAN PAULSSON. (Attachments: # 1 Exhibit Defs. Ex. D, # 2 Exhibit Defs. Ex. E, # 3 Exhibit Defs. Ex. F)(Ogden, David) (Entered: 07/26/2010) |
| 10/28/2010 | 15 | | NOTICE OF SUPPLEMENTAL AUTHORITY by FRESHFIELDS BRUCKHAUS DERINGER US LLP, BRIAN KING, JAN PAULSSON (Ogden, David) (Entered: 10/28/2010) |
| 10/29/2010 | 16 | | RESPONSE re 15 NOTICE OF SUPPLEMENTAL AUTHORITY filed by RSM PRODUCTION CORPORATION. (Abrams, Daniel) (Entered: 10/29/2010) |
| 01/11/2011 | 17 | | NOTICE OF SUPPLEMENTAL AUTHORITY by FRESHFIELDS BRUCKHAUS DERINGER US LLP, BRIAN KING, JAN PAULSSON (Ogden, David) (Entered: 01/11/2011) |
| 01/21/2011 | | | Case reassigned to U.S. District Judge Beryl A. Howell. Judge Emmet G. Sullivan no longer assigned to the case. (ds ) (Entered: 01/21/2011) |
| 05/04/2011 | 18 | | NOTICE OF SUPPLEMENTAL AUTHORITY by FRESHFIELDS BRUCKHAUS DERINGER US LLP, BRIAN KING, JAN PAULSSON (Attachments: # 1 Exhibit A)(Ogden, David) (Entered: 05/04/2011) |
| 05/05/2011 | 19 | | RESPONSE re 18 NOTICE OF SUPPLEMENTAL AUTHORITY filed by RSM PRODUCTION CORPORATION. (Abrams, Daniel) Modified on 5/6/2011 to change to correct event(rdj). (Entered: 05/05/2011) |
| 08/03/2011 | 20 | 8 | MEMORANDUM OPINION regarding 8 Defendants' Motion to Dismiss Plaintiff's Complaint. Signed by Judge Beryl A. Howell on August 3, 2011. (lcbah1) (Entered: 08/03/2011) |
| 08/03/2011 | 21 | 7 | ORDER granting 8 Defendants' Motion to Dismiss the Plaintiff's Complaint. Signed by Judge Beryl A. Howell on August 3, 2011. (lcbah1) (Entered: 08/03/2011) |
| 08/31/2011 | 22 | 6 | NOTICE OF APPEAL as to 21 Order on Motion to Dismiss by RSM PRODUCTION CORPORATION. Filing fee $ 455, receipt number 0090−2648438. Fee Status: Fee Paid. Parties have been notified. (Abrams, Daniel) (Entered: 08/31/2011) |

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
Plaintiff

vs.                                          Civil Action No._____

_____
Defendant

## NOTICE OF APPEAL

Notice is hereby given this              day of                        , 20_____  , that

hereby appeals to the United States Court of Appeals for the District of Columbia Circuit from

the judgment of this Court entered on the                    day of                    , 20___

in  favor of

against said

_____
Attorney or Pro Se Litigant

(Pursuant to Rule 4(a) of the Federal Rules of Appellate Procedure a notice of appeal in a civil
action must be filed within 30 days after the date of entry of judgment or 60 days if the United
States or officer or agency is a party)

**CLERK**        Please mail copies of the above Notice of Appeal to the following at the addresses
indicated:

RSM PRODUCTION CORPORATION

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| RSM PRODUCTION CORPORATION, | |
| Plaintiff, | |
| v. | Civil Action No. 10-00457 |
| | Judge Beryl A. Howell |
| FRESHFIELDS BRUCKHAUS DERINGER US LLP, *et al.* | |
| Defendants. | |

**ORDER**

Upon consideration of the Motion to Dismiss submitted by defendants Freshfields

Bruckhaus Deringer US LLP, Jan Paulsson, and Brian King, the legal memoranda submitted in

support and in opposition to the motion, the associated exhibits and the applicable law, it is hereby

**ORDERED** that, for the reasons set forth in the accompanying Memorandum Opinion,

the defendants' Motion to Dismiss is GRANTED. The plaintiff's Complaint is hereby

dismissed.

**SO ORDERED**.

**DATED: August 3, 2011**

/s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RSM PRODUCTION CORPORATION,

    Plaintiff,

    v.

FRESHFIELDS BRUCKHAUS DERINGER
US LLP, *et al.*

    Defendants.

Civil Action No. 10-00457
Judge Beryl A. Howell

<u>**MEMORANDUM OPINION**</u>

  The plaintiff in this case apparently seeks to test the adage that "the third time's the charm," but the law does not work that way. The plaintiff, RSM Production Corporation (hereinafter "RSM"), alleges that it had an exclusive contract for natural gas exploration off the shore of Grenada but that corrupt dealings between Grenada and a Grenadian company, Global Petroleum Group, Ltd ("Global Petroleum"), led Grenada illegally to terminate its contract with RSM.  After an unsuccessful lawsuit in New York and an arbitration in London, RSM filed this lawsuit against an international law firm, Freshfields Bruckhaus Deringer US LLP, and two of that law firm's attorneys, Jan Paulsson and Brian King, (hereinafter "Freshfields"), alleging that these three defendants were part of the conspiracy to bribe Grenada officials and deny RSM its licensing rights.  Specifically, the plaintiff contends that Freshfields conspired to violate the Racketeer Influenced and Corrupt Organizations Act (hereinafter "RICO") by representing Grenada before the International Centre for the Settlement of Investment Disputes (hereinafter "ICSID") arbitration panel tasked with resolving the terminated contract dispute between the country and the plaintiff.  Plaintiff now seeks at least $500 million in damages from Freshfields.

1

The defendants have moved to dismiss the Complaint, *inter alia*, on grounds that the plaintiff's case should be dismissed under the doctrine of *res judicata* because the plaintiff has already presented its claims before the Southern District of New York, which dismissed the plaintiff's Complaint for failure to state a claim.  Despite the plaintiff's hopeful assertion that "this case will remain viable regardless of the outcome of the New York case," Compl. ¶ 43, the Court agrees with the defendants that this lawsuit is barred by the doctrine of *res judicata*. Accordingly, for the reasons set forth below, the defendants' motion to dismiss for failure to state a claim is granted.[1]

## I.      BACKGROUND

Plaintiff's twenty-six page Complaint includes a comprehensive narrative of the underlying agreement and dispute between the plaintiff and the Grenadian government, the plaintiff's interactions with various government officials and allegedly corrupt businessmen, as well as a history of Grenada's alleged "well-known reputation for criminal bribery and corruption." Compl. ¶ 31.  Many of the allegations, however, are largely extraneous and irrelevant to the issues in this case. The Court therefore recites only the allegations necessary for resolution of the pending motion.

Plaintiff RSM is a Texas corporation with its principal place of business in Denver, Colorado.  *Id*. ¶ 1.  On July 4, 1996, RSM and the nation of Grenada entered into an exclusive "Petroleum Agreement," which "was to have resulted in an oil and natural gas hydrocarbon exploration, development and production license being issued as a matter of routine performance by Grenada to RSM."  *Id*. ¶ 10; Compl., Ex. A (Agreement Between the Government of Grenada

---

[1] The Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1331 because the plaintiff asserts a cause of action under the Racketeer Influenced and Corrupt Organizations Act.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and 19 U.S.C. § 1965(a) because Freshfields maintains an office and transacts business in the District of Columbia.

and RSM Production Corporation). The agreement provided that "[a]s soon as possible but in any event no later than ninety (90) days after the Effective Date," RSM was to apply for, and the Grenadian Minister was to grant, an Exploration License. Compl., Ex. A at 4.

The agreement between RSM and Grenada included a *force majeure* provision, which stated that RSM's failure to fulfill any of the terms of the agreement would not be treated as a breach of the agreement if that failure was the result of "any event beyond the reasonable control of the party claiming to be affected by such event," including "any adverse claim or dispute relating to [Grenada's] ownership of or control over the petroleum in any portion of the Agreement Area." *Id.* at 26. Pursuant to this provision, on July 18, 1996, RSM provided notice to the Government of Grenada that it was invoking the agreement's *force majeure* clause due to "boundary disputes," and Grenada agreed to stay implementation of the agreement. Compl. ¶ 18.

In September 1996, the plaintiff alleges that Gregory Bowen, Grenada's former Deputy Prime Minister and former Minister of Agriculture, Lands, Forestry, Fisheries, Public Utilities, and Energy, informed Jack Grynberg, RSM's Chief Executive, that he expected significant bribe payments in order for RSM and Grynberg to conduct business in Grenada. *Id.* ¶¶ 5; 10-12. The plaintiff alleges that Mr. Grynberg refused to pay the bribes, and Mr. Bowen then began to "obstruct[], harass[] and intimidate[] RSM and Grynberg in their efforts to explore, develop and produce Grenada's vast oil and natural gas resources." *Id.* ¶ 12.

In December 2003, the plaintiff alleges that Lev Model, a "convicted criminal" and "well-known, accomplished thief in Russian petroleum circles," formed a Grenadian company called Global Petroleum. *Id.* ¶¶ 7, 14-17. Global Petroleum's "primary purpose," according to the plaintiff, is to "facilitate the payment of monies to Grenadian Government officials as well as to the Government of Grenada, and to act as a front for other individuals and oil companies

3

interested in exploring, developing and ultimately extracting petroleum from offshore Grenada's vast hydrocarbon accumulations." *Id.* ¶ 7. As part of these dealings, RSM alleges that shortly after Global Petroleum's formation Grenada began to take "active steps to get out if its exclusive contract with RSM." *Id.* ¶ 18.

On January 12, 2004, a month after Global Petroleum's formation, RSM wrote to the Prime Minister of Grenada to inform him that it was in the process of revoking the *force majeure* clause. *Id.* ¶ 20. On April 14, 2004, RSM delivered its official application for an oil and natural gas exploration license to Grenada's Permanent Secretary of the Ministry of Finance. *Id.* ¶ 21. On April 27, 2004, Mr. Bowen informed RSM that its application for an exploration license had been filed more than ninety days after the revocation of the *force majeure* clause and was therefore denied as untimely. *Id.* ¶¶ 23-24. In response, RSM filed a Request for Arbitration with the ICSID in an effort to resolve the dispute. *Id.* ¶ 29.

In late 2005 and early 2006, while the ICSID arbitration proceeding was still pending, the plaintiff alleges that Mr. Grynberg was contacted by Lev Korchagin, the director and legal advisor for Global Petroleum, and Michael Melnicke, a New York businessman who served as "Ambassador-at-Large" for Grenada. *Id.* ¶¶ 8, 9, 36-40. Messrs. Korchagin and Melnicke offered to assist in the resolution of the dispute between RSM and Grenada. *Id.* Mr. Korchagin told Mr. Grynberg that if Global Petroleum, which allegedly "'own[ed]' the Government of Grenada," could participate as a partner in RSM's offshore Grenada license, Global Petroleum "would work everything out." *Id.* ¶ 37. Additionally, Mr. Melnicke asked that, in compensation for his efforts to resolve RSM's underlying dispute, he receive a "substantial overriding royalty" based on the amount of oil and gas that was ultimately produced as a result of the RSM/Grenada contract. *Id.* ¶ 40. Mr. Grynberg and RSM refused subsequent meetings with Mr. Korchagin,

4

but continued to informally meet with Mr. Melnicke.  *Id.* ¶¶ 37-38.  During these meetings, Mr.

Melnicke informed Mr. Grynberg that Mr. Bowen had been bribed by two individuals – Len

Blavatnik and Mikhail Fridman – so that their group could develop the petroleum reserves

believed to exist off the shore of Grenada.  *Id.* ¶ 42.  Mr. Melnicke "further revealed" that

Messrs. Blavatnik and Fridman had promised additional bribes to the Grenadian government and

had promised to pay Grenada's legal fees associated with Grenada's ICSID arbitration

proceeding with RSM.  *Id.*

      On October 31, 2006, RSM filed suit against nine defendants, including Messrs.

Blatnavik, Bowen, Fridman, Korchagin, and Model, and Global Petroleum in the U.S. District

Court for the Southern District of New York, alleging tortious interference with contract, tortious

interference with prospective business advantage, and civil conspiracy to commit tortious

interference.  *Id.* ¶ 43; *See RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382 (S.D.N.Y. 2009).[2]

In *Fridman*, the district court dismissed RSM's Complaint with prejudice for failure to state a

claim and observed that it "reflect[ed] a profound and fundamental misunderstanding of the legal

and procedural requirements for filing a complaint in a United States court."  *Fridman*, 643 F.

Supp. 2d at 415.  The dismissal was affirmed by the Second Circuit.  *See RSM Prod. Corp. v.*

*Fridman*, 387 Fed. App'x 72 (2d Cir. 2010).

      Between the filing of the plaintiff's Complaint in the Southern District of New York and

that case's dismissal, RSM and Grenada proceeded with arbitration before the ICSID.  On June

21, 2007, Mr. Bowen testified at the ICSID arbitration that Global Petroleum was financing the

legal fees Grenada incurred during the arbitration process.  Compl. ¶ 44.  Grenada's legal

services during the arbitration were performed by defendants Freshfields Bruckhaus Deringer US

---

[2] Four of the nine defendants (Messrs. Bowen, Model, and Korchagin, and Global Petroleum) in the New York suit
are labeled "Conspirators Who Are Not Named As Defendants" in the instant lawsuit, Compl. ¶¶5-9, while the other
five defendants are alleged to have used Global Petroleum "as a front." *Id.* ¶ 7.

LLP, the United States affiliate of an international law firm based out of the United Kingdom, and two of the firm's attorneys, Brian King, a partner based out of Freshfields' New York and Amsterdam offices, and Jan Paulsson, a principal consultant in Freshfields' Paris office. *Id.* ¶¶ 2-4, 50, 62. The plaintiff alleges that, through September 2009, Global Petroleum had invested over $10 million in Grenada's defense in the arbitration, including $2.5 million personally advanced by Mr. Model. *Id.* ¶¶ 46, 48.

Ultimately, the defendants obtained a favorable ruling for the Grenadian government from the ICSID arbitration panel, which ruled that RSM had indeed filed its application for an exploration license one day after the expiration of the ninety day period provided for in the agreement.[3] *Id.* ¶ 29. Following resolution of RSM's claims, in June 2008 Grenada issued an Offshore License to Global Petroleum. *Id.* ¶ 49.

On March 17, 2010, RSM filed a Complaint in this Court, alleging that defendants Freshfields, and Messrs. Paulsson and King conspired to commit an act in violation of the Racketeer Influenced and Corrupt Organizations Act. *Id.* ¶ 57; 18 U.S.C. § 1962(d). The plaintiff asserts that Global Petroleum, and Messrs. Model, Korchigan, Bowen and others engaged in an association-in-fact RICO enterprise "designed for the common purpose of enriching Bowen and other high-level Grenadian officials . . . and obtaining rights to receive an exclusive exploration license for the development of vast hydrocarbon accumulations in Grenada's offshore waters." *Id.* The plaintiff further asserts that, by representing Grenada in the ICSID arbitration, the defendants "knowingly participat[ed] in and benefit[ted] from the legal fees arising out of the conspiracy [and thus] have all participated in and benefitted from a racketeering enterprise." *Id.* ¶ 61. As a result of this alleged conspiracy, the plaintiff seeks to

---

[3] RSM sought to have the panel's ruling annulled, and on April 28, 2011, the Annulment Committee issued an order discontinuing the proceeding and awarding Grenada the costs it incurred in that proceeding. Def.'s Notice of Suppl. Authority dated May 4, 2011, Ex. A (ICSID Order of the Committee).

recover "no less (and possibly considerably more) than $500 million, which may be trebled [under 18 U.S.C. § 1964(c)], along with attorney's fees." *Id.* ¶ 63.

On June 1, 2010, the defendants moved to dismiss the Complaint for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defs.' Mot. Dismiss, ECF No. 8, at 1.  This motion is now pending before the Court.  For the reasons discussed below, the Court grants the defendants' motion to dismiss for failure to state a claim because the doctrine of *res judicata* precludes this Court's resolution of plaintiff's claims.[4]

## II.   STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[ ] [his or her] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); FED. R. CIV. P. 12(b)(6).  "[A] complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted) (citing *Twombly,* 550 U.S. at 557). Instead, the complaint must plead facts that are more than "merely consistent with" a defendant's liability; "the plaintiff [must plead] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. The Court must "assume all the allegations in the complaint are true (even if doubtful in fact) . . . [and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged."

---

[4] The defendants have also argued that the Complaint must be dismissed on grounds that the defendants are entitled to immunity under Articles 21 and 22 of the ICSID Convention, the Complaint is barred by the applicable statute of limitations, and that the plaintiff has failed to state a claim because the Complaint is "utterly devoid of any factual basis." Defs.' Mem. Supp. Mot. Dismiss, ECF No. 8, at 2.  Given resolution of the pending motion on grounds of *res judicata,* the Court need not consider the defendants' other arguments.

*Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.,* 525 F.3d 8, 17 (D.C. Cir. 2008)

(internal quotations and citations omitted).

## III.   DISCUSSION

The plaintiff asserts one cause of action in this case: that the defendants entered into a

conspiracy with Global Petroleum, Messrs. Bowen, Model, and others to commit a RICO

violation. Compl. ¶¶ 55-62; *see* 18 U.S.C. § 1962(d).[5]  The defendants argue, *inter alia*, that the

plaintiff's cause of action is barred by the doctrine of *res judicata*, or claim preclusion, because

the plaintiff's allegations against the defendants "rest[ ] on the same allegations of bribery and

corruption that were the subject of [the plaintiff's] action in the Southern District of New York,"

which that court dismissed and the Second Circuit affirmed.  Def.'s Mem. Supp. Mot. Dismiss

("Def.'s Mem."), at 13; *see also RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382 (S.D.N.Y.

2009), *aff'd* 387 Fed. App'x 72 (2d Cir. 2010).  The Court agrees with the defendants that the

Second Circuit's affirmance of the dismissal of the plaintiff's claims was a final judgment on the

merits of the allegations underlying the instant case.  Consequently, the plaintiff's current lawsuit

must be dismissed.

### A.  Requirements for *Res Judicata*

The doctrine of *res judicata* bars the court from hearing "repetitious suits involving the

same cause of action once a court of competent jurisdiction has entered a final judgment on the

---

[5] Section 1962(d), conspiracy to violate RICO, provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of [Section 1962]." 18 U.S.C. § 1962(d). Subsections (a), (b), and (c) provide that: "(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce…;  (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce; and  (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(a)-(c).

merits." *United States v. Tohono O'Odham Nation*, 131 S.Ct. 1723, 1730 (2011) (internal quotations omitted). The doctrine plays an integral role in advancing the "the conclusive resolution of disputes" and "preclude[s] parties from contesting matters that they have had a full and fair opportunity to litigate protects [sic] their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States,* 440 U.S. 147, 153-54 (1979); *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002) ("[A] 'final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or *could have been raised* in that action,'" quoting *Allen v. McCurry,* 449 U.S. 90, 94 (1980)). *Res judicata* is an affirmative defense that is usually pled in a defendant's answer, but courts have also allowed parties to assert the defense in a Rule 12(b)(6) motion to dismiss. *Nader v. Democratic Nat'l Comm.*, 590 F. Supp. 2d 164, 169 (D.D.C. 2008) (citing *Stanton v. D.C. Ct. of Appeals*, 127 F.3d 72, 76-77 (D.C. Cir. 1997). A subsequent lawsuit is barred by the doctrine of *res judicata* "if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Porter v. Shah,* 606 F.3d 809, 813-14 (D.C. Cir. 2010); *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 490 (D.C. Cir. 2009) (en banc); *Smalls v. United States,* 471 F.3d 186, 192 (D.C. Cir. 2006) (citing *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 323-24 (1971)).

### B. Analysis

In this case, the parties agree that the third and fourth requirements for application of *res judicata* are met. *See* Defs.' Mem., at 14; Pl.'s Mem. Opp'n Mot. Dismiss, ECF No. 12 (hereinafter "Pl.'s Opp'n Mem."), at 29-33; Pl.'s Notice of Suppl. Authority, ECF No. 13, at 1-2.

9

With regard to the requirement that there be a final, valid judgment on the merits, the Southern

District of New York dismissed RSM's complaint "against all Defendants for failure to state a

claim pursuant to Fed. R. Civ. P. 12(b)(6), because it [did] not contain allegations concerning

each of the material elements necessary to sustain recovery under any of the claims asserted."

*Fridman*, 643 F. Supp. 2d at 404 (internal quotations omitted).  In its opposition papers, the

plaintiff argued that the Southern District of New York did not render a final judgment on the

merits as to Mr. Bowen because he was dismissed, "before any merits-based determination," on

jurisdictional grounds under the Foreign Sovereign Immunities Act. Pl.'s Opp'n Mem., at 30-31.

On appeal, however, the Second Circuit stated in a decision issued after the plaintiff had

submitted its opposition papers that Mr. Bowen was not entitled to immunity, but nonetheless

affirmed Mr. Bowen's dismissal because the Second Circuit concluded that the plaintiff had

failed to state a claim against any of the defendants.[6]  *Fridman*, 387 Fed. App'x at 75 ("We need

not, however, remand to the district court for further proceedings regarding whether Bowen may

be entitled to immunity on other grounds, because the district court concluded, and we agree, that

plaintiffs have failed in any event to state a civil conspiracy claim.") (internal citations omitted).

The plaintiff concedes that "Mr. Bowen has now received a dismissal on the merits in the New

York case."  Pl.'s Notice of Suppl. Authority, ECF. No. 13, at 1.[7]

---

[6] Dismissal under Rule 12(b)(6) for failure to state a claim is generally considered a decision on the merits.  *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) (noting, in a case involving *res judicata*, that "the dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'"); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) ("12(b)(6) presents a ruling on the merits with res judicata effect.").

[7] The plaintiff maintains that "the other alleged co-conspirators [Lev Model and Global Petroleum] did not receive merits-based dismissals and in any event were not in privity with Freshfields."  Pl.'s Notice of Suppl. Authority, ECF. No. 13, at 2.  This argument also fails because the *Fridman* court dismissed the plaintiff's Complaint as to *all* defendants for failure to state a claim, including Model and Global Petroleum, even though they failed to appear before the court.  *See Fridman*, 643 F. Supp. 2d at 414-415 ("[T]he Third Amended Complaint is dismissed as to all appearing Defendants, principally on the ground that its factual allegations do not support any legally cognizable claim. Plaintiffs' allegations that Model and Global Petroleum Group serve as 'fronts for Fridman's, Blavatnik's, [and other defendants not mentioned in the plaintiff's Complaint in this case] efforts to bribe Grenadian officials' . .

Regarding the fourth requirement for application of *res judicata*, the parties do not dispute that the Southern District of New York was a court of competent jurisdiction. *See* Pl.'s Opp'n Mem., at 29-33; *see also Fridman*, 643 F. Supp. 2d at 400.  The Court therefore narrows its discussion to whether the *Fridman* action involved (1) the same claims or cause of action, and (2) the same parties or their privies.

### 1. The *Fridman* Case Involved The Same Claims Or Cause Of Action As This Case.

The first requirement for application of *res judicata* requires there to be prior litigation involving "the same claims or cause of action." *Tohono O'Odham*, 131 S.Ct. at 1730. This "identity element" is satisfied when "there is an identity of the causes of action [and] the cases are based on the same nucleus of facts." *Capitol Hill Grp.*, 569 F.3d at 490 (internal citations and quotations omitted).  To determine whether two cases arise out of the same nucleus of facts, "the court will consider 'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding and usage." *Apotex, Inc. v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004) (quoting *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.,* 723 F.2d 944, 949 n.5 (D.C. Cir. 1983)).  The case presently before the Court certainly arises from the same nucleus of facts that was presented to the Southern District of New York in *Fridman*.  The Court therefore concludes that the identity element of *res judicata* is satisfied.

In *Fridman*, as in this case, the plaintiff alleged corrupt dealings among Messers. Bowen, Korchigan, and Model, Global Petroleum, and the government of Grenada that resulted in

---

. suffers from the same defects as their allegations against the appearing Defendants: they are not based on any cognizable facts properly before the court.  Indeed, they are based on the same wishful thinking, both as to the claims asserted and as to the legal standards for filing a complaint, as Plaintiffs' allegations with respect to the appearing Defendants.  Accordingly, the entry of a default judgment against [Model and Global Petroleum] would be inappropriate.").

Grenada's termination of its contract with RSM.  As the defendants note, "RSM's claims against Freshfields rests on the same allegations of bribery and corruption that were the subject of its action in the Southern District of New York, a suit that was dismissed with prejudice," and the plaintiff's Complaint in this case "merely add[s] Freshfields as another supposed member of the conspiracy alleged in *Fridman*." Defs.' Mem., at 13, 16. Indeed, four of the named defendants in *Fridman* – Messers. Bowen, Korchigan, and Model, and Global Petroleum – are listed as "Conspirators Who Are Not Named as Defendants" in the Complaint, and they are alleged to have perpetuated the same underlying bribery scheme to deny RSM its exploration license so that the license could instead be awarded to Global Petroleum.  *See* Compl., ¶¶ 5-9; *see also Fridman*, 643 F. Supp. 2d at 382. In fact, the Complaint in this case and the Third Amended Complaint in *Fridman* both include sections entitled "The Scheme Is Implemented," which includes much of the same *verbatim* language. *See* Compl. ¶¶ 18-30; Defs.' Mot. Dismiss, Ex. B, *Fridman* Third Amended Complaint, ¶¶ 29-40.  Both of these sections detail Grenada's rejection of RSM's application for the GSM exploration license, and the "scheme" to which plaintiff refers in both complaints – in other words, the illegal activity that forms the basis of RSM's cause of action – is clearly the same in this case as it was in *Fridman*.

The plaintiff does not dispute that the operative facts of *Fridman* are identical to the facts presented in this case.  Rather, the plaintiff argues that (1) the identity element of *res judicata* is not satisfied because "this case sounds in RICO conspiracy, not the state law claims which were asserted in New York;"[8] and (2) "many of the facts leading to the institution of this lawsuit were

---

[8] In the Southern District of New York, the plaintiff asserted causes of action for intentional tortious interference with prospective business advantage against all defendants except Bowen, tortious interference with contract against all defendants except Bowen, and civil conspiracy against all defendants.  *See* Defs.' Mot. Dismiss, Ex. B, *Fridman* Third Am. Compl., ¶¶ 59-72.  To prove a RICO conspiracy claim, which is alleged in this case, the plaintiff must prove that: "(1) two or more people agreed to commit a substantive RICO offense, and (2) the defendant knew of and agreed to the overall objective of the violation."  *United States v. Philip Morris*, 327 F. Supp. 2d 13, 19 (D.D.C. 2004) (citing *Salinas v. United States*, 522 U.S. 52, 65 (1997).

discovered long after the 2006 commencement of the New York lawsuit." *See* Pl.'s Opp'n Mem., at 33.  First, plaintiff's argument that *res judicata* does not apply because it presents different legal claims is erroneous and demonstrates a fundamental misunderstanding of the principle underlying the doctrine of *res judicata*, which is that "it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory on which a litigant relies."  *Capitol Hill Grp.*, 569 F.3d at 490 (internal quotations omitted).  Since "claim preclusion precludes the litigation of *claims*, not just *arguments*," *Nat. Res. Defense Council*, 513 F.3d at 261 (emphasis in original), the plaintiff cannot re-litigate an issue simply by asserting a different legal claim.  *See Apotex*, 393 F.3d at 217-218 ("There are no new facts.  [The plaintiff] is simply raising a new legal theory. This is precisely what is barred by *res judicata*."); *see also Herrion v. Children's Hosp. Nat'l Med. Ctr.*, No. 10-cv-00254, 2011 WL 2014031, at *9 (D.D.C. May 24, 2011) ("It is well-established that *res judicata* applies regardless of the claims or legal theories actually relied upon in the earlier litigation."); *Youngin's Auto Body v. District of Columbia*, No. 09-cv-1376, 2011 WL 996662, at *5 (D.D.C. March 17, 2011) ("[F]or the purposes of claim preclusion, the legal theory upon which the plaintiff relies is irrelevant; rather, the relevant inquiry is whether the plaintiff's claims arise out of the same 'common nucleus of facts' as the [earlier litigation].") (internal citation omitted).  The fact that the plaintiff asserts a different legal claim in this case does not preclude application of the *res judicata.*

Second, plaintiff argues that facts leading to the filing of this case were discovered after commencement of the *Fridman* case in 2006. These facts include "Lev Model's criminal conviction, Lev Model's payment of the college tuition of Gregory Bowen's daughter, and Bowen's June 2007 sworn testimony confirming Global Petroleum's payment of Grenada's legal fees." *See* Pl.'s Opp'n Mem., at 33.  While the plaintiff may not have been aware of these facts in

2006, the plaintiff was certainly aware of them before the termination of the *Fridman* proceedings because all three of the factual allegations that were purportedly undiscovered appear in the plaintiff's Third Amended Complaint in *Fridman*. *See* Defs.' Mot. Dismiss, Ex. B, *Fridman* Third Am. Compl., ¶¶ 26-27, 53, 55. The Southern District was presented with allegations that Freshfields was serving as Grenada's counsel before the ICSID arbitration panel, that some of the defendants "had promised to pay all of Grenada's legal fees in connection with the arbitration between RSM and Grenada," and that "Global Petroleum Group has invested over $4 million (and quite possibly much more) into the legal defense of the Government of Grenada in the arbitration against RSM." *Id.* ¶¶ 40, 50, 53. The complaints in this case and *Fridman* arise from the exact same nuclei of facts – all of which were known to the plaintiff when it filed its Third Amended Complaint before the Southern District of New York.

The plaintiff relies on a non-binding, factually inapposite case from the Seventh Circuit, *Doe v. Allied-Signal, Inc.*, 985 F.2d 908 (7th Cir. 1993), to argue that it was not required to amend its *Fridman* complaint to add Freshfields as a defendant in order to avoid *res judicata* in a later proceeding. *See* Pl.'s Opp'n Mem., at 33. The plaintiff's interpretation of *Allied-Signal* is incorrect. In *Allied-Signal*, the Seventh Circuit held that a plaintiff was not required to amend her complaint in the first action when the damages she was seeking in the second action arose from an adverse judgment in the first action. *Allied-Signal*, 985 F.2d at 915. In other words, the claims asserted by the plaintiff in the second case were not even ripe until the conclusion of the first case. *Id.* Since it would "twist *res judicata* grotesquely out of shape [to] hold[ ] that a plaintiff must include not only all claims arising from the same transaction, but must anticipate future harms from adverse judgments yet to be rendered," the Seventh Circuit found that the

plaintiff was not required to amend her complaint to incorporate claims that were not ripe at the time.  *Id.*

      The situation in *Allied-Signal* bears no resemblance to the factual circumstances at issue here.  The record from the *Fridman* proceeding demonstrates that the plaintiff knew of the relevant, operative facts that it asserts in this case at the time it filed its Third Amended Complaint in *Fridman*, including that Freshfields was serving as Grenada's attorney in the ICSID arbitration.  *See* Compl. ¶ 40; Defs.' Mot. Dismiss, Ex. B, *Fridman* Third Am. Compl. *Res judicata* "prevents parties from relitigating issues they . . . could have raised in a prior action on the same claim," and this is exactly what the plaintiff is attempting to do in this case. *NextWave Personal Commc'ns, Inc. v. FCC*, 254 F.3d 130, 143 (D.C. Cir. 2001).  Accordingly, since the plaintiff's Complaint arises out of the same nucleus of facts as presented to the Southern District in *Fridman*, the Court concludes that the identity element of *res judicata* is satisfied.

### 2.  The Defendants Are In Privity With The *Fridman* Defendants

      The second element of *res judicata* requires that the prior litigation be between the same parties or their privies.  *See Natural Res. Def. Council*, 513 F.3d at 260.  The plaintiff asserts that "Freshfields does not claim it was in privity with any of the Defendants who actually received dismissals on the merits in the New York case. In fact, the New York Defendants which obtained merits-based dismissals successfully argued that the New York Complaint did not adequately link them with Grenada, Bowen, Model or Global Petroleum." *See* Pl.'s Opp'n Mem., at 32.  The plaintiff's interpretation of the district court's decision in *Fridman*, however, is incorrect, particularly in light of the Second Circuit's *Fridman* decision.

15

As a preliminary matter, each of the defendants in the New York case received a merits-based dismissal. The district court and the Second Circuit held that RSM had failed to state a claim as to *any* of the defendants in *Fridman*, including Messrs. Bowen and Model, and Global Petroleum, whom plaintiff claims were dismissed merely on procedural grounds and are named as Freshfields' co-conspirators in this case. Indeed, plaintiff concedes that the Second Circuit dismissed Mr. Bowen on the merits in its decision. Pl.'s Notice of Suppl. Authority, ECF. No. 13, at 1. With regard to Mr. Model and Global Petroleum, the district court in *Fridman* declined to enter default judgment against these defendants, despite the fact that they had not appeared to contest RSM's allegations, precisely because the plaintiff had also failed to state a claim as to these defendants. Indeed the district court clearly stated that RSM's allegations against Model and Global Petroleum Group "suffers from the same defects as their allegations against the appearing Defendants: they are not based on any cognizable facts properly before the court. Indeed, they are based on the same wishful thinking, both as to the claims asserted and as to the legal standards for filing a complaint, as Plaintiffs' allegations with respect to the appearing Defendants." *Fridman*, 643 F. Supp. 2d at 414-15.

In this case, the plaintiff's Complaint specifically lists Messrs. Bowen and Model, and Global Petroleum as "Conspirators Who Are Not Named As Defendants." *See* Compl. ¶¶ 5-7. Members of a conspiracy are deemed under the law to be in privity with each other. *See Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 17-18 (1st Cir. 2010) (stating that co-conspirators are in privity for purposes of *res judicata* when "the [later] claims were or could have been brought against the original defendant in the original suit and the subsequent suit tried to hold related defendants liable on related claims.") (internal quotations omitted) (alteration in original); *Gambocz v. Yelencsics,* 468 F.2d 837, 841-42 (3d Cir. 1972) (holding that unnamed co-

conspirators sued in a subsequent suit could assert a claim preclusion defense when the plaintiff had sued other conspirators on the same claims in the first suit).  Although Freshfields was not named as a defendant in the *Fridman* case, there clearly can be no dispute that Freshfields was in privity with these *Fridman* defendants, whom plaintiff itself alleges are Freshfields' co-conspirators.  *See McLaughlin v. Bradlee*, 599 F. Supp. 839, 848 (D.D.C. 1984) (holding that a defendant who was not named in plaintiff's prior suits could assert *res judicata* because the conspiracy the plaintiff was attempting to allege had already been dismissed against the other defendants in earlier litigation).  As discussed above, the Southern District dismissed these parties because the plaintiff had failed to allege facts sufficient to support its allegations of illegal activity.  The Second Circuit's decision only further cemented that these *Fridman* defendants received a merits-based judgment.  *Fridman*, 387 Fed. App'x at 75 (stating that the "plaintiffs have failed in any event to state a civil conspiracy claim" and citing Wright & Miller for the proposition that "[i]f the action is dismissed, it should be dismissed as to the defaulting party as well as the remaining defendants," 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2690, at 75 (3d ed. 1998)).

Here, the plaintiff attempts to assert claims against Freshfields for participation in the exact same alleged corrupt conspiracy that was presented to the Southern District of New York and the Second Circuit in *Fridman*. Pursuant to the doctrine of *res judicata*, the Court will not allow the plaintiff to re-litigate its previously dismissed claims by simply asserting a new legal theory and naming a party that could have been named in the earlier suit. *See San Remo Hotel, L.P. v. City and Cty. of San Francisco, Cal.*, 545 U.S. 323, 336 n.16 (2005) ("Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.") (internal quotation omitted);  *I.A.M.*

*Nat'l Pension Fund, Benefit Plan A v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 949 (D.C. Cir. 1983)

(noting that *res judicata* "forecloses all that which might have been litigated previously");

*Asemani v. Ahmadinejad*, No. 09-cv-0611, 2009 WL 928383, at *1 (D.D.C. April 2, 2009)

(holding, in a case in which the court had already dismissed the plaintiff's claims on the merits,

that a complaint with the same factual allegations filed against a new defendant was barred by

*res judicata* "[b]ecause the underlying facts of [the] civil action existed at the time of the prior

civil action."); *see also* 18A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal*

*Practice and Procedure* § 4464.1 (2d ed.) (*res judicata* is most appropriate "in cases that seem to

reflect no more than a last desperate effort by a plaintiff who is pursuing a thin claim against

defendants who were omitted from the first action because they were less directly involved than

the original defendants.").

## IV.      CONCLUSION

The Court concludes that the plaintiff's claims in this case are barred under *res judicata*.

Accordingly, the defendants' motion to dismiss is granted.  An Order consistent with this

memorandum opinion will be entered.

**DATED:  AUGUST 3, 2011**

/s/ *Beryl A. Howell*

BERYL A. HOWELL
United States District Judge